UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARC MIRSKY, individually and on behalf of all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | NO.  07 C 7083 |
| | : | |
| ULTA SALON, COSMETICS & FRAGRANCE, INC., LYN P. KIRBY, GREGG R. BODNAR and BRUCE E. BARKUS, | : | Judge Gettleman |
| Defendants. | : | |

| | | |
|---|---|---|
| WESTLEY BASSETT, individually and on behalf of all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | NO.  08 C 277 |
| | : | |
| ULTA SALON, COSMETICS & FRAGRANCE, INC., LYNELLE  P. KIRBY, GREGG R. BODNAR and BRUCE E. BARKUS, | : | Judge Gettleman |
| Defendants. | : | |

| | | |
|---|---|---|
| EUGENE B. CHASE, III, individually and on behalf of all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | NO.  08 C 428 |
| | : | |
| ULTA SALON, COSMETICS & FRAGRANCE, INC., LYNELLE  P. KIRBY, GREGG R. BODNAR and BRUCE E. BARKUS, | : | Judge Gettleman |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
OF MARC MIRSKY, NEDRA FISCHER AND STEPHANIE CARROLL
FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFFS
<u>AND FOR APPROVAL OF LEAD COUNSEL AND LIAISON COUNSEL</u>**

Plaintiffs Marc Mirsky ("Mirsky"), Nedra Fischer ("Fischer") and Stephanie Carroll ("Carroll")(collectively "Movants" or the "Mirsky Group") respectfully submit this memorandum of law in support of their motion for: (1) consolidation of the related actions pursuant to Fed. R. Civ. P. 42(a); (2) appointment of Movants as Lead Plaintiffs in the above referenced actions pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4; and (3) approval of Movants' selection of Deborah R. Gross and Robert P. Frutkin of the Law Offices of Bernard M. Gross, P.C., as Lead Counsel for the Class and Marvin A. Miller of Miller Law LLC as Liaison Counsel for the Class.

## I. STATEMENT OF THE MATTER BEFORE THE COURT

Presently pending in this District are three related class action lawsuits (the "Related Actions") brought on behalf of persons who purchased the common stock of Ulta Salon, Cosmetics & Fragrance, Inc. ("ULTA" or "the Company") in its initial public offering ("IPO") on or about October 25, 2007 or thereafter in the market until December 10, 2007, inclusive ("the Class Period") ("the Class").

Pursuant to the PSLRA, the Court must decide whether to consolidate the Related Actions prior to selecting a Lead Plaintiff. See 15 U.S.C. §78u-4(a)(3)(B)(ii). As soon as practicable thereafter, the Court is to appoint as lead plaintiff, the movants with the largest financial interest in the relief sought by the class that otherwise satisfy the requirement of Fed. R. Civ. P. 23. *See id.*

The Related Actions involve the identical Class, the identical causes of action and the identical principal defendants. Thus, each of the Related Actions involves virtually identical issues of law and fact and consolidation is appropriate. See Fed. R. Civ. P. 42(a).

Movants should be appointed Lead Plaintiffs because they have satisfied all of the prerequisites under the PSLRA. Movants have suffered, collectively, losses of approximately

$23,264.00.[1]  Movants have submitted herewith their individual certifications, demonstrating their desire to serve as Lead Plaintiffs in this action and their understanding of their duties and obligations as Lead Plaintiffs.  See Motion, Exhibit A.  Any member or members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in this action.  15 U.S.C. §77z-1(a)(3)(A)(i)(II).  Mirsky filed the initial complaint in the first of the Related Actions and issued the PSLRA-required notice of the filing of the class action.  See Motion, Exhibit B.  Movants, other than Mirsky, responded to that notice, seeking to join as lead plaintiffs.  Thereafter, virtually identical complaints were filed by counsel for other shareholders on behalf of the identical Class and alleging violations of the virtually identical securities laws.  Counsel for those tag-along shareholders then issued superfluous notices purportedly pursuant to the PSLRA but which, in fact, were nothing more than unauthorized and thinly veiled attempts to secure additional clients.

Accordingly, Movants are presumptively the most adequate plaintiffs and should be appointed Lead Plaintiffs and Movants' choice of Deborah R. Gross and Robert P. Frutkin of the Law Offices Bernard M. Gross, P.C., to serve as Lead Counsel and Marvin A. Miller of Miller Law LLC to serve as Liaison Counsel should be approved.  Each of these firms possesses extensive experience in the prosecution of securities class actions and will adequately represent the interests of all class members.

---

[1] The losses suffered by Movants are not the same as their legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation.  The approximate losses can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. §78u-4(a)(2)(A) and based upon reference to information concerning the current market for the Company's common stock.

## II.   PROCEDURAL BACKGROUND

Mirsky's complaint was filed in this Court on December 17, 2007. Pursuant to §21(D)(a)(3) of the PSLRA, on December 18, 2007, a notice that a class action had been initiated on behalf of shareholders who purchased Ulta common stock in the IPO or thereafter during the Class Period was published over a widely circulated national business-oriented wire-service. Thereafter, Related Actions were filed in this Court.

## III.   STATEMENT OF FACTS[2]

Defendant ULTA promotes itself as the largest beauty retailer providing one-stop shopping for prestige, mass and salon products and salon services in the United States. The Company operates 232 retail stores located in 30 states and also distributes its products through its website. In October 2007, Ulta had an Initial Public Offering in which ULTA sold 7,666,667 shares of its common stock. The additional defendants are Lyn P. Kirby, President and Chief Executive Officer and a Director, Gregg R. Bodnar, Chief Financial Officer ("CFO"), and Bruce E. Barkus, Chief Operating Officer.

As ULTA's fiscal third quarter ending November 3, 2007, was coming to a close, the following material adverse facts concerning ULTA's business were present and known to defendants:

(a)   in sharp contrast to ULTA's prior fiscal quarters, ULTA's selling, general, and administrative expenses ("SG&A") had risen sharply to $55.6 million, a 36% increase due primarily to higher advertising expenses that had been incurred in the Third Quarter; and

(b)   in sharp contrast to ULTA's prior fiscal quarters, ULTA's inventories had risen by 40% or 26.7 % of net sales due, in part, to the opening of 49 new stores during the nine months ending November 3, 2007, the close of the Third Quarter, and a calendar shift that added

---

[2] These facts are alleged in Mirsky's complaint.

**4**

$15 million of seasonal inventory because the Third Quarter now included a time period closer to Christmas than the year earlier third quarter.

Defendants did not include the adverse material facts in the Prospectus for the IPO. To the contrary, defendants made the following false and misleading statements concerning ULTA's current and expected inventories and SG&A, *inter alia*:

(a) defendants included historical charts of ULTA's financials for fiscal quarters in 2007, 2006 and 2005 which showed a clear business trend of flat SG&A as a percentage of net sales. These financials were misleading without any disclosure of the material fact that in the Third Quarter, which would close nine calendar days after the date of the Prospectus, ULTA's SG&A was contrary to that historical trend and was at a higher percentage of Net Sales than ULTA had experienced in 2005, 2006 and the first two fiscal quarters of 2007;

(b) defendants stated that SG&A would increase in the Third Quarter by approximately $1.2 million due to stock options that would vest immediately upon completion of the IPO. This statement was false and misleading because defendants omitted to state that ULTA's SG&A would rise above that amount because of significant advertising expenses ULTA had incurred in the Third Quarter by the date of the Prospectus;

(c) defendants discussed historical SG&A expenses but failed to state that in the Third Quarter, ULTA had experienced a sharp increase in SG&A expenses which was contrary to the trend of those historical expenses by reason of heavy advertising expenses incurred in the Third Quarter;

(d) defendants falsely and misleadingly stated that "we plan to continue to improve our operating results by...decreasing our selling, general and administrative expenses, as a percentage of sales." This statement was false and misleading because defendant failed to disclose that ULTA's SG&A expenses had increased as a percentage of net sales in the Third Quarter;

(e)     defendants stated that the "effectiveness of our inventory management" was a risk that could impact comparable store sales and quarterly financial performance.  This statement was misleading because defendants failed to state that in the Third Quarter they were ineffective in managing inventory, causing it to rise 40% to theretofore unprecedented levels;

(f)     defendants, under the heading "Merchandising," stated that they had a "disciplined approach to buying and dynamic inventory planning and allocation..."  This statement was false and misleading because defendants failed to state that ULTA's Third Quarter inventories had risen 40%, in stark contrast to ULTA's historical experience;

(g)     defendants included historical balance sheets for January 28, 2006, February 3, 2007 and August 4, 2007 which showed a clear business trend of merchandise inventories rising by 15% to 18% per fiscal quarter.  These financials were misleading without any disclosure of the material fact that in the Third Quarter, which would close nine calendar days after the date of the Prospectus, ULTA's merchandise inventories had risen by 40%; and

(h)     defendants included a discussion of "Key trends" in ULTA's business but failed to state that, contrary to historical trends, ULTA had experienced in the Third Quarter an increase in SG&A expenses and an increase in inventories that were contrary to historical trends, making the reported discussion false and misleading;

As soon as the common stock began trading on October 25, 2007, the prices, based on the false and misleading Prospectus, surged 64.2% to close at $29.55 on October 25, 2007.

Without any prior corrective disclosures and without any prior warning to the market of the adverse undisclosed material facts, ULTA issued its earnings press release for the Third Quarter which closed on November 3, 2007, nine calendar days after issuance of the false and misleading Prospectus.  Defendants shocked the market by revealing the adverse material facts set forth above and the price of ULTA's common stock, reacting to the totally unexpected

adverse material facts, fell, first closing down 20.4% on December 11, 2007 and thereafter falling below the offering price of the common stock in the IPO.

## IV.    ARGUMENT

### A.    The Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this []title has been filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a0(3)(B)(ii).

Under Fed. R. Civ. P. 42, consolidation is appropriate when the actions involve common questions of law or fact. See Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation* §20.123, at 13-14 (3d ed. 1995); *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998); *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp 161, 175 (C.D. Cal. 1976).

Courts have recognized that class action shareholder suits, in particular, are ideally suited to consolidation pursuant to Rule 42(a) because their unification expedites pretrial proceedings, reduces case duplication, avoids the contacting of parties and witnesses for inquiries in multiple proceedings and minimizes the expenditure of time and money by all persons concerned. *See Equity Funding*, 416 F. Supp. at 176; *see also Cendant*, 182 F.R.D. at 478("consolidation is common in federal securities class action cases"). Consolidating multi-shareholder class action suits simplifies pretrial and discovery motions, class action issues and clerical and administrative management duties. Moreover, consolidation will reduce the confusion and delay that may result from prosecuting these related class action cases separately, *See Equity Funding*, 416 F. Supp at 176.

The Related Actions each assert class claims on behalf of the same Class. All of the actions have essentially the same defendants and allege identical causes of action. Thus, the factual and legal issues are virtually identical. Consolidation is appropriate when there are

actions involving common questions of law or fact. Fed.R.Civ. P. 42(a). *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (3d Cir.); *cert. denied*, 498 U.S. 920 (1990). That test is met here, and accordingly, the cases should be consolidated.

## V.    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS
### A.    Movants Have Satisfied The Procedural Requirements Pursuant To The PSLRA

The PSLRA sets forth a detailed procedure for the selection of lead plaintiffs to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. §77z-1(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of the pendency of the action and their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §77z-1(a)(3)(A)(i). Mirsky complied with this requirement. Exhibit B.[3] This notice advised class members of the pendency of the action, the claims asserted therein and the purported class period. In response to the notice, Fischer and Carroll submitted certifications stating their desire to serve as lead plaintiffs. Pursuant to the PSLRA, motions for the appointment of lead plaintiffs must be filed "not later than 60 days after the date on which the notice is published" which, in this case, is February 18, 2008. 15 U.S.C. §77z-1(a)(3)(A)(i)(II). Members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. §77z-1(a)(3)(A)(i)(II).

---

[3] The *Business Wire* service is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See In re Nice Systems Sec. Litig.*, 188 F.R.D. 206, 215 (D.N.J. 1999); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866 at *2 (N.D. Ill. Aug. 6,1997).

B.  **Movants are "The Most Adequate Plaintiffs"**
   1.  **Movants Have Made a Motion for their Appointment as Lead Plaintiffs**

According to the PSLRA, the Court shall consider any motion made by a class member and shall appoint as lead plaintiffs the movant that the Court determines to be most capable of adequately representing the interests of class members within 90 days after publication of the initial notice of pendency.  15 U.S.C. §77z-1(a)(3)(B)(i).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person **or group of persons** that-
>
> (aa)  has either filed the complaint or made a motion in response to a notice . . .
>
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions]. (emphasis added)

15 U.S.C. §77z-1(a)(3)(B)(iii)(I).  *See generally Greebel*, 939 F. Supp. at 64; *Lax*, 1997 U.S. Dist. LEXIS 11866 at *7.

Movants satisfy all of these criteria and is entitled to the presumption as the "most adequate plaintiff."  Mirsky has filed the first complaint and issued the first and only PSLRA-sanctioned notice.  Each member of Movants has signed the PSLRA-mandated certification.

9

### 2.     Movants Have the Largest Financial Interest

According to 15 U.S.C. §78u-4(a)(3)(b)(iii), the Court shall appoint as lead plaintiff the Class member who represents the largest financial interest in the relief sought in this action. *See In re Cendant Corp. Litig.,* 264 F.3d 201, 262 (3d Cir. 2001)(quoting 15 U.S. C. §4(a)(3)(B)(iii)(I)(bb)). Movants, collectively, have losses of approximately $23,264.[4] Mirsky purchased his ULTA common stock directly in the IPO and Fischer and Carroll purchased their ULTA common stock on the open market during the Class Period. Thus, Movants represents both types of members of the Class. In addition, Fischer and Carroll are mother and daughter.

Accordingly, Movants have satisfied the requirements of 15 U.S.C. §77z-1(a)(3)(B).

### 3.     Movants Otherwise Satisfy Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R. Civ. P. 23(a).

---

[4] Although the PSLRA is silent as to the manner in which the "largest financial interest" should be calculated, courts have addressed the following relevant factors: (1) the number of shares; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiff during the class period; and (4) the approximate losses suffered by the plaintiff. *In re Milestone Scientific Securities Litig.*, 183 F.R.D. 404, 413 (D.N.J. 1998) *quoting Lax* at *17. During the Class Period, Mirsky purchased 100 shares of ULTA in the IPO.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004). Movants satisfy both the typicality and adequacy requirements of Rule 23, have selected competent and experienced class counsel,[5] thereby justifying their appointment as Lead Plaintiffs.

### a. Movants Fulfill the Typicality Requirement

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. The Northern District of Illinois has held that "[t]he typicality requirements is satisfied if the claims and legal theories of the class representatives are the same as those of the absent class members, even though factual distinctions may exist." *Levett v. Chicago Bd. of Educ.*, 2001 U.S. dist LEXIS 315, at *7 (N.D. Ill. 2001). The requirement that the proposed class representative's claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412; *Philips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024( 5th Cir. 1981). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted that determines whether class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass 1988) ("'With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only

---

[5] Pursuant to 15 U.S.C. §77z-1(a)(3)(B)(v), lead plaintiff shall, subject to Court approval, select counsel to represent the Class. Movants have selected the Law Offices Bernard M. Gross, P.C., as Lead Counsel and Miller Law LLC as Liaison Counsel. These firms have extensive experience in prosecuting complex securities actions and are well qualified to represent the Class. *See* Motion, Exhibits C and D.

show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members'") (citation omitted).  Since the plaintiffs seek to prove that defendants "committed the same unlawful acts in the same method against an entire class . . . all members of this class have identical claims . . . [and] [t]herefore, the certification of the suit as a class action satisfied the requirements of Rule 23(a)(3)." *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Movants seek to represent a class of purchasers of Ulta common stock that have identical, non-competing and non-conflicting interests.  Movants satisfy the typicality requirement because, just like all other Class members, it: (1) purchased or otherwise acquired Ulta securities during the Class Period; (2) purchased or otherwise acquired Ulta securities at prices artificially inflated as a result of defendants allegedly materially false and misleading statements and/or omissions; and (3) suffered economic loss and damages thereby when the price of Ulta securities declined when the misrepresentations made it to the market, and/or the information alleged herein to have been concealed from the market, were revealed, removing the inflation from ULTA's securities price.  Thus, Movants' claims are typical of those of other Class members since its claims and the claims of other Class members arise out of the same course of events.

### b.     Movants Fulfill the Adequacy Requirement

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class.  The PSLRA directs this Court to limit its inquiry regarding the adequacy of Movants to represent the Class to the existence of any conflicts between the interest of Movants and the members of the Class.  The adequacy of representation requirement of Rule 23()(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class."  *In re Bank One Secs. Litig./First Chi. S'holder Claims*, 2002 U.S. Dist. LEXIS 8709, at *8-9 (N.D. Ill. 2002).  Representation is adequate when counsel for

the class is qualified and competent, and the interests of the representatives are not antagonistic to the interests of absent class members. *Gammon v. GC Serv. Ltd. Partnership*, 162 F.R.D. 313, 317 (N.D. Ill. 1996).

As detailed above, Movants are adequate representatives of the Class because they share common questions of law and fact with the members of the Class and their claims are typical of the claims of other Class members. Movants acquired shares of ULTA common stock at prices artificially inflated by defendants' materially false and misleading statements, the interests of Movants are clearly aligned with the interests of the members of the Class, and there is no evidence of any antagonism between Movants' interests and those of other members of the Class.

Further, Movants have already taken significant steps demonstrating that they have protected and will continue to protect the interests of the Class: the Mirsky Group has executed Certifications detailing their Class Period transactions and expressing their willingness to serve as Lead Plaintiffs; the Mirsky Group has moved this Court to be appointed as Lead Plaintiffs in this action; and Movants have retained competent and experienced counsel who, as shown below, will be able to conduct this complex litigation in a professional manner. *See generally*, *Lax*, 1997 U.S. Dist. LEXIS 11866, *21-25.

Furthermore, as is evident from the statutory language, a group of lead plaintiffs may be appointed under the PSLRA, and numerous courts have appointed small groups of plaintiffs as lead plaintiffs. *See*, *e.g.*, *In re Nice Sys., Ltd. Sec. Litig.*, 188 F.R.D. 206, 220-21(D.N.J. 1999) (appointing group of five individual investors as lead plaintiffs); *In re Oxford Health Plans Inc., Sec. Litig.*, 182 F.R.D. 42, 45 (S.D.N.Y. 1998) (appointing group of three as lead plaintiffs and finding that the interests of the class would be best served by the group of lead plaintiffs because of "the substantial benefits of joint decision-making and joint funding"); *In re Cephalon Sec.*

*Litig.*, No. 96-CV-0633, 1996 U.S. Dist. LEXIS 13492, at *2 (E.D. Pa. Aug. 27, 1996) ("Clearly, the Act does not preclude appointing more than one lead plaintiff.").

In the instant litigation, Movants constitute a small group of plaintiffs consistent with the language of the PSLRA, case law authority, and the SEC's view on the subject. *See* Memorandum of SEC, Amicus Curiae attached to the court's opinion in *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 224 (D.D.C. 1999) ("Construing the term 'group of persons' in light of the language and purposes of the [Reform] Act, a court generally should only approve a group that is small enough to be capable of effectively managing the litigation and the lawyers. The Commission believes that ordinarily this should be no more than <u>three to five persons</u>, a number that will facilitate joint decision-making and also help to assure that each group member has a sufficiently large stake in the litigation.") (emphasis added). Courts have routinely applied this statutory provision and have approved appropriate "groups" of investors to act as the lead plaintiff. *See*, *e.g.*, *In re Oxford Health plans Sec. Litig.*, 182 F.R.D. at 47 ("the plain language of the PSLRA expressly contemplates the appointment of more than one lead plaintiff"); *Funke v. Life Fin. Corp.*, No. 99 Civ. 11877, 2003 U.S. Dist. LEXIS 1226 (S.D.N.Y. Jan. 25, 2003) (allowing aggregation of nine plaintiffs); *Friedman v. Rayovac Corp.*, 219 F.R.D. 603, 604 (W.D. Wis. 2002) (allowing aggregation of plaintiffs); *Weltz v. Lee*, 199 F.R.D. 129 (S.D.N.Y. 2001) (appointing as lead plaintiff group of seven); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 436 (S.D.N.Y. 2000) ("The nomination of a group of investors as co-lead plaintiffs is specifically contemplated by the PSLRA"); *see also*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("The statute [PSLRA] contains no requirement mandating that the members of a group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class'"); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1067-70 (C.D. Cal. 1999) ("The Court sees no textual statutory obstacle to considering the three plaintiffs' financial interests together").

The proposed Lead Plaintiff group, the Mirksy Group, is a small, cohesive group that will enable them to work together as a unified force to direct the litigation and monitor counsel. Two of the three persons are mother and daughter. As a result, they have demonstrated that they can effectively manage the litigation with one voice and should be appointed Lead Plaintiffs. *Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, No. 00-3605 (DRD), 2000 U.S. Dist. LEXIS 16712, at *11-14 (D.N.J. Nov. 16, 2000).

## VI. THE COURT SHOULD APPROVE MOVANTS' CHOICE OF LEAD COUNSEL

### A. Movants' Choice of Lead Counsel Satisfies the Requirement of the PSLRA

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the Class. The Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). Movants have selected and retained Law Offices Bernard M. Gross, P.C., to serve as Lead Counsel and Miller Law LLC to serve as Liaison Counsel for the Class. These firms possess extensive experience litigating securities class actions and have successfully prosecuted numerous securities class actions on behalf of injured investors. *See* Motion, Exhibits C and D.

## VII. CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court: (a) appoint Movants as Lead Plaintiffs; (b) approve Deborah R. Gross and Robert P. Frutkin of the Law Offices Bernard M. Gross, P.C. as Lead Counsel; and (c) approve Marvin A. Miller of Miller Law LLC as Liaison Counsel.

Dated: February 18, 2008							Respectfully submitted,
											Marc Mirsky, Nedra Fischer and Stephanie Carroll



											By: s/Marvin A. Miller
													MARVIN A. MILLER
											LORI A. FANNING
											**MILLER LAW LLC**
											115 S. LaSalle Street, Suite 2910
											Chicago, IL 60603
											Tele: 312-332-3400
											Fax: 312-676-2676
											Email: mmiller@millerlawllc.com

											Proposed Liaison Counsel

												**DEBORAH R. GROSS**
											**ROBERT P. FRUTKIN**
											**LAW OFFICES BERNARD M. GROSS, P.C.**
											Suite 450, Wanamaker Building
											100 Penn Square East
											Philadelphia, PA 19107
											Tele:  (215) 561-3600
											Fax: 215-561-3000
											Email: debbie@bernardmgross.com
											Proposed Lead Counsel