IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE ULTA SALON, COSMETICS & )
FRAGRANCE, INC. SECURITIES LITIGATION ) No. 07 C 7083
) Judge Robert W. Gettleman

## MEMORANDUM OPINION AND ORDER

Lead plaintiffs Mark Mirsky, Nedra Fisher and Stephanie Carroll have brought a five count amended putative class action complaint against defendants Ultra Salon, Cosmetics & Fragrance, Inc.; its President and Chief Executive Officer ("CEO") Lynelle Kirby; and its Chief Financial Officer ("CFO") Gregg Bodnar, alleging violations of § 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77k and 77o, and § 10(b) and 20(a) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. 24.10b-5. All of plaintiffs' complaints stem from Ulta's initial public offering ("IPO") of common stock on October 25, 2007. Plaintiffs allege that in the Registration Statement and Prospectus defendants made certain false and misleading statements that violated § 11 of the Securities Act and § 10b of the Exchange Act. Defendants have moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons explained below, that motion is denied.

## BACKGROUND

Ulta was founded in 1990 and promotes itself as the largest beauty supply retailer offering one-stop shopping for prestige, mass, salon-quality products and salon services in the United States. At the time of the IPO Ulta operated approximately 232 retail stores located in 30 states. The Registration Statement, Prospectus and SEC forms were signed on October 24, 2007, and filed that day. In the IPO 7,666,667 shares of Ulta common stock were sold at $18 per

share. The proceeds were to be used to pay $93 million of accumulated dividends in arrears on its preferred stock, the approximate $4.8 million redemption price of Series 3 preferred stock, and to reduce the company borrowing. Certain selling shareholders also sold 1.3 million shares in the IPO. At the close of the first day of trading on October 25, 2007, Ulta's stock was selling at $29.82 per share.

Ulta's third quarter of fiscal year 2007 ended on November 3, 2007, nine days after the IPO. The Prospectus, Registration Statements and SEC forms included financial information through August 4, 2007, the end of the fiscal second quarter. None of these documents included financial information for the third quarter even though it was to end nine days later. According to plaintiffs, had third quarter financial information been provided, it would have revealed that: (1) Ulta's selling, general and administrative expenses ("SG&A expenses") in the third quarter had risen markedly, were contrary to the historical trends discussed in the Prospectus, and were 36% higher than the prior year's fiscal third quarter; and (2) Ulta's merchandise inventory levels had risen sharply in the third quarter, were contrary to the historical trends discussed in the Prospectus, and were 40% higher than the prior year's fiscal third quarter.

## DISCUSSION

Defendants have moved to dismiss all counts under Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss for failure to state a claim, the court accepts the well-pleaded factual allegations as true and draws all reasonable inferences in plaintiffs' favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). The complaint must describe the claim in sufficient detail to give defendant fair notice of what the claim is and the grounds on which the claims rest. The allegations must plausibly suggest that the plaintiff

has a right to relief, raising the possibility above the "speculative level." Bell Atlantic Corp.v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-73 (2007). Additionally, allegations of fraud must meet the particularity requirements of Fed. R. Civ. P. 9(b). In a securities fraud case, Rule 9(b) "requires the essential elements of scienter be pled with a sufficient level of factual support; the complaint "must afford a basis for believing that plaintiffs could prove scienter." In re HealthCare Compare Corp. Securities Litigation, 75 F.3d 276, 281 (7th Cir. 1996).

**Counts I and II**

Counts I and II allege violations of § 11 and 12(a)(2) of the Securities Act against all defendants. Section 11 imposes liability when a Registration Statement contains a material misrepresentation or omission. 15 U.S.C. § 77k(a). Section 12 creates similar liability for misrepresentation or omissions in a Prospectus. 15 U.S.C. § 77l(a)(2). These acts impose "a stringent standard of liability on the parties who play a direct role in a registered offering. In re Nationsmart Corporations Securities Litigation, 130 F.3d 309, 314-15 (8th Cir. 1997) (quoting Herman & MacLean v. Huddleston, 459 U.S. 375, 381-82 (1983)). To establish a claim, plaintiffs need only show that they purchased the security and that there was a material misrepresentation or omission. Scienter is not required. Liability of the issuer of a materially misleading registration statement is "virtually absolute," even for innocent misstatements. Id.

Defendants first argue that plaintiffs' §§ 11 and 12 claims do not satisfy the particularity requirements of Rule 9(b). There is a split of authority on this issue. Some circuits have held that §§ 11 and 12 claims that "sound in fraud" are subject to Rule 9(b)'s heightened pleading standards. See ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 69 (1st Cir. 2008). Others have held that Rule 9(b) does not apply to §§ 11 and 12 claims because proof of fraud or mistake

3

is not a prerequisite to liability. See In re Nationsmart Corp., 130 F.3d 309, 315 (8th Cir. 1997). Defendants argue that in Sears v. Likens, 912 F.2d 889, 892 (7th Cir. 1990), the Seventh Circuit has "indicated" that §§ 11 and 12 claims sounding in fraud are subject to Rule 9(b), but no district court within this circuit has read Sears as so holding. See In re First Merchants Acceptance Corp. Securities Litigation, 1998 WL 781118 at *11-12 (N.D. Ill. 1998) (Coar, J.); Friedman v. Rayovac Corp., 295 F. Supp.2d 957, 978-79 (W.D. Wis. 2003) (Crabb, J.).

This court agrees that the Sears court was not asked to and did not determine that Rule 9(b) applies to §§ 11 and 12 claims even if those claims "sound in fraud." Like the First Merchant and Friedman courts, this court questions the soundness of any decision requiring a plaintiff to plead fraud and scienter with particularity when neither is an element of the claim. "It is illogical to require plaintiffs to plead more than they would have to prove to succeed on a § 11 claim standing alone." First Merchants, 1998 WL 781118 at * 11 n.6. Such "a pleading standard which requires a party to plead particular facts to support a cause of action that does not include fraud or mistake as an element comports neither with Supreme Court precedent nor with the liberal system of 'notice pleading' embodied in the Federal Rules of Civil Procedure." In re Nationsmart, 130 F.3d at 315.

The instant amended complaint alleges that the Prospectus and Registration Statements omitted information that was necessary to make the disclosed information not misleading. Specifically, the materials omitted to disclose that SG&A expenses and inventory were increased dramatically for the fiscal third quarter, which would end just nine days after the IPO. These omissions care material because they could be viewed by a reasonable investor as having

4

significantly altered the total mix of information. Basic Inc. v. Levinson, 485 U.S. 224, 231 (1988).

Defendants argue that they are not subject to § 12 liability because they are not "sellers" within the meaning of the Securities Act. Section 12(a)(2) creates a private remedy for the buyer of a security against the seller for material misrepresentation in connection with the offer and sale. 15 U.S.C. § 77l(a)(2). A seller includes anyone who offers or sells a security by means of a Prospectus that includes an untrue statement of material fact or omits a material fact necessary in order to make the statements made not misleading. Id. To state a § 12 claim, plaintiffs must allege a buyer-seller relationship with defendants. That relationship arises where a defendant: (1) sells the security (i.e., passes title or other interest in the security to the buyer for value); or (2) successfully solicits the purchase of a security motivated at least in part by a desire to serve his own financial interest or those of the security owner. Pinter v. Dahl, 486 U.S. 622, 642 (1988).

Defendants argue that they do not meet the definition of a seller because the IPO occurred pursuant to a "firm commitment underwriting," where the issuer sells the shares directly to underwriters at a discount from the offering price. The underwriters then assume all risks for unsold shares and pass title to brokers-dealers and investors. As a result, defendants did not sell Ulta common stock directly to the public and did not pass title to plaintiffs. Thus, defendants argue that they are not sellers.

Defendant did sign the Prospectus, however, which by definition is a document that solicits the public to acquire securities. Gustafson v. Alloyd Co., 513 U.S. 561, 574 (1995).

5

Whether defendants were in fact "motivated at least in part by a desire to serve [their] own financial interests," cannot be decided on a motion to dismiss.

Defendants next argue that none of the plaintiffs have standing because the amended complaint does not allege that they purchased the securities in the IPO. This is simply incorrect. The amended complaint clearly alleges that Mirsky purchased shares of Ulta in the IPO. That is all that is required.

Finally, defendants argue that the § 11 claim fails to allege that plaintiffs suffered damages. Section 11(e) 15 U.S.C. § 77k(e), provides:

> The suit authorized under subsection a of this section may be to recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof at the time the suit was brought . . ..

The IPO price was $18 per share. Plaintiff Mirsky filed suit on December 17, 2007, at 4:34 p.m. The closing price of Ulta common stock on that date was $17.86 per share. Because the stock was selling below the IPO price at the time suit was filed Mirsky has alleged damages.

Accordingly, for the reasons discussed above, defendants' motion to dismiss the Securities Act claims in Counts I and II is denied.

**Count IV**

Count IV alleges that defendants violated § 10(b) of the Exchange Act and SEC Rule 10b-5. Defendants have moved to dismiss for failure to state a claim, arguing that the count fails to meet the pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA") amendment to the Exchange Act.

Rule 9(b) requires plaintiffs to plead the circumstances constituting fraud with particularity. This means the "who, what, when, where, and how: the first paragraph of any

newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990). In securities fraud cases, the PSLRA has raised the bar higher, requiring plaintiffs to "state with particularity facts giving rise to a strong inference that defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Plaintiffs must also specify each statement alleged to have been misleading, and the reason or reasons why the statement is misleading. 15 U.S.C. § 78u-4(b)(1).

To determine whether Count IV states a claim the court must accept all factual allegations in the complaint as true and consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on 12(b)(6) motions, including documents incorporated into the complaint by reference and matters of which a court may take judicial notice. The inquiry is whether all the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. The court must take into account plausible opposing inferences when determining whether the pleaded facts give rise to a strong inference of scienter. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007).

The elements of a Rule 10b-5 claim are: (1) defendants made a false statement or omission; (2) of a material fact; (3) with scienter; (4) in connection with the purchase or sale of securities; (5) upon which the plaintiffs justifiably relied; and (6) that the false statement proximately caused the plaintiffs' damages. Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 648 (1997).

Defendants raise two key challenges to the claim. First, they argue that plaintiffs fail to identify any materially misleading misrepresentation or omission. Next, they argue that the

7

complaint fails to plead particularized facts that give rise to a strong inference of scienter. The court rejects both arguments.

First, the gist of plaintiffs' complaint is that the Prospectus failed to include information necessary to make the information that was provided not misleading. In particular, plaintiffs allege that defendants were aware, at the time they prepared and signed the Prospectus, of negative news with respect to SG&A expenses and increased inventory levels that would be in the third quarter report, and yet went forward with the IPO without revealing that news. Plaintiffs allege that defendants affirmatively "timed" the IPO, which took place just nine days before the third quarter closed, to avoid disclosure.

Defendants argue that they had no duty to disclose in the Prospectus financial data for the still-pending third quarter. The cases on which they rely, however, do not support their position. In Gart v. Electroscope, Inc., 24 F. Supp.2d 969 (D. Minn. 1998), for example, the court rejected the plaintiffs' argument that a prospectus was misleading by omitting information for the fiscal quarter that ended three days after the IPO because the complaint was "totally devoid of any allegation that the Defendants knew of, had reason to know of, or possessed any quarter-in-progress information that was not disclosed in the Prospectus." Id. at 974. The instant complaint, however, sets out in detail how defendants either knew of the increased third quarter SG&A expenses and inventory levels, or why defendants should have known that information before signing the Prospectus.

Again, in DeMaria v. Andersen, 318 F.3d 170 (2nd Cir. 2003), also cited by defendants, the plaintiffs argued that the defendants were under a duty to disclose interim financial information in the Prospectus. The court rejected the plaintiffs' argument, but not, as the instant

8

defendants suggest, because interim financial data need never be disclosed as a matter of law. Indeed, the DeMaria court rejected the argument that mere compliance with SEC Reg. S-X, 17 C.F.R. § 210, which requires updated financial information if the financial statements in a filing are as of a date more than 135 days prior to the date of filing, insulated the defendants from liability under 10b-5. "The SEC's general regulations expressly provide that in addition the information expressly required to be included in a registration statement, there shall be added such further material information, if any, as may be necessary to make the required statements in light of the circumstances under which they are made, not misleading." DiMaria, 318 F.3d at 180.

Therefore, whether defendants had a duty to disclose whatever information they had available regarding the third quarter results depends on whether there is "a substantial likelihood that the disclosure of the omitted information would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." Id. (quoting TSC Indus. Inc. v. Northway, Inc., 426 U.S. 438, 441 (1976)).

In the instant case, the Prospectus reported positive financial trends in SG&A expenses, indicating specifically that the SG&A expenses as a percentage of net sales of 25.1 for the six month period ending August 4, 2007, the same percentage it had been for the comparable six month period ending July 29, 2006. The Prospectus also indicated similarly favorable trends in merchandise inventory levels. The documents can reasonably be read to suggest that such trends were expected to continue. The complaint alleges, however, that in fact both the SG&A expenses and merchandise inventory levels had risen dramatically in the third quarter as of the date the Prospectus was prepared, that defendants knew this by virtue of their position and

9

certain reports that had been provided by the company, and that defendants made a specific choice not to disclose that information. The fact that the price of the stock plummeted shortly after disclosure demonstrates that there is a substantial likelihood that disclosure of the information would have been viewed by a reasonable investor as having significantly altered the mix of information available.

Nor, as defendants argue, does the Rule 175 safe harbor for forward-looking statements protect defendants. 17 C.F.R. § 23.175(b)((1)(i). Under this Rule, projections of revenue, capital expenditures, and management's plans and objectives are not considered false and misleading unless made without a reasonable basis or disclosed other than in good faith. The instant complaint alleges that defendants knew that the SG&A expenses and inventory levels as of the date of the IPO were contrary to the trends reported in the Prospectus, because they had the actual data available to them at the time they made their statements. The complaint, read as a whole, contains sufficient factual allegations to show that defendants knew that Ulta had materially increased advertising expenses in the third quarter and thus knew that SG&A expenses for the third quarter were contrary to the trends disclosed. The complaint also alleges facts sufficient to show that defendants knew that its new warehouse management software system, touted in the Prospectus, had substantial operating problems that were causing an adverse build-up in unwanted merchandise inventories. Accordingly, the court concludes that the complaint adequately alleges a material misrepresentation or omission.

Next, defendants argue that plaintiffs have failed to plead particularized facts demonstrating a "strong inference" that each defendant acted with scienter, or "knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false."

Higginbotham v. Baxter Intern, Inc., 495 F.3d 753, 756 (7th Cir. 2007). A "complaint will survive only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference once could draw from the facts alleged, taking into account all plausible opposing inferences." Id. (quoting Tellabs, 127 S.Ct. at 2502, 2510).

Defendants argue that the complaint raises no inference of scienter because it is limited to hindsight "must have known" type allegations, without any evidence of motivation by defendants to commit fraud. As noted above, however, there are ample factual allegations that defendants knew that the third quarter results were off trend, particularly with respect to inventory levels, and that the warehouse management software program had significant problems. The complaint has detailed allegations about the warehouse management software problem and the resulting build-up of inventory, including allegations that weekly internal memoranda were produced. There can be no question that defendants had access to this information, as well as the information regarding increased advertising and the SG&A expenses. Therefore, there are allegations sufficient to support a strong inference that defendant either knew or intentionally avoided knowing that the Prospectus was misleading. This inference, that Kirby, President and CEO of Ulta, and Bodnar, the CFO, knew at the time that they signed the Prospectus of the increase in the SG&A expenses, unwarranted increased inventory levels, and the problem with the software touted in the Prospectus, is cogent and at least as compelling as the inference defendants suggest: that they were essentially clueless as to the major problems existing within the company.

For these reasons, the court concludes that the complaint alleges sufficient particularized facts to give rise to a strong inference of scienter. The motion to dismiss Count IV is denied.

**Counts III and V**

Finally, defendants' motion to dismiss Counts III and V, alleging control person liability against defendants Kirby and Bodnar under § 15 of the Securities Act and 20(a) of the Exchange Act, is wholly dependent on the success of their motion to dismiss the §§ 11, 12 and 10b claims. Because the court has denied the motion as to those three claims, the motion to dismiss Counts III and V is also denied.

## **CONCLUSION**

For the reasons set forth above defendants' motion to dismiss is denied. Defendants are directed to answer the amended complaint by April 9, 2009. This case is set for a report on status on April 16, 2009.

**ENTER:** March 19, 2009

_____
**Robert W. Gettleman
United States District Judge**