**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| _____ | : | |
| **IN RE ULTA SALON, COSMETICS** | : | No. 07 C 7083 |
| **& FRAGRANCE, INC. SECURITIES** | : | |
| **LITIGATION** | : | **CLASS ACTION** |
| _____ | : | |
| | : | |
| **This Document Relates to:** | : | |
| | : | **Hon. Robert W. Gettleman** |
| **ALL ACTIONS** | : | |
| _____ | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF**
**THE CLASS ACTION SETTLEMENT AND PLAN OF**
**ALLOCATION, FINAL CERTIFICATION OF THE CLASS, AND**
**THE JOINT PETITION FOR ATTORNEYS' FEES AND EXPENSES**

**TABLE OF CONTENTS**

PAGE

I.      THE ACTION.................................................................................2

II.     THE SETTLEMENT AGREEMENT PROVIDES FAIR, ADEQUATE,
        AND REASONABLE COMPENSATION TO THE CLASS FOR RELEASE
        OF THEIR CLAIMS        .................................................................7

        A.      Plaintiffs' Likelihood Of Success On the Merits\Risk of
                Continued Litigation ......................................................................8

        B.      The Stage Of The Litigation And The Amount of Discovery ..................11

        C.      The Complexity, Length and Expense of Further Litigation Supports
                Approval of the Settlement .......................................................12

        D.      The Amount of Opposition to the Settlement...........................................12

        E.      The Settlement is the Product of Good Faith, Arm's Length Negotiations
                including Mediation with an Experienced Mediator ................................13

        F.      Lead Counsel Endorses the Settlement......................................................13

III.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND
        ADEQUATE...................................................................................14

IV.     FINAL CERTIFICATION OF THE CLASS IS APPROPRIATE.......................15

VI.     THE JOINT PETITION'S REQUEST FOR ATTORNEYS' FEES
        AND EXPENSES IS REASONABLE SHOULD BE AWARDED BY
        THIS COURT .................................................................................16

        A.      The Requested Fees and Expenses Meet the Seventh Circuit's
                Standards for Approval ...........................................................16

        B.      The 30% Attorneys' Fee Request is in Line with Fees Awarded
                by District Courts within the Circuit in Securities Class Action
                Settlements..............................................................................19

        C.      Plaintiffs' Counsel Provided the Class with Quality Legal Services.........19

        D.      The Attorney's Fees Requested are Fair and Reasonable in Light of
                the Risks Assumed by Lead Counsel........................................................20

i

E.    The Positive Reaction of the Class Strongly Supports
      Approval of the Fee Award..........................................................................21

F.    The Court Should Award Reimbursement for Expenses Incurred ............21

VII.  CONCLUSION........................................................................................................22

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Amchem Products v. Windsor*, 521 U.S. 591 (1997) ........................................................15

*Armstrong v. Board of School Director Of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) .........................................................................................................................7

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)..............................................................16

*Carson v. American Brands, Inc.*, 450 U.S.79 (1981) ........................................................8

*Cooper v. IBM Person Pension Plan*, 2005 U.S. Dist. LEXIS 17071 (S.D. Ill. Aug. 16, 2005), "'..............................................................................................................17, 19

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ...........................................10

*Edmonds v. United States*, 658 F. Supp. 1126 (D.S.C. 1987)............................................19

*Florin v. Nationsbank, N. A.*, 34 F.3d 560 (7th Cir. 1994) ....................................16, 18, 20

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998).......................................................16, 20

*Gaskill v. Gordon*, 942 F. Supp. 382 ( N.D. Ill. 1996), *aff'd,* 160 F.3d 361 (7th Cir. 1998) ...................................................................................................................18

*Goldsmith v. Technology Solutions Co.*, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. 1995) ....................................................................................................................18

*Great Neck Capital Appreciation Investment P§ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400 (E.D. Wis. 2002)..................................................7, 13, 14

*Harman v. Lyphomed, Inc.*, 945 F.2d 969 (7th Cir. 1991) ................................................17

*In re Continental Ill. Sec. Litigation*, 962 F.2d 566 (7th Cir. 1992)("*Cont'l I*") ..........16, 21

*In re Continental Ill. Sec. Litigation*, 985 F.2d 867 (7th Cir. 1993) .................................16

*In re General Instrument Corp. Sec. Litigation*, 1999 U.S. Dist. LEXIS 18182 (N.D. Ill. Nov. 18, 1999).............................................................................................16

*In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................................................8, 14

*In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002 (N. D. Ill. 2000), *aff'd*, 267 F.3d 743 (7th Cir. 2001) ....................................................................12, 13

*In re Synthroid Marketing Litigation*, 264 F.3d 712 (7th Cir. 2001).....................17,20, 21

*In re Warner Commc'ns*, 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986) ....................................................................................................19

*Isby v. Bahy*, 75 F.3d 1191 (7th Cir. 1996)........................................................7, 8, 12, 13

*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986) ...............................................................18

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586 (N.D. Ill. 2009) ................15

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677 (7th Cir. 1987) ........................................................................................................7

*Phemister v. Harcourt Brace Jovanich, Inc.*, 1984 U.S. Dist. LEXIS 23595 (N.D. Ill. Sept. 14, 1984)................................................................................................18

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ....................................................15

*Retsky Family Ltd. Partnership v. Pricewaterhouse LLP*, 2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 10, 2001) ...................................................................14

*Silverman v. Motorola, Inc.*, 2009 U.S. Dist. LEXIS 75418 (N.D. Ill. Aug. 25, 2009) ................................................................................................................15

*Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) .......................................17, 19, 20

*Uhl v. Thoroughbred Technology and Telecommunication, Inc.*, 309 F.3d 978 (7th Cir. 2002)................................................................................................16

*Williams v. First National Bank of Pauls Valley*, 216 U.S. 582 (1910) .............................7

Lead Plaintiffs Marc Mirsky, Nedra Fischer and Stephanie Carroll, by their undersigned Lead Counsel, Law Offices Bernard M. Gross, P.C. (the "Gross Firm") and Liaison Counsel, Miller Law LLC (the "Miller firm"), respectfully submit this memorandum of law in support of final approval of the proposed settlement (the "Settlement") of this class action (the "Action"), pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("FRCP"), and in support of the Joint Petition for Attorneys' Fees and Expenses (the "Joint Petition").

As set forth in the Stipulation and Agreement of Settlement dated June 29, 2009, (the "Settlement Agreement") the Settlement provides for a Settlement Fund in the amount of $3,750,000 in cash, plus interest, for the benefit of the Class. The Court granted preliminary approval of the Settlement by Order dated August 7, 2009 (the "Preliminary Approval Order") and set the fairness hearing on the final approval of the Settlement for November 16, 2009, at 10:00 a.m. The Preliminary Approval Order also provided for conditional certification of the Class and ordered the mailing and publication of notice to class members. The Claims Administrator has submitted an Affidavit of Michael B. Miller which is being filed with the Court. *See* Exhibit A ("Michael Miller Affidavit"). No objection to the Settlement, Plan of Allocation or the Joint Petition has been filed by any member of the Class.

For the reasons set forth herein and supported by the Declarations of counsel submitted herewith and by the prior proceedings in the Action, the Settlement is fair, reasonable and adequate and should be approved by the Court. The Settlement provides substantial cash relief to Class members, and avoids the delays, uncertainties and expense associated further litigation of the Action. The conditional certification of the Class should be made final. All of the requirements of F.R.Civ.P. 23, have been amply satisfied. The Plan of Allocation of the Settlement Fund to members of the Class is fair and reasonable and should be approved by the

1

Court.  Finally, the Joint Petition seeks a fair and reasonable award of attorneys' fees and expenses to all plaintiffs' counsel, and Lead Counsel respectfully requests an award of 30% of the Settlement Fund and $60,000 in expenses.

## I.    THE ACTION[1]

On December 17, 2007, the Gross Firm, on behalf of Marc Mirsky, filed the first of two class action complaints (the "*Mirsky* action") in this Court arising out of the initial public offering ("IPO") of the common stock of Ulta Salon, Cosmetics & Fragrance, Inc. ("ULTA"). Thereafter, the second class action complaint was filed by Eugene B. Chase, III (the "*Chase* action").   The named defendants in both complaints were ULTA, its President and Chief Executive Officer, Lynelle P. Kirby, and its Chief Financial Officer, Gregg R. Bodnar.  By Order dated February 21, 2008, this Court, pursuant to Local Rule 40.4, made a finding that the *Chase* action was related to the *Mirsky* action and, by Order dated February 22, 2008, the *Chase* action was reassigned to the calendar of Judge Robert W. Gettleman.

On January 9, 2008, Latham & Watkins LLP entered its appearance for all defendants. The parties entered into a stipulation extending Defendants' time to answer, which was granted, on Defendants' motion, on January 15, 2008. The Court set a status for February 20, 2008.

On February 18, 2008, the Gross Firm filed a motion to consolidate the *Mirsky* action and the *Chase* action and for appointment of Marc Mirsky, Nedra Fischer and Stephanie Carroll as Lead Plaintiffs, the Gross Firm as Lead Counsel and Miller Law LLC (the "Miller firm") as Liaison Counsel.   Counsel in the *Chase* action filed a motion for consolidation and for appointment of his counsel as Lead Counsel on February 19, 2008.

---

[1]The factual assertions set forth herein are set forth in the Declaration Of Robert P. Frutkin In Support Of Lead Plaintiffs' Motion For Approval Of The Settlement And Plan Of Allocation And In Support Of The Joint Petition For Attorneys' Fees And Expenses, attached hereto as Exhibit B.

At the February 20, 2008, status, the Court set a briefing schedule on the pending proposed lead plaintiffs' motions and set a status for March 18, 2008.   As the result of conversations between plaintiffs' counsel concerning the size of the losses suffered by the competing movants, counsel for plaintiff in the *Chase* action filed a notice of withdrawal of motion for appointment as Lead Plaintiff and for appointment of his counsel as Lead Counsel.

By Order dated March 18, 2008, the *Mirsky* and *Chase* actions were consolidated and Marc Mirsky, Nedra Fischer and Stephanie Carroll were appointed Lead Plaintiffs, the Gross Firm was appointed Lead Counsel and the Miller firm was appointed Liaison Counsel.   The Court set the dates for the filing of an amended complaint and Defendants' time to answer, move or otherwise response.   The next status was set for July 24, 2008.

Lead Plaintiffs, through Lead Counsel, continued their investigation of the allegations made in the *Mirsky* and *Chase* complaints.   Lead Counsel engaged the services of several consultants to participate in the investigation of the factual allegations and to further analyze the materiality of the alleged misrepresentations and the damages suffered by the class in connection with their claims under Section 11 and Section 10(b).   In the course of that continued investigation, numerous former employees of ULTA were interviewed.

The Amended Complaint, filed May 19, 2008, alleged causes of action for violation of Sections 11, 12(2) and 15 of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5.   In sum, the Amended Complaint alleged that Defendants violated these sections of the federal securities laws by making false and misleading statements in the prospectus for the IPO concerning two areas of ULTA's operations:   (a) the level of selling, general and administrative ("SG&A") expenses incurred in the Third Quarter of 2007, the three months ended November 3, 2007 (the "Third

Quarter"), and (b) the levels of ULTA's merchandise inventories in the Third Quarter.   Lead

Plaintiffs alleged that the prospectus failed to disclose that both the SG&A expenses and the

merchandise inventory levels had spiked during the Third Quarter and were contrary to the levels

described in the prospectus for the prior quarters of ULTA's operations.   Defendants had

launched the IPO only nine business days prior to the close of the Third Quarter, in an effort,

Lead Plaintiffs alleged, to conceal these material facts in order not to jeopardize either the

success of the IPO or the price of the shares to be offered in the IPO.

The alleged misrepresentations in the prospectus for the IPO are detailed in paragraphs

44 through 46 of the Amended Complaint, for purposes of the causes of action pursuant to

Sections 11, 12 and 15 of the Securities Act.   The reasons why those statements were materially

misleading are set forth in paragraph 45(e), 46 and 47 of the Amended Complaint.   Those same

misrepresentations give rise to the causes of action for violation of Sections 10(b) and 20 of the

Exchange Act, as alleged in paragraph 79 of the Amended Complaint.   Because scienter is an

essential element of a cause of action under Section 10(b) of the Exchange Act that must be

pleaded with particularity and in accordance with the provisions of the Private Securities

Litigation Act of 1995 ("PSLRA"), Lead Plaintiffs alleged Defendants' scienter in paragraphs

80, 81 and 93 of the Amended Complaint.   Paragraph 99 of the Amended Complaint details the

information Lead Counsel obtained from the former employees of ULTA which confirmed the

factual allegations of the Amended Complaint.   Defendants made no further statements to the

market concerning ULTA's financial condition until the dissemination of ULTA's Third Quarter

2007 earnings press release on December 11, 2007.

The class period alleged in the Amended Complaint began on October 25, 2007, the date

of the IPO, and continued until December 10, 2007, the day before the disclosure of the alleged

4

omitted facts concerning the rise in the SG&A expenses and inventory levels in ULTA's Third Quarter press release.   All members of the class have both Securities Act and Exchange Act causes of action against Defendants, based on the statements made in and omitted from the prospectus for the IPO.

On July 21, 2008, Defendants filed their motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6) and the PSLRA.   With respect to Lead Plaintiffs' cause of action under Section 10(b) of the Exchange Act, Defendants argued that Lead Plaintiffs failed to plead any actionable misrepresentations in the prospectus for the IPO and failed to plead sufficient facts giving rise to a strong inference of scienter under the PSLRA.   With respect to the causes of action for violation of Sections 11 and 12 of the Securities Act, Defendants argued that the Amended Complaint failed to satisfy Rule 9(b), FRCP and did not establish recoverable damages under Section 11.   Defendants also argued that they were not statutory sellers within the meaning of Section 12.

After full briefing of the issues raised by Defendants in their motion to dismiss, the Court, on March 19, 2009, issued its Memorandum Opinion and Order, denying Defendants' motion to dismiss in its entirety.

In connection with the April 17, 2009, status, counsel negotiated a proposed scheduling order and presented it to the Court.   The Court set the next status for October 21, 2009. Defendants' filed their Answer on April 20, 2009, denying the material allegations of the Amended Complaint and pleading 32 affirmative defenses.   Lead Plaintiffs served document requests on Defendants on April 20, 2009.

During this period, the parties had discussions concerning the potential for settlement of the Action, and it was agreed to seek the offices of a mediator to aid in that process.   The parties

agreed on retired Judge Nicholas H. Politan, United States District Judge, and the mediation was scheduled for May 29, 2009. In advance of the mediation, the parties each submitted a confidential statement of the case and supporting materials to Judge Politan. The mediation, conducted in New York City, consisted of a frank and complete discussion of the strengths and weaknesses of Lead Plaintiffs' claims and Defendants' defenses, including issues relating to scienter, materiality and damages. Judge Politan participated fully in these discussions and his views of the issues were instructive. At the end of the process, the parties agreed to the Settlement, in principle and subject to documentation.

The parties continued to negotiate the documentation evidencing the Settlement and signed the Stipulation on June 29, 2009. Lead Plaintiffs filed the motion for preliminary approval of the Settlement and hearings were held on July 23, 2009, and August 7, 2009. Lead Plaintiffs submitted memoranda in support of preliminary approval along with the Stipulation and supporting exhibits. On August 7, 2009, the Court signed the Preliminary Order In Connection With Settlement Proceedings ("Preliminary Approval Order"). The Preliminary Approval Order gave preliminary approval to the Settlement and to the Plan of Allocation of the Settlement Fund. The Court approved the selection of the Claims Administrator and the notices to the members of the Class and set the dates by which members of the Class are required to file objections to the Settlement or the Joint Petition, request exclusion from the Class and file Proofs of Claim to share in the Settlement Fund. The Preliminary Approval Order set the date for the fairness hearing on the Settlement, Plan of Allocation and Joint Petition for November 16, 2009 at 10:00 a.m.

Pursuant to the Preliminary Approval Order, 15,360 copies of the Notice and Proof of Claim have been mailed to prospective class members. *See* Michael Miller Affidavit, ¶7. On

August 21, 2009, the Summary Notice of settlement was published over the PR Newswire.  *See*

Michael Miller Affidavit, ¶4.  As of this date, no objections have been received.  As of the date

hereof, no requests for exclusion have been received.  *See* Michael Miller Affidavit, ¶8.

## II.   THE SETTLEMENT AGREEMENT PROVIDES FAIR, ADEQUATE, AND REASONABLE COMPENSATION TO THE CLASS FOR RELEASE OF THEIR CLAIMS

Under F.R.Civ.P. 23(e), a class action settlement should be approved where, as here, the

settlement is "fair, reasonable and adequate."  *Isby v. Bahy*, 75 F.3d 1191, 1196 (7th Cir. 1996).

As a matter of public policy, the courts favor the settlement of disputed claims.  *Williams v. First*

*National Bank of Pauls Valley*, 216 U.S. 582, 595 (1910).

The settlement must be viewed in its entirety rather than focusing on any individual

component.  *Armstrong v. Board of School Dir. Of City of Milwaukee*, 616 F.2d 305, 315 (7th

Cir. 1980).  It must also be considered in the light most favorable to the settlement. The

proceedings to approve a settlement should not be transformed into an abbreviated trial on the

merits.  *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir.

1987); *Armstrong*, 616 F.2d at 314.  Courts should hesitate to substitute their own judgment for

the judgment of the litigants and their counsel.  As the Seventh Circuit has held:

> Because settlement of a class action, like settlement of any litigation, is basically
> a bargained exchange between the litigants, the judiciary's role is properly limited
> to the minimum necessary to protect the interests of the class and the public.
> Judges should not substitute their own judgment as to optimal settlement terms for
> the judgment of the litigants and their counsel.

*Armstrong*, 616 F.2d at 315 (7th Cir. 1980).

A strong presumption of fairness attaches to a settlement when it is the result of this type

of negotiations.  *Great Neck Capital Appreciation Inv. P'ship, L.L.P. v. Pricewaterhouse*

*Coopers L.L.P.,* 212 F.R.D. 400, 410 (E.D. Wis. 2002) (holding, where settlement reached after

mediation, that "[a] strong presumption of fairness attaches to a settlement agreement when it is the result of this type of negotiation.") (citing *Anderson v. The Torrington Co.*, 755 F. Supp. 834, 838 (N.D. Ind. 1991)).   Here, this strong presumption applies because the Settlement was negotiated at arm's length between Lead Counsel and Defendants' Counsel through the mediation process.

Courts in this circuit consider the following factors in evaluating the fairness of a class action settlement:

> (1) the strength of Lead Plaintiffs' case compared to the amount of the settlement; (2) settling defendant's ability to pay; (3) complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) evidence of collusion; (6) opinions of counsel; and (7) the stage of the proceedings and amount of discovery completed.  *Isby* at 1199.

As explained below, analysis of these relevant factors demonstrates that the Settlement is fair, reasonable and adequate and merits the Court's approval.

## A.      Plaintiffs' Likelihood Of Success On the Merits/Risk of Continued Litigation

The foundation of any settlement is the uncertainty as to the outcome of the lawsuit. Thus, one of the factors the Court should consider is whether there are questions of law or fact which could place the ultimate outcome of the litigation in doubt.  In assessing risks as to proof, the Court does not "decide the merits of the case or resolve unsettled legal questions." *Carson et al. v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981).   Accordingly, courts routinely approve settlements where plaintiffs would have faced significant legal or factual obstacles to establishing liability.  *See In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).  Lead Counsel's decision to settle this action for $3.75 million necessarily took into account the risks of continued litigation against the Defendants.

During the course of the mediation, including the preparation of the mediation statements and the consultation with experts, certain issues became paramount in terms of Lead Plaintiffs' ability to prove the elements of their causes of action.  Lead Counsel believes that the evidence they uncovered during their independent factual investigation, as well as the sources of that evidence, as detailed in the Amended Complaint, would enable Lead Plaintiffs to establish the facts alleged in the Amended Complaint at trial. With respect to the allegations of misrepresentation concerning ULTA's Third Quarter SG&A expenses and inventory levels in the prospectus for the IPO, the parties have no real dispute as to the amount of those items.  It is hotly contested, however, whether those facts were material, whether Defendants' alleged misrepresentations caused any inflation in the market price of ULTA's common stock and whether Defendants possessed the requisite scienter with respect to those facts for purposes of the cause of action under Section 10(b) of the Exchange Act. Defendants steadfastly clung to their position that they did not believe that ULTA's levels of SG&A expenses and inventories in the Third Quarter, which had not closed by the date of the IPO, had to be disclosed in the prospectus.  No doubt, the Defendants would have testimony from their attorneys and auditors in connection with the drafting of the IPO prospectus that would buttress their position.

As discussed during the course of the mediation, Lead Plaintiffs' ability to establish the materiality of the alleged false and misleading statements made in the prospectus for the IPO, as well as their ability to establish loss causation presented a significant risk.  Although the price of ULTA common stock price dropped upon the disclosure of the rise in ULTA's SG&A expenses and merchandise inventory levels in the Third Quarter, the price of ULTA's common stock did not initially fall below the IPO price.  In addition, the Third Quarter earnings press release and conference call disclosed many other facts concerning ULTA's current and future business and

9

financial condition.   None of the securities analysts on the earnings conference call voiced concern over the rise in ULTA's SG&A expenses and merchandise inventory levels that was disclosed in the press release.  Thus, Lead Plaintiffs faced the significant risk that they would not be able to establish either materiality or loss causation.

Lead Plaintiffs faced a significant problem with respect to the amount of provable damages arising out of the Section 11 claims under the Securities Act.  The statutory measure of damages yielded damages of $0.14 per share, which, when multiplied by the approximate 8.5 million shares sold in the IPO, resulted in damages of approximately $1.2 million.  In addition, as permitted by the Securities Act, Defendants, in the nature of an affirmative defense, would argue that the stock price decline at the end of the Class Period was not attributable to the alleged misstatements.   The Third Quarter press release, which contained the undisclosed facts concerning the rise in ULTA's SG&A expense and inventory levels which Lead Plaintiffs allege should have been disclosed in the prospectus for the IPO, also contained other negative disclosures of facts not alleged to have been misrepresented in the IPO prospectus. When the price of ULTA's common stock dropped on December 11, 2007, the closing price was still above the IPO price of $18.   In addition, the retail stock index, the industry in which ULTA operates, also dropped at this time.

With respect to damages under Section 10(b) of the Exchange Act, Lead Plaintiffs faced the risk that damages would be greatly reduced by the application of *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  Under *Dura*, it is arguable that the increase in the market price of ULTA common stock during the Class Period above the $18 per share IPO price was not causally related to the alleged misrepresentations.  Although the price of ULTA common stock traded throughout the Class Period at prices significantly above the $18 IPO price, Defendants

did not make any statements to the market after they issued the prospectus on October 25, 2007. When the disclosures were made on December 11, 2007, the price of ULTA common stock did not fall below the $18 IPO price. Thus, the amount of provable damages was a significant question and one that was discussed in depth at the mediation. In addition, recent case law, including *Dura*, supports the reduction of damages by eliminating any Class Member whose loss was caused by his having purchased and sold his shares during the Class Period, before the disclosure of the alleged misrepresented facts.

### B.       The Stage Of The Litigation And The Amount of Discovery

Lead Plaintiffs had not engaged in formal discovery before they reached the Settlement in principle at the mediation. However, the issues in the Action which created the risks facing Lead Plaintiffs in proving their causes of action and in establishing substantial damages, as discussed above, are more legal than factual. Based on the information Lead Plaintiffs obtained through their investigation, including interviews with former ULTA employees, Lead Plaintiffs, at the time they reached the Settlement in principle, had a firm understanding of the relevant facts. For example, there is no real dispute as to what the levels of SG&A expenses and merchandise inventories were at the time of the IPO, that Defendants knew what they were and that those Third Quarter preliminary figures were not included in the prospectus for the IPO.

However, as discussed above, the legal issues were hotly disputed by the parties. The risks of proving materiality, scienter and damages, for example, were real and were fully explored at the mediation. Lead Counsel also consulted with experts with respect to these legal issues and the calculation of provable damages at trial.

Consequently, Lead Plaintiffs had a firm understanding of the likelihood of success and the likely recovery at trial at the time the Settlement was reached.

11

### C.     The Complexity, Length and Expense of Further Litigation Supports Approval of the Settlement

In determining the fairness of the settlement, courts also consider "the likely complexity, length and expense of the litigation." *Isby*, 75 F.3d at 1199.  If the Action were not settled at this time, the parties were faced with numerous complex, lengthy and expensive pretrial procedures, as well as a lengthy trial, and probable appeal from any judgment.  For example, the parties would have to engage in class certification discovery and briefing.  They would also have to engage in document production and depositions, including depositions of Defendants and the underwriters and attorneys for the IPO.  Experts would have to be formally retained and their reports written.  The experts would themselves be deposed.  *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N. D. Ill. 2000) ("Further litigation would undoubtedly require additional written discovery and depositions, including expert discovery."), *aff'd*, 267 F.3d 743 (7th Cir. 2001).  No doubt, Defendants would move for summary judgment in advance of trial.  The trial itself would be expensive, as would any appeal following entry of judgment, and the risk of obtaining a greater recovery and the Settlement amount, or any recovery at all, is real.

These litigation realities support the reasonableness of the Settlement. The Settlement secures a $3.75 million cash benefit for the Class without the delay, risk, and uncertainty of continued litigation, and without further expense.

### D.     The Amount of Opposition to the Settlement

The reaction of the Class to the Settlement supports final approval of the Settlement. More than 15,000 notices have been mailed and the summary notice was published on the PR Newswire.   **No objection to the Settlement has been received from any member of the Class**.  In addition, no members of the Class have requested exclusion.  This result supports final

approval of the Settlement.  *See Great Neck Capital*, 212 F.R.D. at 410 ("A favorable reception by the class is evidence of the fairness of a proposed settlement.").

### E.      The Settlement is the Product of Good Faith, Arm's Length Negotiations including Mediation with an Experienced Mediator

The Settlement is the product of good faith, arm's-length negations between experienced counsel, aided by the mediation process.  As the court in *Great Neck Capital*, 212 F.R.D. at 410, recognized, "[a] strong presumption of fairness attaches to a settlement agreement when it is the result of [mediation]."

### F.      Lead Counsel Endorses the Settlement

The views of the attorneys who engaged in settlement negotiations are entitled to significant weight.  *See, e.g.*, *Isby*, 75 F.3d at 1200 (district court entitled to give consideration to the opinion of competent Class Counsel that the settlement was fair, reasonable, and adequate); *Mexico Money Transfer*, 164 F. Supp. 2d at 1020 ("The court places significant weight on the unanimously strong endorsement of these settlements by [Lead] Plaintiffs' well-respected attorneys.")

Lead Counsel for Lead Plaintiffs and the Class, who have significant experience in securities class action litigation, based on the factors discussed herein, believes that the Settlement provides for a fair and reasonable resolution of the Action and generates a good recovery for the members of the Class.  Counsel for Defendants, Latham & Watkins, LLP, who also have extensive experience in securities class action litigation, also support the final approval of the Settlement.

Lead Counsel had a thorough understanding of the strengths and weaknesses of Lead Plaintiffs' case at the time they entered into the Settlement.  Lead Counsel had considered carefully the strengths and weaknesses of Lead Plaintiffs' case; the likelihood of success against

Defendants; and the likely total damages which could be recovered.  After conducting a thorough analysis of the action, and all relevant factors, and after conducting extensive arms-length settlement negotiations with counsel for Defendants, Lead Counsel have determined that given the substantial benefits conferred on the Class by the Settlement, the Settlement is fair, reasonable, and adequate, and in the best interests of the Class.

## III.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

The plan of allocation of the settlement fund to the members of the Class also must be fair, reasonable and adequate. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 10, 2001); *Great Neck Capital*, 212 F.R.D. at 410. "When formulated by competent and experienced class counsel," a plan for allocation "need only have a reasonable, rational basis."  *Global Crossing*, 225 F.R.D. at 462 (citations omitted). "Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach." *Id*.

Here, the Settlement funds are allocated to members of the Class based on the ratio of the numbers of shares purchased by the member of the Class to the aggregate number of shares of all members of the Class times the amount of the Settlement fund available for distribution.  Each member of the Class is treated equally.  The Plan of Allocation was developed by Lead Counsel, in consultation with a damage expert, and reflects an assessment of how legally cognizable damages would be determined at trial and how those damages would have been distributed to members of the Class. This pro-rata distribution is reasonable and is based on the fact that, *inter alia*, the actual purchase price is not relevant because there is a very substantial risk that the inflation in the market price above the $18 IPO offering price is not legally recoverable.  Thus,

under either the Section 11 or Section 10(b) cause of action, the only variable relevant to the Plan of Allocation is the number of shares purchased and held to the last day of the Class Period.

The Plan of Allocation will result in a fair and equitable distribution of the proceeds of the Settlement to members of the Class and should be approved.[2]

## IV.    FINAL CERTIFICATION OF THE CLASS IS APPROPRIATE

The requirements of Rule 23(a) and (b)(3) have been met and final certification of the Class is warranted. The elements of numerosity, commonality, typicality, and adequacy of representation, have all been satisfied under Rule 23(a).  *See Silverman v. Motorola, Inc.*, 2009 U.S. Dist. LEXIS 75418, at *11 (N.D. Ill. Aug. 25, 2009) (certifying securities fraud class action); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 594 (N.D. Ill. 2009) (same).  Rule 23(b)(3) is also satisfied as common questions are present and those common questions "predominate over any questions affecting only individual members."  *See Silverman*, 2009 U.S. Dist. LEXIS 75418, at *11, citing *Amchem Prods., Inc. v. Windsor et al.*, 521 U.S. 591 (1997).

A necessary part of the settlement process for cases filed as class actions is the approval of a class before or at the time the settlement is approved by the court.  It is widely recognized that a class action is a particularly appropriate mechanism for individual shareholders to obtain recovery in cases of alleged securities fraud.  *See e.g. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class actions allow "[Lead] [P]laintiffs to pool claims which would be uneconomical to litigate individually …[M]ost of the [Lead P]laintiffs would have no realistic day in court if a class action were not available").  Accordingly, "[i]n a securities fraud action,

---

[2] As explained above, no member of the Class has objected to the Plan of Allocation which was fully described in the notice.

'any error, if there is one, should be committed in favor of allowing a class action." *In re Gen. Instrument Corp. Sec. Litig.*, 1999 U.S. Dist. LEXIS 18182, at *14 (N.D. Ill. Nov. 18, 1999).

When this Court entered its Order on August 7, 2009, it preliminarily found, based on an analysis of, and factual record, that the requirements of Rule 23 have been satisfied. No facts have emerged since the Court preliminarily certified this Settlement Class that would warrant further inquiry. In addition, since the dissemination of the court-ordered notices, no member of the Class has requested exclusion from the Class. Here, like *Uhl v. Thoroughbred Tech. and Telecomm., Inc.*, 309 F.3d 978, 988 (7th Cir. 2002), this Court will act properly pursuant to Seventh Circuit authority when it confirms those findings and grants final approval that the requirements of Rule 23 have been satisfied.

Final certification of the Class is warranted.

## VI.   THE JOINT PETITION'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE SHOULD BE AWARDED BY THIS COURT

### A.   The Requested Fees and Expenses Meet the Seventh Circuit's Standards for Approval

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). *See also Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998); *Florin v. Nationsbank, N. A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992)("*Cont'l I*"); *In re Cont'l Ill. Sec. Litig.*, 985 F.2d 867, 868 (7th Cir. 1993).

Here the Joint Petition requests attorneys' fees of 30% of the Settlement Fund and expenses in the amount of $60,000. All plaintiffs' counsel join in the Joint Petition and there is

no dispute among plaintiffs' counsel with respect to attorneys' fees.[3]   In *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005), the Seventh Circuit provided guidance for the award of attorneys' fees in a securities class action:

> "[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time. . . Although it is impossible to know *ex post* exactly what terms would have resulted from arm's length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions."

*Id.* at 599 (citation omitted).   In affirming an award of fees equaling 30% of the $7.25 million settlement fund plus expenses, the *Aon* court considered, among other things, the following factors: (1)"awards made by courts in other class actions" which "amounted[ed] to 30-39% of the settlement fund"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case." *Id.* at 600.   In considering a fee request, the court must do its "best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001).

Lead Counsel request the Court follow the percentage-of-the-fund approach to awarding attorneys' fees. As set forth in *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 975 (7th Cir. 1991), "[t]he decision of whether to use a percentage method remains in the discretion of the district court."   As noted by the court in *Cooper v. IBM Pers. Pension Plan*, 2005 U.S. Dist. LEXIS 17071 *13 (S.D. Ill. Aug. 16, 2005), "'the approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class,' particularly where that percentage of the benefit approach  replicates the market."   The percentage method is consistent

---

[3] Each firm has provided a Declaration which sets forth the work performed by the firm, the hours involved, and the lodestar incurred.  These Declarations are attached hereto as Exhibits C through F.

with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *See Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986)("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'")(emphasis in original).

In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client.  The lawyer gains only to the extent his client gains." *Id.* at 325.  In *Phemister v. Harcourt Brace Jovanich, Inc.,* 1984 U. S. Dist. LEXIS 23595, at *40-41 (N.D. Ill. Sept. 14, 1984), the court stated that "[c]ontingent fee arrangements in non-class action damage lawsuits use the simple method of paying the attorney a percentage of what is recovered for the client.  The more the recovery, the more the fee. The percentages agreed upon vary, with one-third being particularly common.").  "[T]here are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin*, 34 F.3d at 566.  In *Gaskill v. Gordon*, 942 F. Supp. 382, 386 ( N.D. Ill. 1996), *aff'd,* 160 F.3d 361 (7th Cir. 1998), the court stated that "the percentage of the fund method provides a more effective way of determining whether the hours expended were reasonable."

Finally, Judge Guzman has noted that "the Seventh Circuit strongly endorsed the percentage method of computing appropriate fee awards in class action common fund cases," and he has used this method to approve fee awards of 33.33% in securities class actions, noting that a fee award of "33 1/3% is in fact in line with that which has, in previous cases, been approved," and "[t]hirty three percent appears to be in line with what attorneys are able to command on the open market in arm's length negotiations with their clients."  *Goldsmith v. Tech. Solutions Co.*, 1995 U.S. Dist. LEXIS 15093, 26-27 (N.D. Ill. 1995).

**B.      The 30% Attorneys' Fee Request is in Line with Fees Awarded by District Courts within the Circuit in Securities Class Action Settlements**

"[A]ttorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees awarded by the district court." *Taubenfeld,* 415 F.3d at 600.  In analogous settlements, the courts in this Circuit and District including this Court, have frequently awarded fees exceeding what is requested by Lead Counsel here.  Attached as Exhibit G is a chart listing percentage fee awards in securities class actions from District Courts around the country.

**C.      Plaintiffs' Counsel Provided the Class with Quality Legal Services**

As noted above, in evaluating Lead Counsel's fee request, the Seventh Circuit has held that it is appropriate for this Court to consider the "quality of legal services rendered" by counsel for the Class. *Taubenfeld*, 415 F.3d at 600. The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). "The quality of Class Counsel's legal work both in and out of the courtroom is ably demonstrated by the benefits conferred on the Class as a result of the Settlement." *Cooper*, 2005 U.S. Dist. LEXIS 17071 *16 (S.D. Ill. Aug. 16, 2005).  Class counsel's fees should also reflect the degree of experience, competence, and effort necessary to achieve the proposed settlement.  In assessing the quality of Lead Counsel's representation, the Court should consider the quality of opposition, as well as the standing of Lead Counsel. *See In re Warner Commc'ns*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986).

Here, the efforts of plaintiffs' counsel, spearheaded and directed by Lead Counsel, led to the Settlement of the Action and creation of the $3.75 million cash Settlement Fund.  The activities of plaintiffs' counsel are described in the Frutkin Declaration and in the individual declarations of plaintiffs' counsel, submitted herewith.  In sum, plaintiffs' counsel investigated

19

the causes of action, filed the original class action complaints, took the necessary steps to consolidate the actions, filed motions for appointment of Lead Plaintiffs and Lead and Liaison Counsel, hired investigators to interview former ULTA employees, consulted with experts concerning materiality and damages in connection with  drafting the Amended Complaint, briefed Defendants' motion to dismiss the Amended Complaint, served document requests on Defendants, negotiated with Defendants various scheduling orders and other matters, engaged in the settlement process leading to the Settlement, including participation in the mediation and preparation of the papers to memorializing the Settlement.   Plaintiffs' counsel also prepared the motions for preliminary and final approval of the Settlement.   Throughout the course of the Action, plaintiffs' counsel attended the status conferences before the Court and directed the activities of the other plaintiffs' counsel in an effort to avoid duplication and to facilitate the efficient and expeditious litigation of the Action.

### D.      The Attorney's Fees Requested are Fair and Reasonable in Light of the Risks Assumed by Lead Counsel

In addition to the factors discussed above, the Court should consider "the contingent nature of the case" and the fact "that lead counsel was taking on a significant degree of risk of nonpayment with the case." *Taubenfeld*, 415 F.3d at 600.  In fact, "[a] court must assess the riskiness of the litigation by measuring the probability of success of this type of case at the ***outset*** of the litigation." *See Florin*, 34 F.3d at 565 (emphasis in original). To this end, "[t]he market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Synthroid Mktg.*, 264 F.3d at 721.  "Because they shift part of the risk of loss from client to lawyer, contingent-fee contracts usually yield a larger fee in a successful case than an hourly fee would." *Gaskill*, 160 F. 3d at 363.

Here, plaintiffs' counsel prosecuted this action on a purely contingent-fee basis and have not received any compensation for their services since the case was commenced. The risks to plaintiffs' counsel were present from the moment the initial complaints were filed, continuing through to the execution of the settlement agreement, and are present to this day.  Plaintiffs' counsel undertook these efforts with "no sure source of compensation for their services." *Cont'l I, 962 F.2d at 569.*

### E.     The Positive Reaction of the Class Strongly Supports Approval of the Fee Award

The notice in this action apprised the members of the Class that Lead Counsel, on behalf of all plaintiffs' counsel would seek attorneys' fees in an amount not to exceed 30% of the Settlement Fund.  No member of the Class has submitted any objection to the fee request.

### F.     The Court Should Award Reimbursement for Expenses Incurred

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to reimbursement of reasonable litigation expenses and costs from the fund. *Synthroid Mktg.*, 264 F.3d at 722; *Cont'l I*, 962 F.2d at 570.  Here, Lead Counsel, on behalf of all plaintiffs' counsel seeks an award of expenses in the amount of $58,548.31, which is less than the $60,000 expense figure listed in the Notice.   The expenses of each of plaintiffs' counsel are detailed in the Declaration submitted by each firm.

The expenses incurred are of the type that are customarily reimbursed and incurred in securities class actions, and were necessary to the efficient prosecution of the case.  The largest expenses incurred were for the services of the mediator, the experts and the investigators.  These expenses were paid on an ongoing basis with no guarantee of their recovery.

## VII.   CONCLUSION

The Settlement is fair, reasonable and adequate and merits final approval.  The Plan of Allocation is also fair and adequate and merits approval. The Action meets all of the requirement for class certification under Rule 23, FRCP, and the preliminary certification of the Class should be made final.  The request for attorneys' fees and expenses is reasonable and Lead Counsel respectfully requests, on behalf of all plaintiffs' counsel, that the Joint Petition be granted and attorneys' fees in the amount of 30% of the Settlement Fund and expenses in the amount of $58,548.31 be awarded.

Dated:  November 4, 2009                    Respectfully submitted,


By:     */s/  Marvin A. Miller_____*
        Marvin A. Miller
        Lori A. Fanning
        **Miller Law LLC**
        115 S. LaSalle Street
        Suite 2910
        Chicago, Illinois 60603
        Telephone:  312.332.3400

        *Lead Plaintiffs' Liaison Counsel*

        Deborah R. Gross
        Robert P. Frutkin
        **Law Offices Bernard Gross, P.C.**
        100 Penn Square East, Suite 450
        Philadelphia, PA 19107
        (215) 561-3600

        *Lead Plaintiffs' Lead Counsel*

22

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ULTA SALON, COSMETICS, & FRAGRANCE, INC. SECURITIES LITIGATION | Master File No. 1:07-cv-07083 CLASS ACTION Hon. Robert W. Gettleman |

AFFIDAVIT OF MICHAEL B. MILLER

1.      I am Vice President of Valley Forge Administrative Services, Inc. (VFAS).
Pursuant to the Court's August 7, 2009 Preliminary Order in Connection with Settlement

Proceedings (the "Notice Order"), VFAS was appointed Claims Administrator to provide

services in support of the settlement of the above-referenced matter.  These services include:

supervising the printing of the Notice of Pendency and Proposed Settlement of Class Action,

Settlement Hearing, and Application for Attorneys' Fees (collectively the "Notice") and the

Proof of Claim, attached hereto as Exhibit A; providing Notice and Proof of Claims to the Class;

notifying brokerage firms or other nominees of the appropriate manner to provide individual

Notice and Proof of Claims to Class members; distributing, accepting and processing Proof of

Claims filed by Class members; reviewing submitted claims for accuracy and completeness and

to ensure that they are supported by sufficient documentary evidence; providing notice of

deficient or rejected claims, when appropriate; calculating recognized losses of the Class, on both

an individual and class wide basis; and all other services necessary to administer this class action

securities litigation settlement.

2.      In order to provide actual notice to those persons or entities who purchased or

otherwise acquired the common stock of Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta") during

the Class Period, we sent, by first class mail, the Court-approved Notice and Proof of Claim to all

1

1,603 individuals and organizations identified in Ulta's stock transfer records as provided to us by Ulta's transfer agent, pursuant to this Court's Notice Order.   In addition, we mailed the Notice and Proof of Claim to all 11,120 names and address on VFAS' master mailing list of Nominees and Institutional Groups.  This list consists of every member of FINRA, and the National Association or State Retirement Administrators,  and other large mutual funds, insurance companies, pension funds, money managers and others who have requested to be included on our list. All Notices and Proof of Claims noted in this paragraph were mailed on August 21, 2009, as required by the Notice Order.

   3.  The Nominee Account Holders and Institutional Groups (if applicable) were asked to either distribute Notice and Proof of Claims to beneficial holders directly (for which they will be reimbursed), or provide VFAS with lists of the names and addresses of actual or beneficial holders so that VFAS could mail Notice and Proof of Claims directly to them.

   4.  The Summary Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing was published electronically on the PR Newswire on August 21, 2009.  See Exhibit B.

   5.  VFAS has established a stand-alone web-site  (www.ultaclaims.com) where Class Members may obtain Notice and Proof of Claim forms.

   6.  The notice procedures described in paragraphs 2-5 are consistent with the procedures VFAS has used in each of the class action securities litigation cases in which we have functioned as Claims Administrator since 1989.

   7.  To date, VFAS has mailed 15,360 copies of the Notice and Proof of Claim to potential class members.  Of that number, VFAS mailed: 11,120 copies of the notice to our master mailing list of Nominee Account Holders and Institutional Groups; 1,603 copies to

individuals and organizations identified from information submitted by Ulta's Transfer Agent; 407 copies in response to requests by individuals or Nominee Account Holders and Institutional Groups; and 2,230 copies to names and addresses of potential claimants provided by Nominee Account Holders and Institutional Groups.

8.    To date, VFAS has not received any requests for exclusion (opt-outs) from the Settlement.  Additionally to date, VFAS has not received any objections to the Settlement or Plaintiffs' proposed petition for attorneys' fees.


_____
Michael B. Miller, Vice President
Valley Forge Administrative Services, Inc.


Sworn to and Subscribed before me
this 2nd day of November, 2009
in the County of Delaware,
Commonwealth of Pennsylvania

_____
Notary Public
COMMONWEALTH OF PENNSYLVANIA

```
NOTARIAL SEAL
ELIZABETH M. GRIFFITHS, Notary Public
Radnor Twp., Delaware County
My Commission Expires November 5, 2009
```

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS DIVISION

**Exhibit A**

| | | |
|---|---|---|
| IN RE ULTA SALON, COSMETICS & FRAGRANCE, INC. SECURITIES LITIGATION | : | Master File No. 07 C 7083 |
| | : | |
| | : | CLASS ACTION |
| | : | |
| This Document Relates To: | : | Hon. Robert W. Gettleman |
| ALL ACTIONS | : | |
| | : | |

## NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION, SETTLEMENT HEARING AND APPLICATION FOR ATTORNEYS' FEES

**TO: ALL PERSONS WHO PURCHASED ULTA SALON, COSMETICS & FRAGRANCE, INC. ("ULTA") COMMON STOCK DURING THE PERIOD BETWEEN OCTOBER 25, 2007 AND DECEMBER 10, 2007, INCLUSIVE.**

**PLEASE READ THIS NOTICE IN ITS ENTIRETY FOR FURTHER INFORMATION**

**THIS NOTICE IS TO INFORM YOU OF THE PENDENCY OF THE ABOVE-CAPTIONED CLASS ACTION LAWSUIT (THE "ACTION") AND THAT A SETTLEMENT OF THE ACTION HAS BEEN PROPOSED TO THE COURT FOR APPROVAL AT A HEARING ON NOVEMBER 16, 2009.**

**SECURITY AND TIME PERIOD:** The Action is brought on behalf of persons who purchased the common stock of Ulta Salon, Cosmetics & Fragrance, Inc. ("ULTA") between October 25, 2007 and December 10, 2007, inclusive (the "Class Period"). If you purchased ULTA common stock during the Class Period, you are a Class Member and your legal rights are affected by the Action and the proposed settlement, whether you act or do not act.

**SETTLEMENT FUND:** A fund in the amount of $3,750,000, in cash, has been created by the proposed settlement for the Class. Your recovery from the Settlement Fund will depend on the number of shares of common stock of ULTA you purchased in the Class Period, whether you sold those shares during the Class Period, and the aggregate number of eligible shares that participate in the settlement. Assuming that all of the Class Members participate in the settlement by filing Proof of Claim forms, the estimated recovery per share would be approximately $0.44, before deduction of any court-ordered attorneys' fees and expenses and costs of administration of the Settlement Fund.

**REASONS FOR SETTLEMENT:** The proposed settlement provides the Class with a substantial dollar recovery and avoids the additional costs and risks associated with continued litigation, including the risk of no recovery for the Class.

**IF THE CASE HAD NOT SETTLED:** Continuing to litigate the case could result in dismissal of the Action by summary judgment or loss after a trial. Defendants vigorously deny any allegation of fault, wrongdoing or liability whatsoever. Lead Plaintiffs and Defendants do not agree on the amount of money that could have been won (damages) even if the Lead Plaintiffs won at trial. Lead Plaintiffs and Defendants also disagree on the following issues, among others: (1) whether the statements made or facts allegedly omitted were false, material, or otherwise actionable under the federal securities laws; (2) whether defendants acted recklessly or intentionally in making their statements to the market; (3) the amount by which ULTA common stock was artificially inflated (if at all) during the Class Period; (4) the effect of various market forces influencing the trading price of ULTA common stock at various times during the Class Period; and (5) the extent (if any) to which the statements that Lead Plaintiffs alleged were materially false or misleading influenced the trading price of ULTA common stock during the Class Period.

**FEES AND EXPENSES:** Lead Counsel for Lead Plaintiffs have not received any payment for their work investigating the facts, conducting this litigation and negotiating the settlement on behalf of Lead Plaintiffs and the Class. Lead Counsel, on behalf of all Plaintiffs' Counsel, will ask the Court to award attorneys' fees in an amount not to exceed 30% of the Settlement Fund and reimbursement of out-of-pocket expenses in an amount not to exceed $60,000. The amounts awarded by the Court will be paid out of the Settlement Fund. If these amounts are awarded by the Court, the average cost per share will be approximately $0.14.

**COURT HEARING:** The Court has scheduled a hearing on the fairness of the proposed settlement, including the certification of the Class and the request for attorneys' fees and reimbursement of expenses (the "Settlement Fairness Hearing"). The Settlement Fairness Hearing will be held before the Honorable Robert W. Gettleman, United States District Judge, in Courtroom 1703 of the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, on November 16, 2009 at 10:00 a.m.

THE FOLLOWING DEADLINES APPLY:

**Submit Proof of Claim:** December 17, 2009

**Request to be Excluded from the Class Action:** October 30, 2009

**File an Objection to the Settlement or Attorneys' Fees:** October 30, 2009

## I. SUMMARY OF THE ACTION

Beginning on or about December 17, 2007, several actions were filed in this Court and were subsequently consolidated into the Action by order of the Court dated March 18, 2008. The Court appointed Marc Mirsky, Nedra Fischer and Stephanie Carroll as the Lead Plaintiffs and approved Law Offices Bernard M. Gross, P.C. as Lead Counsel ("Lead Counsel"), and Miller Law LLC as Liaison Counsel.

On May 19, 2008, Lead Plaintiffs filed the Amended Complaint in the Action, alleging that Defendants violated Sections 11 and 12 of the Securities Act of 1933, 15 U.S.C. §§77k and 77o, and Sections 10(b) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t, and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5. Lead Plaintiffs alleged that Defendants made misstatements and omissions in the registration statement and prospectus for ULTA's initial public offering of its common stock on October 25, 2007 (the "IPO") concerning: (i) ULTA's selling, general and administrative expenses in the Third Quarter of 2007, and (ii) the levels of ULTA's merchandise inventories in the Third Quarter of 2007.

On July 21, 2008, Defendants filed a motion to dismiss the Amended Complaint in its entirety pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b), and the Private Securities Litigation Reform Act of 1995.

On March 19, 2009, after extensive briefing by the parties, the Court issued an order denying Defendants' motion to dismiss the Amended Complaint. On April 20, 2009, Defendants filed their Answer to the Complaint denying the material allegations set forth therein, and asserting that they did not commit any wrongdoing, that they have no liability whatsoever for the alleged acts or omissions alleged therein, and asserting thirty two affirmative defenses to the allegations of the Amended Complaint.

## II. THE PROPOSED SETTLEMENT

Lead Plaintiffs and Defendants engaged in mediation before retired United States District Court Judge Nicholas E. Politan in an effort to reach a settlement of the Action. Pursuant to that mediation, the parties agreed to the proposed settlement of $3,750,000. The complete terms of the proposed settlement are set forth in the Stipulation and Agreement of Settlement, dated June 29, 2009 (the "Stipulation"), on file with the Clerk of the Court.

## III. CERTIFICATION OF THE CLASS AND REQUESTS FOR EXCLUSION

### Certification of the Class

For purposes of the proposed settlement, the Court, by order dated August 7, 2009, has conditionally certified the Class. The Class is defined as all persons who purchased shares of ULTA common stock between October 25, 2007 and December 10, 2007, inclusive. Excluded from the Class are defendants ULTA and Lynelle P. Kirby and Gregg R. Bodnar, their parents, spouses, siblings and children, the underwriters of ULTA's initial public offering of common stock, any subsidiary or affiliate of ULTA, and the directors and executive officers of ULTA or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

### Right to Exclusion from the Class

You may choose to exclude yourself from the Class. If you choose to exclude yourself, you will not participate in the Class Action and will not share in the Settlement Fund, if the settlement is approved by the Court. You may wish to consult your own legal advisor in order to properly evaluate those rights.

The Court will exclude you from the Class if you make a proper request to be excluded ("Request for Exclusion"). To be valid, your Request for Exclusion must be in writing, and include: (a) your name and address; (b) the name and number of the Action as shown at the top of the first page of this Notice; (c) the name and address of the person in whose name the stock was registered (if other than you); (d) a clear statement requesting to be excluded from the Class; and (e) your signature. It is also requested that you include: (a) the date(s) of your purchase(s), acquisition(s), sale(s) or disposition(s), of ULTA common stock; (b) the number of shares purchased or sold during the Class Period; and (c) the price(s) paid and/or received for the shares.

A Request for Exclusion must be postmarked no later than October 30, 2009, and addressed to:

ULTA Request for Exclusion
In re Ulta Salon, Cosmetics & Fragrance, Inc. Securities Litigation
c/o Valley Forge Administrative Services
P.O. Box 220
Villanova, PA 19085

## IV. THE PLAN OF DISTRIBUTION OF THE NET SETTLEMENT FUND TO CLASS MEMBERS

The Settlement Fund, after deduction of Court-ordered attorneys' fees and expenses, and administrative fees and costs, including taxes (the "Net Settlement Fund"), shall be distributed to members of the Class who file approved Proofs of Claim ("Authorized Claimants"). Only shares purchased in the Class Period and owned on the last day of the Class Period, December 10, 2007, are eligible to recover from the Net Settlement Fund. The amount of money you will receive from the Net Settlement Fund will be calculated by multiplying the Net Settlement Fund times the ratio of the number of shares you purchased and held on the last day of the Class Period to the aggregate number of shares purchased and held on the last day of the Class Period by all Authorized Claimants.

You must file a Proof of Claim no later than December 17, 2009, to be eligible to share in the Net Settlement Fund.

## V. ATTORNEYS' FEES AND REIMBURSEMENTS OF COSTS

Lead Counsel for the Lead Plaintiffs and the Class is Deborah R. Gross, Esquire, Law Offices Bernard M. Gross, P.C., Suite 450, 100 Penn Square East, Philadelphia, Pennsylvania 19107.

Lead Counsel, on behalf of all Plaintiffs' Counsel, will apply to the Court for an award of attorneys' fees not to exceed 30% of the Settlement Fund and reimbursement of expenses, including experts' fees, in an amount not to exceed $60,000.

The amount of attorneys' fees and reimbursed expenses must be awarded by the Court, and the amounts awarded by the Court will be paid from the Settlement Fund.

## VI. THE SETTLEMENT FAIRNESS HEARING

At the Settlement Fairness Hearing on November 16, 2009, at 10:00 a.m., the Court will consider whether:

1.  the certification of the Class should become final,

2.  the proposed settlement of the Action, which includes the Settlement Fund in the amount of $3,750,000, plus interest, is fair, reasonable and adequate and should be approved,

3.  an Order and Final Judgment should be entered dismissing all claims in the Action against the Defendants and dismissing the Action with prejudice and in its entirety, and without costs,

4.  the Plan of Distribution of the Net Settlement Fund to Class Members should be approved, and

5.  the award of attorneys' fees and reimbursement of expenses requested by Lead Counsel.

## VII. LEAD PLAINTIFFS' AND DEFENDANTS' REASONS FOR SETTLEMENT

Lead Plaintiffs and Lead Counsel have carefully weighed the benefits to the Class of the Settlement of the Action for the consideration offered by Defendants against the significant costs, risks of recovery, and delay that continued prosecution of the Action would involve. Lead Plaintiffs and Lead Counsel recognize the expense and length of continued proceedings necessary to continue the Action against Defendants through trial and likely appeals, have considered the problems of proof against Defendants, and believe that the certainty and amount of this recovery outweigh the risks and delays of proceeding further with the Action. Defendants, while denying any fault, wrongdoing, or liability whatsoever, or that any of the allegations of the Action are true, have concluded that the further conduct of the Action would be expensive and protracted. Substantial amounts of time, energy and resources of these parties have been and, unless this Settlement is made, will continue to be devoted to the defense of the claims asserted by the Lead Plaintiffs in the Action. Thus, without conceding any infirmity in their defenses or the validity of any claims, Defendants in order to avoid the cost and distraction of burdensome, protracted an uncertain litigation, have agreed to enter into the Settlement in order to terminate the Action with prejudice.

## VIII. DEFENDANTS' DENIAL OF WRONGDOING AND LIABILITY

Defendants vigorously deny any allegation of fault, wrongdoing or liability whatsoever. Defendants consider it desirable, however, to enter into this Settlement without in any way acknowledging any fault, wrongdoing or liability, solely for the purpose of terminating the Action, and to avoid the cost, expense, inconvenience, and time and effort required to continue to defend such complex, burdensome and protracted litigation.

This Settlement and all related documents are not and shall not be construed or be deemed to be evidence or an admission or a concession on the part of any of the Defendants of any fault, wrongdoing, liability or damages what-soever, and Defendants do not concede any infirmity in the defenses that they have asserted or intended to assert in the Action.

## IX. APPEARANCES AND OBJECTIONS BY CLASS MEMBERS

Any Class Member who does not request exclusion from the Class may file an objection with the Court to the proposed settlement or to Lead Counsel's application for attorneys' fees and reimbursement of expenses. The objection must be filed with the Clerk of the United States District Court for the Northern District of Illinois, United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604. The objection must be filed with the Court by October 30, 2009, in order to be considered by the Court.

The objection also must be mailed to the following:

**Lead Counsel for Lead Plaintiffs and the Class:** Deborah R. Gross, Esquire of the Law Offices Bernard M. Gross, P.C., Suite 450, 100 Penn Square East, Philadelphia, Pennsylvania 19107.

**Defendants' Counsel:** Michael Faris, Esquire, Latham & Watkins LLP, Sears Tower, Suite 5800, 233 S. Wacker Drive, Chicago, Illinois 60606.

Any Class Member who fails to file an objection in the manner provided above shall be deemed to have waived such objection and shall be foreclosed from making any such objection.

## X. PROOF OF CLAIM PROCESS

To be eligible to participate in the Net Settlement Fund, a Class Member who has not requested exclusion from the Class must mail a properly completed Proof of Claim on or before December 17, 2009, to the following address:

ULTA Proof of Claim
In re Ulta Salon, Cosmetics & Fragrance, Inc. Securities Litigation
c/o Valley Forge Administrative Services
P.O. Box 220
Villanova, PA 19085

If you do not submit a Proof of Claim, you will not be entitled to share in the Net Settlement Fund. You will, how-ever, be bound by the Settlement and barred and enjoined from asserting any claims which have been or might have been asserted in the Action.

Each Proof of Claim received shall be deemed to have been submitted when posted, if mailed by First Class Mail postage prepaid and addressed in accordance with the instructions given in the Proof of Claim.

If you did not receive a Proof of Claim form in the mail with this Notice, you may obtain a Proof of Claim form by request to the Claims Administrator. You may contact the Claims Administrator, toll free, at 1-877-965-3300. You may also contact the Claims Administrator at the following address:

ULTA Proof of Claim
In re Ulta Salon, Cosmetics & Fragrance, Inc. Securities Litigation
c/o Valley Forge Administrative Services
P.O. Box 220
Villanova, PA 19085

You should submit only one Proof of Claim.

## XI. EFFECT OF APPROVAL OF THE PROPOSED SETTLEMENT AND RELEASE

If the Court approves the proposed Settlement, judgment will be entered approving the Settlement as fair, reasonable and adequate. From and after the Effective Date (defined in the Stipulation as the date on which the Order and Final Judgment approving the Settlement and dismissing the Action with prejudice is final and is no longer subject to any further appeal or judicial review), each Lead Plaintiff and each Class Member on behalf of themselves and any of their heirs, executors, agents, administrators, successors, and assigns, forever and fully RELEASE, REMISE and DISCHARGE the Released Parties from all Settled Claims, as those terms are defined below.

"Released Parties" means any and all of the Defendants, their past or present subsidiaries, parents, affiliates, successors and predecessors, and the officers, directors, agents, employees, attorneys, underwriters, auditors, accountants, insurers, reinsurers, legal representatives, heirs, executors, administrators, successors in interest or assigns of any of the foregoing.

"Settled Claims" means any and all claims, debts, demands, rights or causes of action or liabilities of any kind whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liabilities whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, including both known claims and Unknown Claims (as defined below), (i) that have been asserted in this Action against any of the Released Parties, or (ii) that could have been asserted in any forum by the Class Members or any of them against any of the Released Parties which arise out of or are related to the allegations, transactions, facts, matters or occurrences, representations or omissions, including any public statement by any Defendant during the Class Period, involved, set forth, or referred to in the Amended Complaint.

"Unknown Claims" means any and all Settled Claims which any Lead Plaintiff or Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and all such Unknown Claims, the parties stipulate and agree that upon the Effective Date, the Lead Plaintiffs and each Class Member shall expressly be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived and relinquished any and all provisions, rights and benefits conferred by Cal. Civ. Code § 1542, or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

In addition, each Class Member will be precluded from bringing suit against any of the Released Parties or otherwise asserting, directly or indirectly, any of the Settled Claims against any of the Released Parties.

## XII. NOTICE TO BANKS, BROKERS AND OTHER NOMINEES

If you purchased ULTA common stock during the Class Period for the beneficial interest of a person or entity other than yourself, you must promptly provide the name and last known address for each person or entity for whom or which you effected such purchases. The information should be sent to the Claims Administrator, Valley Forge Administrative Services, at the address set forth above. Upon receipt of such information, copies of this Notice will be sent to each beneficial owner so designated. Alternatively, you may request, in writing, additional copies of this Notice and Proof of Claim and you may mail the Notice and Proof of Claim directly to the beneficial owners of ULTA common stock. The name of the beneficial owner must be provided to the Claims Administrator within seven (7) business days of receipt of this Notice. After additional copies are received, they must be sent directly to the beneficial owner within seven (7) business days of receipt. Lead Counsel shall cause you or your designee to be reimbursed from the Settlement Fund for reasonable expenses actually incurred in mailing copies of this Notice directly or in identifying beneficial owners.

## XIII. QUESTIONS

If you have any questions about the Action, the proposed settlement, class certification, Lead Counsel's attorney fees and expenses, this Notice, the Proof of Claim form, or any other matter, please contact Plaintiffs' Lead Counsel: Deborah R. Gross, Esquire, Law Offices Bernard M. Gross, P.C., Suite 450, 100 Penn Square East, Philadelphia, Pennsylvania 19107, (215) 561-3600, or the Claims Administrator at 1-877-965-3300 or in writing at:

ULTA Questions
In re Ulta Salon, Cosmetics & Fragrance, Inc. Securities Litigation
c/o Valley Forge Administrative Services
P.O. Box 220
Villanova, PA 19085

## XIV. EXAMINATION OF PAPERS

You may inspect the papers and pleadings that have been filed in the Action at the Office of the Clerk of the United States District Court, Northern District of Illinois, 219 Dearborn Street, Chicago, Illinois 60604 during normal business hours of each business day.

Dated: Chicago, Illinois                                          **By Order of the Court**
      August 7, 2009                                          **CLERK OF THE COURT**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS DIVISION

| | | |
|---|---|---|
| IN RE ULTA SALON, COSMETICS & FRAGRANCE, INC. SECURITIES LITIGATION | : | Master File No. 07 C 7083 |
| | : | |
| | : | **CLASS ACTION** |
| This Document Relates To: | : | |
| ALL ACTIONS | : | Hon. Robert W. Gettleman |

## PROOF OF CLAIM

IF YOU PURCHASED THE COMMON STOCK OF ULTA SALON, COSMETICS & FRAGRANCE, INC. ("ULTA") BETWEEN OCTOBER 25, 2007 AND DECEMBER 10, 2007, INCLUSIVE (THE "CLASS PERIOD"), YOU ARE A "CLASS MEMBER" AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT PROCEEDS. EXCLUDED FROM THE CLASS ARE DEFENDANT ULTA, DEFENDANTS LYNELLE P. KIRBY AND GREGG R. BODNAR, MEMBERS OF THEIR IMMEDIATE FAMILIES (PARENTS, SPOUSES, SIBLINGS AND CHILDREN), THE UNDERWRITERS OF ULTA'S INITIAL PUBLIC OFFERING OF COMMON STOCK, ANY SUBSIDIARY OR AFFILIATE OF ULTA, AND THE DIRECTORS AND EXECUTIVE OFFICERS OF ULTA OR ITS SUBSIDIARIES OR AFFILIATES, OR ANY ENTITY IN WHICH ANY EXCLUDED PERSON HAS A CONTROLLING INTEREST, AND THE LEGAL REPRESENTATIVES, HEIRS, SUCCESSORS AND ASSIGNS OF ANY EXCLUDED PERSON.

IF YOU ARE A CLASS MEMBER, YOU MUST COMPLETE AND SUBMIT THIS FORM IN ORDER TO BE ELIGIBLE FOR ANY SETTLEMENT BENEFITS.

YOU MUST COMPLETE AND SIGN THIS PROOF OF CLAIM AND MAIL IT BY FIRST CLASS MAIL, POSTMARKED NO LATER THAN DECEMBER 17, 2009, TO THE FOLLOWING ADDRESS:

**ULTA Proof of Claim**
In re Ulta Salon, Cosmetics & Fragrance, Inc. Securities Litigation
c/o Valley Forge Administrative Services
P.O. Box 220
Villanova, PA 19085

YOUR FAILURE TO SUBMIT YOUR CLAIM BY DECEMBER 17, 2009, WILL SUBJECT YOUR CLAIM TO REJECTION AND PRECLUDE YOUR RECEIVING ANY MONEY IN CONNECTION WITH THE SETTLEMENT OF THIS ACTION. DO NOT MAIL OR DELIVER YOUR CLAIM TO THE COURT OR TO ANY OF THE PARTIES OR THEIR COUNSEL AS ANY SUCH CLAIM WILL BE DEEMED NOT TO HAVE BEEN SUBMITTED. SUBMIT YOUR CLAIM ONLY TO THE CLAIMS ADMINISTRATOR.

## CLAIMANT'S STATEMENT

1.   I purchased the common stock of Ulta Salon, Cosmetics & Fragrance, Inc. ("ULTA") during the period between October 25, 2007 and December 10, 2007, inclusive. (Do not submit this Proof of Claim if you did not purchase ULTA common stock during this period.)

2.   By submitting this Proof of Claim, I state that I believe in good faith that I am a Class Member as defined above and in the Notice of Pendency and Proposed Settlement of Class Action, Settlement Hearing and Application For Attorneys' Fees (the "Class Notice"), or am acting for such person; that I am not a Defendant in the Action or anyone else excluded from the Class; that I have read and understand the Class Notice; that I believe that I am entitled to receive a share of the Settlement proceeds; that I elect to participate in the proposed Settlement described in the Class Notice, and that I have not filed a request for exclusion. If you are acting in a representative capacity on behalf of a Class Member (such as an executor, administrator, trustee, guardian, attorney-in-fact or other representative), you must certify that you are currently authorized to act on behalf of the Class Member and submit evidence of your current authority to act on behalf of that Class Member. Such evidence would include, for example, letters testamentary, letters of administration, or a copy of the trust documents.

3.   I have set forth where requested below all relevant information with respect to each purchase of ULTA common stock during the Class Period, and each sale, if any, of such common stock.

4.   I have enclosed photocopies of the stockbroker's confirmation slips, stockbroker's statements, relevant portions of my tax returns or other documents evidencing each purchase, sale or retention of ULTA common stock listed below in support of my claim. (IF ANY SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN A COPY

OR EQUIVALENT DOCUMENTS FROM YOUR STOCKBROKER OR TAX ADVISOR BECAUSE THESE DOCUMENTS ARE NECESSARY TO PROVE AND PROCESS YOUR CLAIM. PLEASE DO NOT SEND ORIGINALS OF SUCH DOCUMENTS.)

5.   I understand that the information contained in this Proof of Claim is subject to such verification as the Court may direct, and I agree to cooperate in any such verification.

6.   Upon the occurrence of the Effective Date (as defined in the Class Notice) my signature hereto will constitute a full and complete release, remise and discharge by me or, if I am submitting this Proof of Claim on behalf of a corporation, a partnership, estate or one or more other persons, by it, him, her or them, and by my, its, his, her or their heirs, executors, administrators, successors, and assigns of each of the "Released Parties" of all "Settled Claims," as defined herein.

7.   By submitting this Proof of Claim, the undersigned and any person or entity on whose behalf the undersigned is acting, submits to the jurisdiction of the United States District Court for the Northern District of Illinois for the purposes of the Action.

8.   **Statement of Claim**

Name of Beneficial Owner(s):

Name

Name

Street Address

City          State          Zip Code

Foreign Province          Foreign Country

Social Security Number:          OR   Employer Identification Number:
(for individuals)                      (for estates, trusts, corporations, etc.)

Check one:   ☐ Individual   ☐ Corporation   ☐ Trust   ☐ Estate   ☐ IRA Account   ☐ Other (specify) _____

Area Code   Telephone Number (Day)          Area Code   Telephone Number (Evening)          Area Code   Fax Number

Joint Owner's Name (if any)

## SHARES PURCHASED AND SOLD DURING THE CLASS PERIOD
### (OCTOBER 25, 2007–DECEMBER 10, 2007)

**SHARES PURCHASED**

9.   I made the following PURCHASES of ULTA common stock between October 25, 2007 and December 10, 2007, inclusive. (Persons who received ULTA common stock during the Class Period other than by purchase, such as by gift or inheritance are not eligible to submit claims for those transactions.):

| Date(s) of Purchase (List Chronologically) (Month / Day / Year) | Number of Shares of Common Stock Purchased | Purchase Price Per Share of Common Stock | Aggregate Cost (incl. commissions, and fees) |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

## SHARES SOLD

10.  I made the following SALES of ULTA common stock between October 25, 2007 and December 10, 2007, inclusive:

| Date(s) of Sales (List Chronologically) (Month / Day / Year) | Number of Shares of Common Stock Sold | Sale Price Per Share of Common Stock | Amount Received (net commissions and fees) |
|---|---|---|---|
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐☐☐ | $ ☐☐☐ . ☐☐ | $ ☐☐☐☐☐ . ☐☐ |
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐☐☐ | $ ☐☐☐ . ☐☐ | $ ☐☐☐☐☐ . ☐☐ |
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐☐☐ | $ ☐☐☐ . ☐☐ | $ ☐☐☐☐☐ . ☐☐ |
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐☐☐ | $ ☐☐☐ . ☐☐ | $ ☐☐☐☐☐ . ☐☐ |
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐☐☐ | $ ☐☐☐ . ☐☐ | $ ☐☐☐☐☐ . ☐☐ |

## SHARES OWNED ON DECEMBER 10, 2007

11.  At the close of business on December 10, 2007, I owned _____ shares of ULTA common stock.

### SUBSTITUTE FORM W-9

(You must provide the requested information here even if you have already provided the same or similar information at Section 8 of this Proof of Claim.)

Request for Taxpayer Identification Number:

Enter taxpayer identification number below for the Beneficial Owner(s). For most individuals, this is your Social Security Number The Internal Revenue Service ("I.R.S.") requires such taxpayer identification number. If you fail to provide this information, your claim may be rejected.

Social Security Number: ☐☐☐ – ☐☐ – ☐☐☐☐  OR  Employer Identification Number: ☐☐ – ☐☐☐☐☐☐☐
(for individuals)                                   (for estates, trusts, corporations, etc.)

### RELEASE

For purposes of this Release, the word "I" shall mean I or we, as the context requires, and the term "Class" shall mean all persons who purchased the common stock of ULTA during the period October 25, 2007 through December 10, 2007, inclusive (the "Class Period"). Excluded from the Class are Defendants, members of the immediate families (parents, spouses, siblings and children) of Kirby and Bodner, the underwriters of ULTA's initial public offering of common stock, any subsidiary or affiliate of ULTA, and the directors and executive officers of ULTA or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person. Also excluded from the Class are any persons or entities who submit valid and timely requests for exclusions from the Class.

For purposes of this Release, the term "Released Parties" means any and all of the Defendants, their past or present subsidiaries, parents, affiliates, successors and predecessors, and the officers, directors, agents, employees, attorneys, underwriters, auditors, accountants, insurers, reinsurers, legal representatives, heirs, executors, administrators, successors in interest or assigns of any of the foregoing.

For purposes of this Release, the term "Settled Claims" means any and all claims, debts, demands, rights or causes of action or liabilities of any kind whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liabilities whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, including both known claims and Unknown Claims (as defined below), (i) that have been asserted in this Action against any of the Released Parties, or (ii) that could have been asserted in any forum by the Class Members or any of them against any of the Released Parties which arise out of or are related to the allegations, transactions, facts, matters or occurrences, representations or omissions, including any public statement by any Defendant during the Class Period, involved, set forth, or referred to in the Amended Complaint.

For purposes of this Release, the term "Unknown Claims" means any and all Settled Claims which any Lead Plaintiff or Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement.

With respect to any and all such Unknown Claims, the parties stipulate and agree that upon the Effective Date, the Lead Plaintiffs and each Class Member shall expressly be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived and relinquished any and all provisions, rights and benefits conferred by Cal. Civ. Code § 1542, or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

I (and if I am an individual, on behalf of myself, and my heirs, executors, administrators, personal representatives, successors and assigns, and if I am acting on behalf of a corporation, partnership, trust or other legal entity on behalf of it and its successors and assigns, and if I am acting or acted as trustee, guardian, conservator, attorney-in-fact or other agent with, respect to ULTA shares purchased during the Class Period in such capacity, on behalf of any persons or entities for whom I act or acted as such trustee, guardian, conservator, attorney-in-fact or agent), for and in consideration of the Settlement set forth in that certain Stipulation and Agreement of Settlement dated June 29, 2009, filed in the Action (the "Stipulation"), and other good and sufficient consideration, the receipt and sufficiency of which are hereby acknowledged, agree to dismiss with prejudice, and hereby release and forever discharge, effective upon the Effective Date of the Stipulation, as by an instrument under seal without further act by any person, each and every one of the Released Parties from any and all Settled Claims.

I agree that there is a risk that I may incur damages, expenses or liabilities relating to the Settled Claims, but which were unknown and unanticipated at the time I executed this Release, and that I acknowledge and agree that the Stipulation and this Release is intended to be a full and final accord and satisfaction of such Unknown Claims and a release thereof and shall apply to all unknown and unanticipated results of said matters, as well as those now known and anticipated. In furtherance thereof, I hereby waive any and all provisions, rights and benefits conferred by law of any state or territory of the United States, or principle of common law, or of international or foreign law, which prohibits releases of Unknown Claims. I understand that I may hereafter discover facts in addition to or different from those which I now know or believe to be true with respect to the Settled Claims, but hereby stipulate and agree that I am fully releasing such claims and, upon the Effective Date and by operation of the Order and Final Judgment, I will have, fully, finally, and forever settled and released any and all Settled Claims whatsoever against the Released Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, including any and all Unknown Claims, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, with regard to the subsequent discovery or existence of such different or additional facts. I acknowledge that the foregoing waiver and release was bargained for and a key element of the Settlement of which this Release is a part.

By executing this Release, I represent and warrant that I have not assigned, hypothecated, granted, conveyed, transferred, or otherwise given or agreed to assign, hypothecate, grant, convey transfer or otherwise give any interest in the Settled Claims, or any of them or any portion of them, to any other person or entity.

I have read the foregoing Release carefully and, knowing and understanding its contents and the full legal effect thereof, I certify, under penalty of perjury, that I have signed the same as my own free act and deed as an instrument under seal.

## CERTIFICATION

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED ON THIS FORM IS TRUE, CORRECT AND COMPLETE.

I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406 (a)(1) (c) of the Internal Revenue Code because: (a) I am (we are) exempt from backup withholding, or (b) I (We) have not been notified by the I.R.S. that I am (we are) subject to backup withholding as a result of failure to report all interest or dividends, or (c) the I.R.S. has notified me (us) that I am (we are) no longer subject to backup withholding.

**NOTE:** If you have been notified by the I.R.S. that you are subject to backup withholding, please strike out the language that you are not subject to backup withholding in the certification above.

I (we) certify that, if I am (we are) acting as the representative for a Class Member I am (we are) currently authorized to act on behalf of the Class Member.

Signature of Claimant (If this claim is being made on behalf of Joint Claimants, then each must sign):

Signature: _____ Date: _____

Signature: _____ Date: _____

If the person executing this Proof of Claim is acting in a representative capacity, evidence of such person's current authority to act on behalf of the Class Member must be submitted with this Proof of Claim.

**THIS PROOF OF CLAIM MUST BE SUBMITTED NO LATER THAN DECEMBER 17, 2009,
AND MUST BE MAILED TO:**

**ULTA Proof of Claim**
In re Ulta Salon, Cosmetics & Fragrance, Inc. Securities Litigation
c/o Valley Forge Administrative Services
P.O. Box 220
Villanova, PA 19085

A Proof of Claim received by the Claims Administrator shall be deemed to have been submitted when posted, if mailed by December 17, 2009, and if a postmark is indicated on the envelope and it is mailed by First Class Mail, and addressed in accordance with the above instructions. In all other cases, a Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator.

If you wish to be assured that your Proof of Claim is actually received by the Claims Administrator, then you should send it by Certified Mail, Return Receipt Requested. No acknowledgment will be made as to the receipt of Proof of Claim forms. You should be aware that it will take a significant amount of time to process fully all of the Proof of Claim forms and to administer the Settlement. This work will be completed as promptly as time permits, given the need to investigate and tabulate each Proof of Claim. Please notify the Claims Administrator of any change of address.

In re Ulta Salon, Cosmetics & Fragrance, Inc. Securities Litigation
c/o Valley Forge Administrative Services
P.O. Box 220
Villanova, PA 19085

FIRST CLASS MAIL
U.S. POSTAGE
PAID
PERMIT NO. 138
PHILADELPHIA, PA

# FIRST CLASS MAIL

**PLEASE FORWARD—IMPORTANT LEGAL NOTICE**

**Exhibit B**



🖨 PRINTTHIS

🖨 Click to Print

SAVE THIS | EMAIL THIS | Close

# Summary Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing

VILLANOVA, Pa., Aug. 21 /PRNewswire/ --

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| IN RE ULTA SALON, COSMETICS & FRAGRANCE, INC. SECURITIES LITIGATION: | Master File No. 07 C 7083 |
| CLASS ACTION | |
| This Document Relates To: | |
| ALL ACTIONS | Hon. Robert W. Gettleman |

TO: ALL PURCHASERS OF ULTA SALON, COSMETICS & FRAGRANCE, INC. COMMON STOCK BETWEEN OCTOBER 25, 2007 AND DECEMBER 10, 2007, INCLUSIVE (THE "CLASS").

**YOU ARE HEREBY NOTIFIED**, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the Court, that the above-captioned action (the "Action") has been conditionally certified as a class action and that a settlement for $3,750,000 has been proposed. A hearing will be held before the Honorable Robert W. Gettleman, United States District Judge on November 16, 2009 at 10:00 a.m. in Courtroom 1703 of the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, to determine whether:

1. The Class should be finally certified for settlement purposes;
2. The proposed settlement of the Action for $3,750,000, plus interest, is fair, reasonable and adequate and should be approved by the Court;
3. An Order and Final Judgment should be entered dismissing all claims in the Action against the Defendants and dismissing the Action with prejudice, and without costs;
4. The Plan of Distribution of the Net Settlement Fund should be approved; and
5. To award attorneys' fees and expenses requested by Lead Counsel on behalf of Plaintiffs' Counsel.

IF YOU ARE A MEMBER OF THE CLASS DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT FUND. If you have not yet received the full printed Notice of Pendency and Proposed Settlement of Class Action, Settlement Hearing and Application For Attorneys' Fees (the "Class Notice") and a Proof of Claim form, you may obtain copies of these documents by contacting:

Ulta Salon, Cosmetics & Fragrance, Inc. Securities Litigation
c/o Valley Forge Administrative Services
P.O. Box 220
Villanova. PA 19085
1-877-965-3300
request@ultaclaims.com   www.ultaclaims.com

Inquiries, other than requests for the forms of Class Notice and Proof of Claim, may be made to Plaintiffs' Lead Counsel: Deborah R. Gross, Esquire, Law Offices Bernard M. Gross, P.C., Suite 450, 100 Penn Square East, Philadelphia, Pennsylvania 19107, Telephone (215) 561-3600.

To participate in the settlement, you must submit a Proof of Claim no later than December 17, 2009. If you are a Class Member and do not exclude yourself from the Class, you will be bound by the Order and Final Judgment of the Court. To exclude yourself from the Class, you must submit a Request for Exclusion postmarked no later than October 30, 2009. If you are a Class Member and do not submit a proper Proof of Claim, you will not share in the settlement but you nevertheless will be bound by the Order and Final Judgment of the Court.

Further information may be obtained by directing your inquiry in writing to Valley Forge Administrative Services, the Claims Administrator, at the address listed above.

Dated: August 7, 2009

By Order of the Court

SOURCE Valley Forge Administrative Services

**Find this article at:**
http://www.prnewswire.com/news-releases/summary-notice-of-pendency-of-class-action-proposed-settlement-and-settlement-hearing-62279337.html

 Click to Print

☐ Check the box to include the list of links referenced in the article.

SAVE THIS | EMAIL THIS | Close

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE ULTA SALON COSMETICS** | : | |
| **& FRAGRANCE, INC. SECURITIES** | : | No. 07 C 7083 |
| **LITIGATION** | : | |
| | : | **CLASS ACTION** |
| **This Document Relates To:** | : | |
| | : | |
| **ALL ACTIONS** | : | Hon. Robert W. Gettleman |
| | : | |

## DECLARATION OF ROBERT P. FRUTKIN IN
## SUPPORT OF LEAD PLAINTIFFS' MOTION FOR APPROVAL OF THE
## SETTLEMENT AND PLAN OF ALLOCATION AND IN SUPPORT
## OF THE JOINT PETITION FOR ATTORNEYS' FEES AND EXPENSES

**ROBERT P. FRUTKIN**, declares and says:

1.     I am an attorney with Law Offices Bernard M. Gross, P.C. (the "Gross Firm"), the court-appointed Lead Counsel for Lead Plaintiffs in this litigation (the "Action").  I have personal knowledge of the matters set forth herein based upon my active supervision of and participation in all material aspects of the conduct of the Action.

2.     I submit my Declaration in support of Lead Plaintiffs' Motion and Memorandum for final approval of the class action settlement (the "Settlement") as memorialized in the Stipulation and Agreement of Settlement dated June 29, 2009 (the "Stipulation") and the Plan of Allocation, the final certification of the Class, and Lead Counsel's Joint Petition for Attorneys' Fees and Expenses (the "Memorandum").

## I.     THE ACTION

3.     On December 17, 2007, the Gross Firm, on behalf of Marc Mirsky, filed the first of two class action complaints (the "*Mirsky* action") in this Court arising out of the initial public

offering ("IPO") of the common stock of Ulta Salon, Cosmetics & Fragrance, Inc. ("ULTA"). Thereafter, the second class action complaint was filed by Eugene B. Chase, III (the "*Chase* action"). The named defendants in both complaints were ULTA, its President and Chief Executive Officer, Lynelle P. Kirby, and its Chief Financial Officer, Gregg R. Bodnar. By Order dated February 21, 2008, the Court, pursuant to Local Rule 40.4, made a finding that the *Chase* action was related to the *Mirsky* action and, by Order dated February 22, 2008, the *Chase* action was reassigned to the calendar of Judge Robert W. Gettleman.

4.      On January 9, 2008, Latham & Watkins LLP entered its appearance for all Defendants. The parties entered into a stipulation extending Defendants' time to answer, which was granted, on Defendants' motion, on January 15, 2008. The Court set a status for February 20, 2008.

5.      On February 18, 2008, the Gross Firm filed a motion to consolidate the *Mirsky* action and the *Chase* action and for appointment of Marc Mirsky, Nedra Fischer and Stephanie Carroll as Lead Plaintiffs, the Gross Firm as Lead Counsel and Miller Law LLC (the "Miller firm") as Liaison Counsel.  Counsel in the *Chase* action filed a motion for consolidation and for his appointment as Lead Plaintiff and for appointment of his counsel as Lead Counsel on February 19, 2008.

6.      At the February 20, 2008, status, the Court set a briefing schedule on the pending plaintiffs' motions and set a status for March 18, 2008.

7.      As the result of conversations between plaintiffs' counsel concerning the size of the losses suffered by the competing movants, on February 28, 2008, counsel for plaintiff in the *Chase* action filed a notice of withdrawal of the motion for appointment as Lead Plaintiff and for appointment of his counsel as Lead Counsel.

8.     By Order dated March 18, 2008, the *Mirsky* and *Chase* actions were consolidated and Marc Mirsky, Nedra Fischer and Stephanie Carroll were appointed Lead Plaintiffs and the Gross Firm was appointed Lead Counsel and the Miller firm was appointed Liaison Counsel. The Court set dates for the filing of an amended complaint and response thereto and set the next status for July 24, 2008.

9.     Lead Plaintiffs, through Lead Counsel, continued their investigation of the allegations made in the *Mirsky* and *Chase* complaints. Lead Counsel engaged the services of consultants to participate in the investigation of the factual allegations and to further analyze the materiality of the alleged misrepresentations and the damages suffered by the class in connection with their claims under the federal securities laws. In the course of that continued investigation, numerous former employees of ULTA were interviewed.

10.     Lead Counsel filed the Amended Complaint on May 19, 2008. The Amended Complaint alleges causes of action for violation of Sections 11, 12(2) and 15 of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5. In sum, the Amended Complaint alleges that Defendants violated these sections of the federal securities laws by making false and misleading statements in the prospectus for the IPO concerning two areas of ULTA's operations:  (a) the level of selling, general and administrative ("SG&A") expenses incurred in the Third Quarter of 2007, the three months ended November 3, 2007 (the "Third Quarter"), and (b) the levels of ULTA's merchandise inventories in the Third Quarter.  Lead Plaintiffs alleged that the prospectus failed to disclose that both the SG&A expenses and the merchandise inventory levels had spiked during the Third Quarter and were contrary to the levels described in the prospectus for the prior quarters of ULTA's operations.  These alleged misrepresentations continued in the market until

December 11, 2007, when Defendants issued ULTA's press release disclosing ULTA's financial results for the Third Quarter which included, *inter alia*, the rise in the levels of SG&A expenses and merchandise inventories. Defendants had launched the IPO only nine business days prior to the close of the Third Quarter, in an effort, Lead Plaintiffs alleged, to conceal these material facts in order not to jeopardize either the success of the IPO or the price of the shares to be offered in the IPO.

11.     The class period alleged in the Amended Complaint begins on October 25, 2007, the date of the IPO, and continues until December 10, 2007, the day before the disclosure of the alleged omitted facts concerning the rise in the SG&A expenses and inventory levels in ULTA's Third Quarter press release. All members of the class have both Section 11 and 12 and Section 10(b) claims against Defendants, based on the statements made in and omitted from the prospectus for the IPO.

12.     On July 21, 2008, Defendants filed their motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6) and the Private Securities Litigation Act of 1995 ("PSLRA"). With respect to Lead Plaintiffs' cause of action under Section 10(b) of the Exchange Act, Defendants argued that Lead Plaintiffs failed to plead any actionable misrepresentations in the prospectus for the IPO and failed to plead sufficient facts giving rise to a strong inference of scienter under the PSLRA. With respect to the causes of action for violation of Sections 11 and 12 of the Securities Act, Defendants argued that Lead Plaintiffs failed to satisfy Rule 9(b), FRCP, did not establish recoverable damages under Section 11 and that Defendants were not statutory sellers within the meaning of Section 12.

13.     Lead Plaintiffs filed their memorandum in opposition to the motion to dismiss on September 24, 2008, and Defendants filed their reply memorandum on October 24, 2008.

14.   On March 19, 2009, the Court issued its Memorandum Opinion and Order, denying Defendants' motion to dismiss in its entirety.  The Court directed Defendants to answer the Amended Complaint by April 9, 2009, which was subsequently extended, and set a status conference for April 17, 2009.

15.   Defendants' Answer, entered on April 20, 2009, denied all of the material allegations of the Amended Complaint and pleaded 32 affirmative defenses.   Lead Plaintiffs served document requests on April 20, 2009.

16.   In connection with the April 17, 2009, status, counsel negotiated a proposed scheduling order and presented it to the Court.  The Court set the next status set for October 21, 2009.

17.   During this period, the parties had discussions concerning the potential for settlement of the Action, and it was agreed to seek the offices of a mediator to aid in that process. The parties agreed on former Judge Nicholas H. Politan, and the mediation was scheduled for May 29, 2009.  In advance of the mediation, the parties each submitted a confidential statement of the case and supporting materials to Judge Politan.  Each side retained consultants to assist them in their analysis of the damages.  The mediation, conducted in New York City, consisted of a frank and complete discussion of the strengths and weaknesses of Lead Plaintiffs' claims and Defendants' defenses, including issues relating to scienter, materiality and damages.   Judge Politan participated fully in these discussions and his views of the issues were instructive.  At the end of the process, the parties agreed to the Settlement, in principle and subject to documentation. The parties continued to negotiate the documentation evidencing the Settlement and signed the Stipulation on June 29, 2009.

18.     Lead Plaintiffs filed the motion for preliminary approval of the Settlement and hearings were held on July 23, 2009, and August 7, 2009. Lead Plaintiffs submitted memoranda in support of preliminary approval along with the Stipulation and supporting exhibits.   On August 7, 2009, the Court signed the Preliminary Order In Connection With Settlement Proceedings ("Preliminary Approval Order").

19.     Pursuant to the Preliminary Approval Order, over 15,000 copies of the Notice and Proof of Claim have been mailed to prospective class members and the summary notice has been published on PR Newswire.

20.     As of the date hereof, no objections have been received.  As of the date hereof, no requests for exclusion have been received.

## II.     THE SETTLEMENT

21.     The Settlement provides for a cash payment of $3,750,000 on behalf of all Defendants to the Class to resolve all claims brought in the Action (the "Settlement Fund").  The terms of the release are explicitly set forth in the Notice and in the Proof of Claim.   The Settlement Fund has been paid and is on deposit in an escrow account.

22.     In order to participate in the distribution of the Settlement Fund, a class member must have purchased ULTA common stock during the Class Period and owned the shares on the last day of the Class Period.  The class member must submit a proof of claim to the Claims Administrator by December 17, 2009.  As of the date hereof, the Claims Administrator has received 260 claim forms.  They have not yet all been processed.

23.     The amount of each class member's recovery from the Settlement Fund, after payment of court-awarded attorneys' fees and expenses, and costs of administration of the Settlement, including payment of applicable taxes (the "Net Settlement Fund"), will be the ratio

of the number of shares purchased by the class member to the total number of shares purchased by all class members who file proofs of claim times the amount of the Net Settlement Fund.

## III.  STRENGTHS AND WEAKNESSES OF THE CLAIMS AND DEFENSES

24.    During the course of the mediation, including the preparation of the mediation statements and the consultation with experts, certain issues became paramount in terms of Lead Plaintiffs' ability to prove the elements of their causes of action.  Lead Counsel believes that the evidence they uncovered during their independent factual investigation, as well as the sources of that evidence, as detailed in the Amended Complaint, would enable Lead Plaintiffs to establish the facts alleged in the Amended Complaint at trial. With respect to the allegations of misrepresentation concerning ULTA's Third Quarter SG&A expenses and inventory levels in the prospectus for the IPO, the parties have no real dispute as to the amount of those items.  It is hotly contested, however, whether those facts were material, whether Defendants' alleged misrepresentations caused any inflation in the market price of ULTA's common stock and whether Defendants possessed the requisite scienter with respect to those facts for purposes of the cause of action under Section 10(b) of the Exchange Act. Defendants steadfastly clung to their position that they did not believe that ULTA's levels of SG&A expenses and inventories in the Third Quarter, which had not closed by the date of the IPO, had to be disclosed in the prospectus.  No doubt, Defendants would have testimony from their attorneys and auditors in connection with the drafting of the IPO prospectus that would buttress their position.

25.    As discussed during the course of the mediation, Lead Plaintiffs' ability to establish the materiality of the alleged false and misleading statements made in the prospectus for the IPO, as well as their ability to establish loss causation presented a significant risk. Although the price of ULTA common stock price dropped upon the disclosure of the rise in

ULTA's SG&A expenses and merchandise inventory levels in the Third Quarter, the price of ULTA's common stock did not initially fall below the IPO price. In addition, the Third Quarter earnings press release and conference call disclosed many other facts concerning ULTA's current and future business and financial condition. None of the securities analysts on the earnings conference call voiced concern over the rise in ULTA's SG&A expenses and merchandise inventory levels that was disclosed in the press release. Thus, Lead Plaintiffs faced the significant risk that they would not be able to establish either materiality or loss causation.

26.     Lead Plaintiffs faced a significant problem with respect to the amount of provable damages arising out of the Section 11 claims under the Securities Act. The statutory measure of damages yielded a very small $0.14 per share. In addition, as permitted by the Securities Act, Defendants, in the nature of an affirmative defense, would argue that none of the stock price decline was attributable to the alleged misstatements. The Third Quarter press release, which contained the undisclosed facts concerning the rise in ULTA's SG&A expense and inventory levels during the quarter, also contained other negative disclosure of facts not alleged to have been misrepresented in the IPO prospectus. When the price of ULTA's common stock dropped on December 11, 2007, the closing price was still above the IPO price of $18. In addition, the retail stock index, the industry in which ULTA operates, also dropped at this time.

27.     With respect to damages under Section 10(b) of the Exchange Act, Lead Plaintiffs faced the risk that damages would be greatly reduced by the application of *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005). Under *Dura,* it is arguable that the increase in the market price of ULTA common stock during the Class Period above the $18 per share IPO price was not causally related to the alleged misrepresentations. Although the price of ULTA common stock traded throughout the Class Period at prices significantly above the $18

IPO price, Defendants did not make any statements to the market after they issued the prospectus on October 25, 2007. When the disclosures were made on December 11, 2007, the price of ULTA common stock did not fall below the $18 IPO price. Thus, the amount of provable damages was a significant question and one that was discussed in depth at the mediation. In addition, recent case law, including *Dura*, supports the reduction of damages where, as here, there are no intra-class period statements, by eliminating any Class Member whose loss was caused by his having purchased and sold his shares during the Class Period, before the disclosure of the alleged misrepresented facts.

## IV.   CLASS CERTIFICATION

28.    The prerequisites for class certification set forth in Rule 23(a) and (b)(3) have been met. The elements of numerosity, commonality, typicality, and adequacy of representation, have all been satisfied under Rule 23(a). *See Silverman v. Motorola, Inc.*, 2009 U.S. Dist. LEXIS 75418, at *11 (N.D. Ill. Aug. 25, 2009) (certifying securities fraud class action); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 594 (N.D. Ill. 2009) (same). Rule 23(b)(3) is also satisfied as common questions are present and those common questions "predominate over any questions affecting only individual members." *See Silverman*, 2009 U.S. Dist. LEXIS 75418, at *11(N.D Ill. Aug. 25, 2009), citing *Amchem Prods. V. Windsor*, 521 U.S. 591 (1997).

29.    Lead Plaintiffs are adequate representatives of the class and have shown their adequacy by their stewardship of the Action and have no conflicts with members of the class. Lead Counsel and Liaison Counsel are qualified to represent the class and the quality of their representation is reflected in the conduct of the Action, culminating in the Settlement for the benefit of the class less than two years after the filing of the initial complaints. All of the alleged misrepresentations were written and contained in one document, the prospectus for the IPO. All

members of the class have the identical causes of action, based on the conduct of defendants which is common to all class members. Thus, the claims of the Lead Plaintiffs are typical of the clams of all class members. The number of class members, given the sale of more than 8.5 million shares of ULTA common stock in the IPO, satisfies the numerosity requirement. Clearly a class action is superior to the alternative - numerous individual lawsuits filed in a multitude of federal courts. *See e.g. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *In re Gen. Instrument Corp. Sec. Litig.*, 1999 U.S. Dist. LEXIS 18182, at *14 (N.D. Ill. Nov. 18, 1999); *Silverman*, 2009 U.S. Dist. LEXIS 75418, at *11.

## V.    ATTORNEYS' FEES AND EXPENSES

30.    Lead Counsel on behalf of all plaintiffs' counsel seeks an award of 30% of the Settlement Fund. Attached as Exhibits C through F to the Memorandum are Declarations from each of the four counsel for plaintiffs describing the hours billed, the hourly rates, the work performed and the qualifications of each firm. Actual time reports are available for the Court if requested. There are no disputes among plaintiffs' counsel with respect to attorneys' fees, and Lead Counsel seeks an award on behalf of all plaintiffs' counsel. Lead Counsel directed all assignments to other counsel in an effort to avoid duplication and to prosecute the Action efficiently. For example, Liaison Counsel, attended most of the status conferences, and the briefing on the motion to dismiss was divided by Lead Counsel into non-overlapping issue-based assignments. Collectively, counsel for plaintiffs have a lodestar of $497,749. If the 30% is awarded, this would translate into a multiple of 2.26, well within the acceptable range of fee awards in common fund cases. The hourly rates for plaintiffs' attorneys, as set forth in the individual Declarations submitted herewith, are reasonable and within the range of rates charge

by attorneys who practice in the field of class action litigation. *See Jeffboat, LLC v. Director, Office of Workers' Compensation Programs*, 553 F.3d 487 (7th Cir. January 13, 2009)

31.     Collective expenses are $58,548.31.   Each firm's Declaration itemizes the expenses of that firm.  The principal expenses were for experts, investigators and the mediator.

32.     The Notice to the class clearly apprised class members that Lead Counsel would seek, on behalf of all plaintiffs' counsel, an award of fees not to exceed 30% of the Settlement Fund and expenses not to exceed $60,000.  No objection to these fee and expense amounts has been received and the date for any such objection has expired.

This Declaration is executed under the penalties of perjury pursuant to the laws of the United States and is signed at _Juniper FL_ , this 3rd day of November, 2009.

**ROBERT P. FRUTKIN**

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE ULTA SALON COSMETICS** | : | **No. 07 C 7083** |
| **& FRAGRANCE, INC. SECURITIES** | : | |
| **LITIGATION** | : | |
| | : | **CLASS ACTION** |
| **This Document Relates To:** | : | |
| | : | |
| **ALL ACTIONS** | : | **Hon. Robert W. Gettleman** |
| | : | |

## DECLARATION OF DEBORAH R. GROSS IN
## SUPPORT OF THE JOINT PETITION FOR
## ATTORNEYS' FEES AND EXPENSES
## FILED ON BEHALF OF LAW OFFICES BERNARD M. GROSS, P.C.

**DEBORAH R. GROSS** declares and says:

1.     I am with the law firm of Law Offices Bernard M. Gross, P.C. (the "Gross Firm"), Lead Counsel for Lead Plaintiffs and the class.  As Lead Counsel, the Gross Firm has submitted a Joint Petition Of Plaintiffs' Counsel For An Award Of Attorneys' Fees and Expenses ("Joint Petition") on behalf of all plaintiffs' counsel.  This Affidavit is submitted in support of the Joint Petition and describes the work performed by the Gross Firm and sets forth the hours expended by the attorneys in the Gross Firm and the expenses incurred by the Gross Firm.  The work performed during the course of the litigation is described in further detail in the Declaration of Robert P. Frutkin, of the Gross Firm, submitted in support of settlement and the Joint Petition. The three other counsel for plaintiffs, all working under the supervision of the Gross Firm, are submitting affidavits in further support of the Joint Petition.

2.     The Gross Firm investigated, drafted, filed and served the first class action complaint in the litigation on behalf of Marc Mirsky on December 17, 2007.  Thereafter, the

Gross Firm took the necessary steps to consolidate the subsequently filed action and to seek the appointment of Lead Plaintiffs and for the appointment of the Gross Firm as Lead Counsel and Miller Law LLC as Liaison Counsel, including the filing of a motion and memorandum in support thereof.

3.      Upon consolidation and appointment as Lead Counsel by order dated March 18, 2008, the Gross Firm continued its factual investigation of the claims alleged, including, hiring an investigator who located former employees of Ulta Salon, Cosmetics and Fragrances, Inc.

4.      The Gross Firm drafted and filed the Amended Complaint on May 19, 2008. Thereafter, defendants filed their motion to dismiss the Amended Complaint and the Gross Firm, with the support of other plaintiffs' counsel, filed Lead Plaintiffs' memorandum in opposition on September 24, 2008.

5.      The Gross Firm analyzed Defendants' answer and the 32 affirmative defenses raised in the Answer. The Gross Firm drafted and subsequently served document requests on defendants on April 20, 2009.

6.      The Gross Firm negotiated a scheduling order with defense counsel which was presented by the Gross Firm and Liaison Counsel for plaintiffs at the status conference on May 16, 2009, at which time a schedule was set for Lead Plaintiffs' class motion proceedings, including discovery.

7.      Prior to the May 16, 2009, status, the Gross Firm and defense counsel had agreed to a mediation before the Honorable Nicholas H. Politan in an effort to settle the claims brought in the Amended Complaint. In preparation for the May 29, 2009 mediation in New York, the Gross Firm prepared a confidential mediation statement to be lodged with Judge Politan. In preparing the mediation statement, the Gross Firm conducted a thorough review and analysis of

the strengths and weaknesses of the causes of action alleged in the Amended Complaint and Defendants' defenses and consulted with experts concerning the issues in the litigation, including materiality and damages. The Gross Firm, assisted by other counsel for plaintiffs, attended the mediation and engaged in a thorough and detailed examination of the issues, including the strengths and weaknesses of plaintiffs' claims and defendants' defenses, with Judge Politan. The parties were able to reach a proposed settlement during the mediation and, thereafter, the Gross Firm drafted and negotiated the terms of settlement and the required documentation with defense counsel, which was signed by the Gross Firm and defense counsel on June 29, 2009.

8.     The Gross Firm then retained the claims administrator for the proposed settlement.

9.     The Gross Firm and Liaison Counsel drafted the motion for preliminary approval of the proposed settlement, including, conditional certification of the class, and, along with defense counsel, and the attached exhibits which included the notice and proof of claim form and summary notice presented the proposed settlement to the Court on July 23, 2009, and August 7, 2009.

10.     Upon entry of the preliminary approval order on August 7, 2009, the Gross Firm directed and oversaw the mailing and publication of the notices of the settlement by the Claims Administrator.

11.     In connection with the fairness hearing scheduled for November 16, 2009, the Gross Firm has responded to communications from class members and prepared, with the assistance of other plaintiffs' counsel, the memorandum and affidavits in support of final certification of the class and approval of the settlement, as well as the Joint Petition.

12.     The Gross Firm and Liaison Counsel will present the settlement and request for attorneys' fees at the November 16, 2009, hearing.[1] Upon entry of the final order and judgment, the Gross Firm will continue to oversee the activities of the Claims Administrator and prepare and file the necessary moving papers to effect distribution of the proceeds of the settlement to approved class members.

13.     The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by the partners, attorneys and professional support staff of the Gross Firm who were involved in this litigation, and the lodestar calculation based on the Gross Firm's current billing rates.   The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by the Gross Firm, which are available at the request of the Court.  Time expended in preparing the Joint Petition has not been included in this request.

14.     The hourly rates for the partners, attorneys and professional support staff in the Gross Firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted and approved in other securities or shareholder litigation.

15.     The total number of hours expended on this litigation by my firm is 548.50 hours. The total lodestar for my firm is $320,906.25.

16.     The Gross Firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in the Gross Firm's billing rates.

---

[1] The Gross Firm has included $589.24 in expenses for airfare, hotel, meals and related travel expenses for the hearing and $6,050 in lodestar for ten hours to be spent by Robert P. Frutkin, Esquire to prepare for and attend the hearing.

17.     As detailed in Exhibit 2, the Gross Firm has incurred a total of $53,604.41 in un-reimbursed expenses in connection with the prosecution of this litigation.

18.     The expenses incurred in this action are reflected on the books and records of the Gross Firm.  These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

19.     With respect to the standing of counsel in this case, attached as Exhibit 3 is a brief biography of the Gross Firm and the attorneys who were principally involved in this litigation.

This Declaration is executed under the penalties of perjury pursuant to the laws of the United States and is signed at Philadelphia this ____3rd____ day of November 2009.

_____
**DEBORAH R. GROSS**

5

# EXHIBIT "1"

**IN RE ULTA SALON COSMETICS &
FRAGRANCE, INC. SECURITIES LITIGATION
Master File No. 07 C 7083**

**LAW OFFICES BERNARD M. GROSS, P.C.**

**TIME REPORT - Inception through October, 2009**

| NAME | TOTAL HOURS | HOURLY RATE | TOTAL LODESTAR |
|------|-------------|-------------|----------------|
| PARTNERS: | | | |
| Bernard M. Gross | 6.50 | $625 | $4,062.50 |
| ATTORNEYS: | | | |
| Deborah R. Gross | 136.50 | $605 | 82,582.50 |
| Robert P. Frutkin | 334.75 | $605 | 202,523.75 |
| Susan R. Gross | 68.25 | $450 | 30,712.50 |
| Tina Moukoulis | 2.50 | $410 | 1,025.00 |
| **TOTAL:** | **548.50** | | **$320,906.25** |

# EXHIBIT "2"

**IN RE ULTA SALON COSMETICS &
FRAGRANCE, INC. SECURITIES LITIGATION
Master File No. 07 C 7083**

**LAW OFFICES BERNARD M. GROSS, P.C.**

**EXPENSES - Inception through October, 2009**

| CATEGORIES | AMOUNT |
|---|---|
| Copying costs | $736.75 |
| Postage | 36.86 |
| Telephone/fax | 39.91 |
| Research | 654.72 |
| Meals, Hotels & Transportation | 3,080.57 |
| Notice | 300.00 |
| Mediator | 5,385.00 |
| Expert | 43,370.60 |
| **TOTAL EXPENSES:** | **$53,604.41** |

# EXHIBIT "3"

**LAW OFFICES BERNARD M. GROSS, P.C.** (the "Firm"), is committed to providing professional, efficient, and attentive legal services. We are nationally recognized lawyers concentrating on helping individuals, classes of individuals, or businesses who have been injured as a result of violations of antitrust laws, securities laws, ERISA laws, or consumer protection laws or another's negligence and fraud in federal and state courts throughout the country. The Firm has also represented shareholders in their fight for changes in corporate governance.

We take our cases on a contingent fee basis. Our attorneys are strong believers in the contingent fee as a socially useful, productive, and satisfying basis for compensation of legal services, particularly in litigation. It is not the number of hours that determines our fee, rather it is the result achieved for our clients.

We value practicing in a small environment where professional and personal interaction, among all, is essential for a team approach to cases. The Firm's structure allows for a far greater degree of independence, flexibility, and satisfaction than a large firm environment without sacrificing the quality and sophistication of representation necessary to litigate complex civil actions successfully throughout the United States.

Judges throughout the country have recognized contributions of the Firm in class action cases. Recently, in approving an $82.5 million settlement of a securities fraud lawsuit against Aetna, Inc. in the United States District Court for the Eastern District of Pennsylvania, in which the Firm was co-lead counsel, Judge Padova stated:

> "Furthermore, class counsel is of high caliber with extensive experience in similar class action litigation . . . consistently submitted documents of superb quality, and were very diligent in preparing filings in a timely manner under tight deadlines . . . . This Court has made special note of the efficiency and professionalism of counsel in completing discovery and resolving discovery disputes with little court intervention."

In re Aetna Inc. Securities Litigation, MDL No. 1219 (E.D.Pa. January 5, 2001). Similarly, in approving a settlement of $106 million in the United States District Court for the Eastern District of Pennsylvania, in *In re Automotive Refinishing Paint Antitrust Litigation*, MDL 1426, Judge Surrick commented on Law Offices Bernard M. Gross, P.C., noting:

> I want to commend counsel on both sides of this litigation. I think that the representation on both sides of this litigation is as good as I've ever seen in my entire professional career. Counsel worked together in this case. They frankly made the job of this Court very easy and I commend all of you for what you've done in this litigation.

pp. 18-19 of transcript of August 9, 2007 hearing.

In *Cortese v. Radian*, Civil Action No. 07-3375 (E.D.Pa. January 30, 2008), Judge McLaughlin stated:

"Bernard Gross has been active in securities litigation for 30 years. The Court is familiar with the firm and is confident that it is qualified to serve as liaison counsel."

The Firm is a strong supporter of the Philadelphia Museum of Art, having been a corporate sponsor for many years, the Free Library of Philadelphia, the University of Pennsylvania and Central High School, having assisted in raising moneys to build a new library. The Firm has recently donated three Harley Davidson police motorcycles to the City for the Philadelphia Police Highway Patrol.

## PRACTICE AREAS

### SECURITIES FRAUD CLASS ACTION LAWSUITS

The Securities Fraud Class Actions which the Firm prosecutes are designed to recover monies for investors in domestic and foreign publicly traded corporations based primarily on allegations that the corporation, through its officers or directors, disseminated materially false and misleading statements to the investment community concerning the corporation's financial condition or products, services, and business. The materially false and misleading statements resulted in the artificial inflation of the price of the company's stock or bonds. As a result, investors unwittingly paid too much for their stock or bonds. Under federal law, the investors are entitled to compensation. Often these false and misleading statements are disseminated through press releases issued by the company, filings with the SEC, and company annual and quarterly reports.

**AETNA** (E.D. Pa.) – The Firm was co-lead counsel, representing investors who purchased Aetna Inc. common stock between May 6, 1997 through September 29, 1997. The complaint alleged that defendants, through a series of accounting and actuarial manipulations, falsified Aetna's publicly filed financial statement by reporting materially understated medical expenses and artificially inflated operating earnings. A settlement was achieved on behalf of the class for $82.5 million.

**ALLEGHENY ENERGY** (D. Md.) – The Firm was co-lead counsel on behalf of a class of investors who purchased Allegheny Energy Securities between April 23, 2001 and October 8, 2002. The action alleged that defendants concealed a chronic and systematic breakdown of the company's internal accounting controls at Global Energy Markets, the company's newly acquired energy trading subsidiary. A settlement was achieved for $15.05 million.

**AMF BOWLING** (S.D.N.Y.) - The Firm was co-lead counsel on behalf of purchasers of AMF common stock in the Initial Public Offering on November 19, 1997 through and including February 26, 1999. Plaintiffs alleged that the Registration Statement and Prospectus failed to disclose the serious risks posed by the continuing decline in lead participation at AMF Bowling Centers and the risk that AMF reported financial results were not false and misleading. During the course of the litigation, the company filed for bankruptcy protection. The case settled for $20 million comprised of two settlements, $12 million from the Investment Bank Defendants and $8 million from the Individual Defendants.

**COREL CORPORATION** (E.D. Pa.) – The Firm was co-lead counsel on behalf of purchasers of Corel common stock between December 7, 1999 and March 20, 2000. Plaintiffs alleged that defendants did not disclose the truth about the company's business prospects and earnings. A settlement was achieved for $7 million.

**MOTOROLA** (N.D. Ill.) – The Firm was co-lead counsel on behalf of purchasers of Motorola's common stock from November 4, 1994 to February 17, 1995. The case concerned allegations that defendants knew but did not disclose material information concerning excess inventory of Motorola cell phones held by Motorola's domestic customers. A settlement was achieved for $25 million.

**RAVISENT TECHNOLOGIES INC.** (E.D. Pa.) – The Firm was co-lead counsel on behalf of purchasers of Ravisent stock between July 15, 1999 and April 27, 2000. Plaintiffs alleged that Ravisent failed to disclose that the company was recognizing revenue from software licensing agreements in violation of its own internal accounting procedures. As a result of the improper revenue recognition, plaintiffs alleged that the company's financial statements contained material overstatements of revenue. A settlement was achieved for $7 million.

**UNIVERSAL ACCESS INC.** (E.D. Tx.) – The Firm was co-lead counsel on behalf of purchasers of Universal Access common stock from May 10, 2001 through March 22, 2002. Plaintiffs alleged that defendants made misrepresentations about Universal Access' financial statements. A settlement was achieved for $11 million.

**VERISIGN INC.** (N.D. Cal.) – The Firm represented investors in Verisign Inc. who purchased their stock between January 25, 2001 and April 25, 2002. Plaintiffs alleged that defendants made false and misleading statements about the company's business and financial results. A settlement was achieved for $78 million.

## DERIVATIVE LAWSUITS

The Firm also has aggressively pursued cases brought by shareholders on behalf of publicly traded corporations injured by the breach of fiduciary duty or waste of corporate assets by its officers and directors. As a result, the Firm has successfully implemented remedial recoveries which also improve shareholder value and prevent corporate future mismanagement, including the adoption of corporate therapeutic measures, corporate governance policies and procedures, and the hiring of audit committee consultants to redress alleged inadequacies.

**ABBOTT LABORATORIES** (N.D. Ill.) - The Firm, as co-lead counsel, filed a derivative action against the directors of Abbott for their breach of their fiduciary duties by allowing the Company to violate FDA quality rules dating back to 1993 and resulting in a consent decree that Abbott entered into with the federal government on November 2, 1999, requiring the Company to pay a $100 million fine and make corrective changes at its manufacturing facilities. A settlement was reached in 2004 which required the Company to implement measures to strengthen the Board of Directors' oversight of regulatory compliance, and to pay $27 million for new compliance and regulatory measures.

3

**SCHERING-PLOUGH CORP.** (D.N.J.) - The Firm, as co-lead counsel, brought litigation against current and former directors alleging that they breached their fiduciary duties with respect to their oversight of Schering's manufacturing and quality control practices, as well as medical marketing and sales practices, certain of which had become issues in two then ongoing (and since resolved) investigations by the United States Attorneys' Offices in Boston and Philadelphia. Plaintiffs contended that the alleged wrongdoing in these areas occurred over a period of years, and resulted in financial, operational and reputational damage to the company. A settlement was reached in which the company agreed to change its global compliance and audit functions, fund these changes for five years, enhance communication between the board and management, and change the way board members are elected and paid.

**BOEING COMPANY** (Dela. and Ill. State Court) – The Firm, as co-lead counsel, filed a derivative action against current and former directors for breach of their fiduciary duties of care, good faith and loyalty by failing to take proper steps to prevent or remedy ethical and legal violations by the company and its employees, thereby exposing the company to substantial fines, liabilities, loss of contracts and other business. A settlement was reached which provided for the adoption and implementation of significant corporate governance and compliance measures and the commitment of substantial treasury funds, in the amount of $29 million above 2004 expenditures, to implement and support those governance and compliance measures and to fund further enhancements to Boeing's ethics and compliance program.

## ERISA LAWSUITS

Law Offices Bernard M. Gross, P.C., litigates claims on behalf of employees and/or retirees alleging interference with their interests under the Federal Employee Retirement Income Security Act (ERISA). Among its provisions, ERISA recognizes that the pension and 401(K) plan trustees owe fiduciary duties to the participants and beneficiaries in these plans. This duty is sometimes breached, particularly where a company deems investment in its own equities appropriate, despite having access to information that clearly indicates otherwise. This conflict of interest and the resultant losses can be devastating to employees who often depend on their 401(K) accounts as a principal source of retirement income.

**CVS CORPORATION** (D. Mass.) - The Firm, as co-lead counsel, represented all persons who were participants or beneficiaries in the CVS 401(K) Profit Sharing Plan (the "401(K) Plan), the CVS Corp. and Subsidiaries Employee Stock Ownership Plan (the "CVS ESOP"), and who held, acquired, purchased or had contributed common stock and/or CVS preference stock (collectively "CVS stock") to his or her account in either plan at any time from December 1, 2000 to October 31, 2001 (the "Class Period"). A settlement was achieved for $3 million.

**NUI CORPORATION** (D.N.J.) – The Firm, as co-lead counsel, represented individuals who were participants or beneficiaries of the (i) NUI Corp. Savings and Investment Plan and/or (ii) NUI Corp. Savings and Investment Plan for Collective Bargaining Employees during any portion of November 8, 2001 through and including September 26, 2003. A settlement was achieved for $850,000.00.

4

## ANTITRUST CLASS ACTION LAWSUITS

The Antitrust Practice of the Firm focuses primarily on the representation of plaintiffs who have been the victims of price fixing, unfair trade practices, or other anti-competitive conduct. The firm has taken a leading role in many of the largest price fixing and price discrimination cases throughout the United States, which have, after either trials or settlements, led to recovery for the injured parties, of hundreds of millions of dollars.

**AUTO PAINT REFINISHING** (E.D.Pa.) -- The Firm served as co-lead counsel for the class in an antitrust action on behalf of direct purchasers of automotive refinishing paint from defendants during the period January 1, 1993 to December 31, 2000. Defendants included PPG Industries, E.I. DuPont de Numours, Sherwin-Williams, BASF and Akzo Nobel Coatings. . A settlement has been reached with all defendants totaling $106 million. This was the largest private antitrust settlement ever achieved in which the federal government empanelled a grand jury and, eventually, closed the investigation without bringing any charges brought against any of the paint manufacturers

**CARBON BRUSHES** (N.D.J.) -- The Firm served as co-lead counsel for the class in an antitrust action that accused a group of manufacturers of electrical carbon products of engaging in a decade long conspiracy to fix prices. Defendants included Morgan Crucible, Carbone of America Industries, Schunk GmBH and SGL Carbon. A settlement was reached for $21.9 million.

**FLAT GLASS** - (M.D.L. 1200) (W.D. Pa.) - Horizontal price fixing. This was an antitrust action brought on behalf of purchasers of flat glass products alleging that the principal manufacturers of such products colluded to fix prices at artificially inflated levels. Settlements were reached with four of the five defendants totaling over $60 million.

**MEDICAL X-RAY FILM** (E.D.N.Y.) -- The Firm was co-lead for the class of purchasers from the manufacturers of x-ray film and recovered $24 million on behalf of the class by settlement.

**OLIN SKI LITIGATION** (E.D. Pa.) -- The Firm was co-lead counsel alleging price fixing by Olin Ski Company and its distributors in the United States. The case was tried and the jury returned a verdict in favor of the class. This was the first time that a class action vertical price fixing case was successfully tried before a jury. The case was eventually settled for more than $7 million.

## EMPLOYEE WAGE CLAIM CLASS ACTION LAWSUITS

Overtime lawsuits can be pursued by workers who have been denied overtime wages in direct violation of the U.S. Fair Labor Standards Act of 1938. The act is a federal law which governs not only pay practices, but also the minimum wage and child labor practices.

## UNFAIR MERGERS

Takeover proposals are often approved by board of directors without the board properly shopping these proposals for the best price or providing shareholders with adequate information to make an informed decision.

**NETSMART** - Recently, the Firm on behalf of shareholders of Netsmart achieved a noted victory where the board only looked at private equity buyers and refused to look at strategic buyers. The court imposed a temporary injunction on the Merger until the proxy materials were amended to include further information on the expected future cash flow projections, as well a "fuller, more balanced" description of the Board's actions in canvassing potential strategic buyers.

## CONSUMER FRAUD LAWSUITS

Consumer fraud describes a wide range of improper practices that may involve advertising, marketing and/or the sale of goods or services. Consumer fraud class actions are initiated, for example when a company overcharges or improperly charges consumers for goods and services, or runs deceptive or misleading ads for its products. Companies also commit consumer fraud when they interpret a contract or agreement in a manner that unfairly disadvantages consumers. The Firm specializes in litigation on behalf of consumers. These types of class actions have resulted in significant monetary recoveries for consumers and changes in corporate policies on a class-wide basis.

**BERKHEIMER** (Ct. of Common Pleas, Pa.) - The Firm, as lead counsel, represented all Pennsylvania taxpayers who paid costs to Berkheimer in connection with the collection of delinquent local Earned Income Taxes ("EIT") for tax years 1995 through 2001. Te court approved the settlement of the action for total consideration of $2 million.

## ATTORNEYS

**BERNARD M. GROSS** is a graduate of Central High School of Philadelphia (B.A. 1952), the University of Pennsylvania Wharton School (B.S. 1956), and the University of Pennsylvania School of Law (L.L.B. 1959). He founded the Law Offices Bernard M. Gross, P.C., over forty years ago. He is a former Assistant City Solicitor in charge of bonds and contracts for the City of Philadelphia (1961-64). He was a member of the Pennsylvania General Assembly from 1967-70. He is admitted to practice before the United States Supreme Court, United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania and the Supreme Court of Pennsylvania.

Bernard M. Gross has been an active member of The American Association for Justice since 1960. In 1990, he received the "Stalwart" award from The Association of Trial Lawyers of America. Mr. Gross was a member of the House of Delegates of the Pennsylvania Bar Association (1988-93). He is a former member of the Board of Governors of the Pennsylvania Association for Justice and currently a member of the Legislative Policy Committee of the Pennsylvania Association for Justice. Mr. Gross was a member of the Board of Governors of the Philadelphia Bar Association, a past President of the Philadelphia Trial Lawyers Association, past Chairman of the Philadelphia Bar Association Committee on Judicial Compensation and former Chairman of its Civil Legislative Committee. He is formerly Chancellor of the Tau Epsilon Rho Law Fraternity Philadelphia Graduate Chapter.

Mr. Gross has lectured on behalf of the Philadelphia Trial Lawyers Association and the Pennsylvania Trial Lawyers Association. He has participated in many complex federal and class actions, including antitrust, consumer fraud and corporate securities litigation.

**DEBORAH R. GROSS** is a graduate of the University of Pennsylvania Wharton School (B.S. 1982) and Boston University School of Law (J.D. 1985). She is a graduate of the Cheltenham High School. She is admitted to practice before the Supreme Court of Pennsylvania, the Supreme Court of Massachusetts, the United States District Courts for the Eastern District of Pennsylvania, for the District of Massachusetts, and for the District of Colorado, the United States Court of Appeals for the Third Circuit and for the Tenth Circuit, and the United States Supreme Court.

Since 1998, Ms. Gross has been a lecturer in the Federal Securities Law at the PBI Annual Federal Securities Law Forum. She has also taught various Continuing Legal Education seminars including Oral Advocacy in the Federal Courts, Changes to Rule 23 of the Federal Rules of Civil Procedure, Attorney's Fees in Class Actions and current topics in the securities laws. In 2002, Ms. Gross was a guest panelist at the University Of Chicago Graduate School Of Business, 50th Annual Management Conference. She spoke on the topic of "Accounting in Crisis - Who Watches the Watchdogs?" In 2003, Ms. Gross also spoke at The Directors' Conference, a three-day intensive program for directors and senior executives to explore the fundamentals of corporate governance and board service offered by the University Of Chicago Graduate School Of Business, Stanford Law School and the Wharton School of the University of Pennsylvania. She discussed the legal issues surrounding audit committee qualifications, responsibility and content. She spoke at the 2006 ABA Section of Business Law Annual Meeting on Controlling Restatement Chaos. Ms. Gross was on the Attorney Advisory Committee to the Pennsylvania Securities Commission in 2006 and 2007.

Ms. Gross was chair of the Federal Courts Committee of the Philadelphia Bar Association and was responsible for organizing the June 1998 Bench Bar Conference of the Philadelphia Bar Association. She was a member of the Third Circuit Judicial Council Bench Bar Relations Committee. She is a member of the Philadelphia Federal Court Historical Society and chaired the annual dinner where Justice Scirica spoke. She was on the Friends Committee for the 29th Annual Conference of the National Association of Women Judges.

For the past four years, Ms. Gross has been a trustee of the Philadelphia Bar Foundation, the Charitable Arm of the Philadelphia Bar Association. The Foundation's mission is to promote access to justice for all people in the community, particularly those struggling with poverty, abuse and discrimination. The Foundation provides funding to over 30 grantee organizations. She is responsible for the establishment of the cy pres committee of the Foundation which requests courts to award the residual moneys from class action lawsuits. She also assisted in the reinvigoration of the Andrew Hamilton Gala co-chairing for the past two years the premier event of the Philadelphia Legal Community which raises moneys for the Foundation.

Ms. Gross is involved in many other nonprofit and educational organizations including Temple Adath Israel where she is a member of the Executive Committee, First Vice President. Previously, she was Vice President of Education, responsible for education at the preschool and religious school. She has also been heard of the education committees of the religious school and preschool as well as a member of the Board of Directors. Her children attend the William Penn Charter School where she is a class parent. She has also organized a program to bring the third and eighth grade students from William Penn Charter to the federal courthouse to observe a naturalization ceremony. She co-chaired and raised moneys for the University of Pennsylvania Class of 1982 25th year reunion which had a record number of attendees and raised a record number of donations. She has supported numerous charitable organizations including Hazon, Jaffa Institute. She participated in the first Three Day Walk in Philadelphia to raise moneys for breast cancer.

**ROBERT P. FRUTKIN** is a 1971 graduate of the University of Rochester and a 1975 *cum laude* graduate of the School of Law of Temple University, where he was a member of the Staff of the Temple Law Quarterly. Mr. Frutkin is admitted to practice before the Supreme Court of Pennsylvania, the United States Court of Appeals for the Third, Fourth, Seventh, Eighth, Ninth and Eleventh Circuits, and the United States District Court for the Eastern District of Pennsylvania. Prior to this becoming Of Counsel to the Firm, Mr. Frutkin formed his own firm of Savett Frutkin Podell & Ryan. Prior to the formation of his firm on October 1, 1991, Mr. Frutkin had been a shareholder of Berger & Montague, P.C., in Philadelphia. Mr. Frutkin worked in the Peace Corps.

In *In re U.S. Bioscience Securities Litigation*, 92-CV-678 (E.D. Pa.) (April 14, 1994 Hearing Transcript at pp. 38-39), the Court commented favorably on Mr. Frutkin's performance as co-lead counsel:

> Since I've been down here, the quality of lawyering on both sides, but I'm going to stress now on the plaintiffs' side, simply has not been exceeded in any case and we've had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than...Mr. Frutkin, and the argument we had on the Motion to Dismiss, for example, Motions to Dismiss, both sides were fabulous, but plaintiffs' counsel were as good as they come.

Mr. Frutkin successfully argued before the 7th Circuit Court of Appeals the landmark decision in *In re Abbott Laboratories Deriv. Litig.*, 325 F.3d 795 (7th Cir. 2003), as well as before Delaware Chancery Court, the landmark decision in *In re Netsmart Technologies Inc. Shs.*

*Litig.*, where the Court faulted Netsmart for excluding strategic buyers from its sales process and ordered the company to delay a vote on a proposed acquisition.

**SUSAN R. GROSS** is a graduate of Hofstra University in Hempstead, New York (B.A. 1985) and Suffolk University School of Law (J.D. 1989). She graduated from Cheltenham High School. She is admitted to practice before the Supreme Court of Pennsylvania, the Supreme Court of Florida, the United States District Court for the Eastern District of Pennsylvania and the United States Court of Appeals for the Third Circuit. She is a member of the Philadelphia Bar Association and Pennsylvania Association for Justice. Ms. Gross also sits as an arbitrator for the Court of Common Pleas, Philadelphia County, First Judicial District.

Besides her involvement in the law and legal community, Ms. Gross is active at the William Penn Charter School in East Falls, Pennsylvania as a class parent. She was formerly Co-Chair of the Temple Adath Israel Parent Teacher Association for three years. Ms. Gross is also an active supporter of the Cystic Fibrosis Foundation, Angelman Syndrome Foundation, Susan B. Komen Breast Cancer Foundation and the Career Wardrobe, a non-profit organization that provides free professional clothing and educational opportunities to women in the Philadelphia region.

She concentrates her practice in securities fraud litigation. Ms. Gross serves in the Firm's lead plaintiff department which involves working with clients, litigation strategy and lead plaintiff issues, as well as in the shareholder relations department.

**TINA MOUKOULIS** is a graduate of Ursinus College (B.A. 1993) and Pennsylvania State University at the Dickinson School of Law (J.D. 1998). During law school, Ms. Moukoulis was a member of the *Dickinson Law Review* and served as a Student Attorney representing indigent clients in domestic matters through the Dickinson Family Law Clinic. Ms. Moukoulis also served as a judicial intern in the Superior Court of Pennsylvania (1996). Since joining the Firm in 1998, she concentrates her practice in the area of antitrust and securities fraud litigation.

Ms. Moukoulis is admitted to practice in the Supreme Court of Pennsylvania, theSupreme Court of New Jersey, The United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey , and the United States Court of Appeals for the Third Circuit Court, and is a member of the Pennsylvania Bar Association.

In addition to being an active steward of her parish, Ms. Moukoulis also supports events and organizations focused on promoting medical research for breast cancer as well as the education and social awareness of breast cancer issues. She also supports The Career Wardrobe, a nonprofit organization that provides free professional clothing and educational opportunities to women in the Philadelphia region.

# EXHIBIT D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
DIVISION

| | | |
|---|---|---|
| IN RE ULTA SALON COSMETICS & FRAGRANCE, INC. SECURITIES LITIGATION | : : : : | No. 07 C 7083 |
| This Document Relates To: | : : | |
| ALL ACTIONS | : : | Hon. Robert W. Gettleman |

DECLARATION OF MARVIN A. MILLER IN
SUPPORT OF JOINT PETITION FOR
ATTORNEYS' FEES AND EXPENSES
FILED ON BEHALF OF MILLER LAW LLC

Marvin A. Miller, declares and says:

1.     I am with the law firm of Miller Law LLC.  I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in this case, as well as the reimbursement of expenses incurred by my firm in connection with this litigation.

2.     My firm was appointed and served as liaison counsel for plaintiffs.  In that capacity, I worked closely with Lead Counsel performed factual research relating to the claims asserted, participated in the preparation of the class action complaint, review and analysis of other complaints filed, participated in the opposition to the motion to dismiss, performed legal research on various technical issues, participated in preparation of the amended complaint, participated in discovery, assisted in the formulation of  strategy for the litigation generally, assisted in the preparation of motion papers and memorandum of law, participated in the

preparation of the motion papers in support of preliminary approval of the settlement, the exhibits to the motion, including the Notice to the Class, and assisted in the preparation of the memorandum of law in support of final approval of the settlement.

3.     The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by the partners, attorneys and professional support staff of my firm who were involved in this litigation, and the lodestar calculation based on my firm's current billing rates. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

4.     The current hourly rates for the partners, attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters.

5.     The total number of hours expended on this litigation by my firm is 196.0 hours. The total lodestar for my firm is $98,980.50.

6.     My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7.     As detailed in Exhibit 2, my firm has incurred a total of $2,012.54 in un-reimbursed expenses in connection with the prosecution of this litigation.

8.     The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

9.     With respect to the standing of counsel in this case, attached as Exhibit 3 is a brief biography of my firm and attorneys in my firm who were principally involved in this litigation.

This Declaration is executed under the penalties of perjury pursuant to the laws of the United States and is signed at Chicago, Illinois  on this 2d day of November, 2009.

Marvin A. Miller

# EXHIBIT "1"

## ULTA SECURITIES LITIGATION
### MILLER LAW LLC

### TIME REPORT: MONTH

| Name | Category 1 | Category 2 | Category 3 | Category 4 | Category 5 | Category 6 | Category 7 | Category 8 | Category 9 | Category 10 | Hourly Rate | Current Hours | Current Lodestar |
|------|------------|------------|------------|------------|------------|------------|------------|------------|------------|-------------|-------------|---------------|------------------|
| **PARTNERS:** | | | | | | | | | | | | | |
| Marvin A. Miller | | 18.5 | | 0.5 | | | 6.2 | | | | $765.00 | 25.20 | $19,278.00 |
| | | | | | | | | | | | $0.00 | 0.00 | $0.00 |
| **ASSOCIATES/OF COUNSEL:** | | | | | | | | | | | | | |
| Lori A. Fanning | | 121 | | 14.6 | | | 4.1 | | | | $525.00 | 139.70 | $73,342.50 |
| | | | | | | | | | | | | 0.00 | $0.00 |
| **PARALEGALS:** | | | | | | | | | | | | | |
| Kay Pulido | | 14 | | | | | | | | | 210.00 | 14 | $2,940.00 |
| Jorge Ramierz | | 17.1 | | | | | | | | | $200.00 | 17.1 | $3,420.00 |
| **TOTALS** | 0 | 170.6 | 0 | 15.1 | 0 | 0 | 10.3 | 0 | 0 | 0 | | 196.00 | $ 98,980.50 |

### CATEGORIES

| | |
|---|---|
| 1 | Case Assessment, Pre-Filing Investigation, Initial Complaint |
| 2 | Briefs, Motions, Pleadings, Legal Research |
| 3 | Class (certification briefing, class discovery, class rep contacts) |
| 4 | Discovery (merits but not class) and Post-Filing Fact Investigation |
| 5 | Experts/Consultants |
| 6 | Case Management and Strategy |
| 7 | Court Appearances & Preparation |
| 8 | Trial |
| 9 | Appeals |
| 10 | Settlement |

# EXHIBIT "2"

**ULTA SECURITIES LITIGATION**

**MILLER LAW LLC**

**EXPENSE REPORT: INCEPTION THROUGH OCTOBER 31, 2009**

| Categories: | Expenses | |
|---|---|---|
| Assessments/Litigation Fund | | |
| Computer Research/Lexis/Westlaw | $875.60 | |
| Court Reporters/Transcript/Video | | |
| Experts/Consultants/Professional | $84.00 | |
| Facsimile Transmission | | |
| Filing/Witness Fees | $700.00 | |
| Travel/Meals/Hotels/Transportation | $19.00 | |
| Photocopies/Reproduction | $320.25 | |
| Postage | $12.69 | |
| Telephone | $1.00 | |
| **TOTAL EXPENSES:** | **$2,012.54** | |

# EXHIBIT "3"



Miller Law LLC is a litigation boutique law firm which unites the talents of attorneys with combined experience in a wide array of complex civil litigation. The foundation of the firm is the ability to handle large complex litigation and sophisticated class actions in a variety of practice areas in federal and state courts across the country.

Our litigation experience covers a varied and broad range of industries including pharmaceuticals, telecommunications, commodities and securities.

Miller Law LLC's fees are contingent on our success in achieving a favorable result for our clients and are reviewed and awarded by the court. Because we advance the costs of the litigation and our fees are earned on a predominately contingent basis, we continuously monitor and carefully evaluate each case throughout the litigation and understand the need to be efficient. This gives us the confidence and flexibility to employ creative thought in the decision-making process at every stage of the litigation. The skill and experience of the Miller Law attorneys has been recognized repeatedly by their peers, at whose request we have served as co-lead counsel and *liaison*, and by courts, which have appointed our attorneys to leadership positions in complex multi-district or consolidated litigation in securities, commodities, consumer and antitrust class actions where we have been responsible for many outstanding recoveries and precedent-making decisions.

## Representative Pending Matters:

### Antitrust:

*Bayside Rubber & Prods., Inv. v. Bridgestone Indus. Prod. Am. Inc.,* 07-21784 (S.D. Fla.). This class action alleges that defendant-manufacturers of flexible rubber hose used to transport oil between ships, terminals, buoys and tanks, among other things, conspired to fix the prices of the marine hoses.

*Caldwell v. Matsushita Elec. Indus. Co., Ltd.,* 07-6303 (N.D. Cal.). Miller Law LLC, along with co-counsel represents a plaintiff who seeks damages and injunctive relief for alleged antitrust violations relating to flat screens.

*Cocoe Voci, Inc. v. YKK Corp.,* 07-9929 (S.D.N.Y.). Plaintiff alleges that the defendants rigged the prices of fasteners and zippers that are primarily used in the garment, apparel and footwear industries in violation of the federal antitrust laws.

*Cook v. Fidelity Nat'l Title Ins. Co.,* 08-731 (E.D.N.Y.). The complaint contains allegations of an illegal price-fixing agreement among title insurance companies in New York.

*Gasoline and Automotive Service Dealers v. Champion,* (D. Ct.). Plaintiffs seek injunctive relief and costs of suit under the antitrust laws of the United States for allegations that the Defendants

engaged in price-fixing of aftermarket filters.

*In re Potash Antitrust Litig. No.II,* MDL No. 1996, 08-cv-6910 (N.D.Ill.). This case is brought on behalf of a class of plaintiffs who indirectly purchased potash products in the United States from one or more named Defendants between July 1, 2003 and the present. Plaintiff alleges, that in order to maintain price stability and increase profitability, Defendants conspired and combined to fix, raise, maintain, and stabilize the prices for potash that was sold in the United States and that the Defendants exchanged sensitive, non-public information about prices, capacity, sales volumes, and demand; allocated market shares, customers and volumes to be sold; and coordinated on output, including the limitation of production, to further and enact the price fixing conspiracy. Mr. Miller was appointed by the Court and serves as Interim Lead Counsel.

*In re Air Cargo Shipping Servs. Antitrust Litig.,* 06-MD-1775 (E.D. N.Y.). Miller Law LLC represents plaintiffs who seek recovery from air cargo shipping provider-defendants that it is alleged participated in a global conspiracy to fix prices charged for these shipping services at *supra-*competitive levels, in violation of the federal antitrust laws.

*In re Oxycontin Antitrust Litig.,* 04-MD-1603 (S.D.N.Y.). The firm represents plaintiffs (consumers and third party payors) in these multidistrict class actions on behalf of purchasers of controlled-release oxycodone hydrochloride prescription tablets marketed under the brand name OxyContin®.

*Nizhnekamskneftekhim USA, Inc. v. CSX Transp., Inc.,* 07-2809 (E.D.Pa.). Miller Law LLC, along with co-counsel, filed a complaint on behalf of those who purchased directly from the Railroad Defendants "unregulated" rail freight transportation services on which rail fuel surcharges were assessed.

*Painters District Council No. 30 Health and Welfare Fund v. Evanston Northwestern Healthcare,* 08-2541 (N.D. Ill.). Defendant Evanston Northwestern Healthcare is being sued for inflated prices for healthcare services in violation of antitrust laws.

*In re Wellbutrin XL Indirect Purchaser Antitrust Litig.,* 08-2433 (E.D.Pa.), *Painters District Council No. 30 Health and Welfare Fund v. Biovail Corp.,* 08-2688 (E.D. Pa.). Plaintiff alleges that Defendants engaged in sham litigation and petitioning and anticompetitive agreements to maintain their monopoly profits in the bupropion HCl extended release market.

*Reed v. Advocate Health Care,* 06-3337 (N.D. Ill.). This class action involves the alleged conspiracy among five Chicago area hospitals to suppress and price-fix the salaries and benefits for Registered Nurses' salaries. Mr. Miller has been appointed by the court to serve as Plaintiffs' *liaison* counsel.

*Supreme Auto Transport LLC v. Arcelor Mittal,* 08 C 5468 (N.D. Ill.). This case was commenced an indirect purchaser class action against ArcelorMittal USA and others for their conspiracy to illegally price fixing of steel products sold to consumers and to artificially restrict the supply of steel products in the United States. Mr. Miller was appointed Interim Lead Counsel.

*Yoly Industrial Supply v. Horizon Lines, Inc.*, 03:08-CV-434-J-32HTS (M.D.Fla.).  Complaint alleges antitrust violations by ocean shippers to raise, fix, peg, maintain or stabilize prices for Ocean Cabotage in the Puerto Rico trade.

*In re: Text Messaging Antitrust Litig.*, 08 C 7082 (N.D.Ill.). The Complaint in this Multidistrict Litigation seeks relief against the major cellular service providers because of alleged price fixing of text messaging charges. Mr. Miller has been appointed to the Plaintiffs' Steering Committee.

*In re Flonase Antitrust Litig.*, 08-3301 (E.D.Pa.). Plaintiffs allege that Defendants engaged in anticompetitive activities and abuse of the citizens petition process to maintain their monopoly profits in the fluticasone propionate market. Marvin Miller and Lori Fanning have been appointed Interim Co-Lead Counsel for the Indirect Purchaser Class along with another firm.

*Painters District Council No. 30 Health and Welfare Fund v. Boehringer Ingelheim, Int'l. GMBH and Boehringer Ingelheim Pharma., Inc.*, 09-1101 (W.D.Pa.).  This case seeks injunctive relief, damages and other monetary and equitable relief from allegations of Defendants' violations of federal and state antitrust laws, state consumer protection laws and state common law principles of unjust enrichment on behalf of indirect purchasers of Mirapex.

*Scurto v. Unimed Pharma., Inc.*, 09-1900 (D.N.J.). This complaint seeks to recover for allegations regarding overcharges arising out of Defendants' unlawful delay and exclusion of generic competition from the market for Androgel and its AB-rated generic equivalents.

## Commodities:

*Dennison v. BP Corp.*, No. 06-3334 (N.D. Ill.).  This class action was commenced to recover damages as a result of defendant's alleged improper conduct in manipulating the price of propane. Mr. Miller serves as Co-Lead Counsel in this consolidated Plaintiffs' class action.

*Kohen, et al. v. Pacific Investment Management Co.*, No. 05-4681 (N.D. Ill.).  This class action seeks recovery for the alleged violation of the Commodity Exchange Act when the Defendants improperly manipulated the Ten-Year Treasury bonds.  Mr. Miller, at the request of Lead Counsel, serves as *liaison* counsel for the Plaintiffs.

### Consumer Protection:

### Predatory Lending

*In re: Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*, MDL No. 1715, (N.D. Ill.).  This large multidistrict national class action against this "subprime" lender, challenges Ameriquest's alleged predatory lending practices, "bait and switch", faulty appraisals, improper late fees and hidden costs, among other practices, and seeks damages and remedial relief on behalf of borrowers. At Plaintiffs' Co-lead counsel's request, Mr. Miller serves as *liaison* counsel.

3

In the following series of cases, Miller Law attorneys have been instrumental in putting together a nationwide coalition of counsel and have commenced and are participating in national class actions on behalf of plaintiffs who are seeking remedies for allegations of discriminatory effects of home financing policies and practices. Those actions are against the leading mortgage lenders and include:

*J.P. Morgan Chase & Co. and Chase Bank U.S.A. N.A.*
*Chevy Chase Bank F.S.B.*
*Citifinancial Services, Inc. and Citigroup, Inc.*
*Countrywide Bank, Countrywide HomeLoans, Inc.*
*Decision One Mortgage Company, LLC, HSBC Finance Corp.*
*First Franklin Financial Corp.*
*Flagstar Bank, FSB*
*Fremont Investment and Loan and Fremont General Corporation*
*GE Money Bank*
*Greenpoint Mortgage Funding, Inc.*
*H & R Block, Inc., Option One Mortgage Corp. and Option One Mortgage Services*
*Long Beach Mortgage Co.*
*Washington Mutual Bank, F.A.*
*Wells Fargo Bank, N.A.*
*WMC Mortgage Corp. and WMC Mortgage, LLC*
*World Savings Bank*

### Consumer Fraud:

*In re Epogen and Aranesp Off-Label Mktg. and Sales Practices Litig.,* **MDL No. 1934,** *Painters District Local Council No. 30 Health & Welfare Fund v. Amgen, Inc.,* 07-6228 (N.D. Ill.) alleges unlawful off-label and otherwise deceptive marketing of recombinant protein biological drug products used to stimulate red blood cell growth and activation brought on behalf of a union "employee welfare benefit plan". Plaintiff seeks to represent a nationwide class of third-party payors.

*In re Ford Motor Co. E-350 Van Products Liab.,* 03-4558 (D.N.J.). Nationwide or multi-state class action alleges that the Ford E-350 "15-passenger vans" contain one or more defects which can cause rollover. Plaintiff claims, among other allegations, that Ford breached express and implied warranties.

*In re Mercedes Benz Tele-Aid Contract Litig.,* MDL No. 1914, No. 07-2720 (D.N.J.). Plaintiffs seek compensatory and other damages for allegations relating to Mercedes Benz' failure to inform Mercedes vehicle purchasers of Model Years 2002 through 2006 that their analog-only Tele Aid systems would become obsolete and would stop functioning after December 31, 2007. The court granted class certification on April 27, 2009.

### Employment:

*Howard v. Securitas Security Servs.,* 08-2746 (N.D. Ill.). Miller Law LLC, along with co-counsel – seek to recover overtime wages for employees. The Court granted class certification in January 2009.

4

*Rodriguez v. CenturyTel, Inc.*, 09-50006 (N.D. Ill.). In this FLSA action, Miller Law LLC seeks overtime and other wages for employees. The Court approved a settlement in September, 2009.

**Securities:**

*Lawrence E. Jaffe Pension Plan v. Household Int'l*, 02-5893 (N.D.Ill.). The firm serves as *liaison* counsel in this securities fraud litigation alleging that Household engaged in a variety of illegal sales practices and improper lending techniques to manipulate publicly reported financial statistics.

*Makor Issues & Rights & Ltd. v. Tellabs,* 02-4356 (N.D. Ill.). This securities fraud action alleges that Tellabs, a global supplier of optical networking, broadband access and voice-quality enhancement solutions to telecommunications carriers and internet service providers engaged in wrongdoing concerning certain of its core products. Mr. Miller serves as Liaison Counsel. The case was argued before the United States Supreme Court and created precedent for the pleading standard in securities cases. *Tellabs v. Makor Issues & Rights, Ltd.,* 127 S.Ct. 2499 (2007). The court granted class certification on February 24, 2009.

*Mirsky v. Ulta Salon, Cosmetics and Fragrance Inc.*, 07-7083 (N.D. Ill.). As alleged in the complaint, defendants issued materially false and misleading statements in connection with the IPO concerning ULTA's financial condition and the levels of its selling, general and administrative expenses inventories. The court preliminarily approved settlement on August 7, 2009.

*Plumbers and Steamfitters Local No. 7 Pension Fund v. Walgreen Co.,* 08-2162 (N.D. Ill.) This is a securities class action on behalf of purchasers of Walgreen common stock during the class period seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

*Silverman v. Motorola*, 07-4507 (N.D. Ill.). Miller Law LLC serves as Liaison Counsel in this securities fraud action against Motorola –one of the world's largest producers of wireless handsets. The court granted class certification on August 25, 2009.

*Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Allscripts-Misys Healthcare Solutions, Inc.*, 09-4726 (N.D.Ill.) This is a securities class action on behalf of purchasers of Allscripts-Misys Healthcare Solutions, Inc. common stock during the class period seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

*Jones v. Corus Bancshares, Inc.,* 09-1538 (N.D.Ill.) Miller Law LLC serves as Liaison Counsel in this securities fraud action against Corus.

*Garden City Employees' Retirement System v. Anixter Int'l Inc.,* 09-5641 (N.D.Ill.) This is a securities class action on behalf of purchasers of Anixter common stock during the class period seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

5

*DeAngelis v. Huron Consulting Group, Inc.,* 09-4766 (N.D.Ill.). This is a securities class action on behalf of purchasers of common stock of Huron Consulting Group during the class period seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

### Shareholder and Derivative actions:

*Murphy v. CDW Corp.,* 07-3033 (N.D. Ill.). The firm represents a class of the public shareholders of CDW Corporation who sued the company and its directors for breach of fiduciary duties in connection their acceptance of the $7.3 billion buyout. The complaint alleges, among other matters, that the price does not reflect the true value of the company to its shareholders. The firm has been appointed *liaison* counsel for the class. The Court entered an order approving the settlement on May 7, 2008.

## *Some of the additional significant cases in which Miller Law attorneys have been prominently involved include:*

### Antitrust:

*Ryan-House v. GlaxoSmithKline PLC,* No. 02-442 (E.D. Va.). Plaintiffs allege that GSK, which makes Augmentin, misled the United States Patent Office into issuing patents to protect Augmentin from competition from generic substitutes. The case was resolved and the court approved a $29 million settlement for the benefit of consumers and third-party payors. *Ryan-House, et al v. GlaxoSmithKline, PLC, et al.,* No. 02-442, (January 10, 2005, E.D. Va.)

*In re Relafen Antitrust Litig.,* 01-12239 (D. Mass.). The United States District Court for the District of Massachusetts granted final approval to a $75 million class action settlement for the benefit of consumers and third-party payors who paid for branded and generic versions of the arthritis medication Relafen.

*In re Warfarin Sodium Antitrust Litig.,* MDL 98-1232 (D. Del.). A multi-district class action on behalf of purchasers of Coumadin, the brand-name warfarin sodium manufactured and marketed by DuPont Pharmaceutical Company. Plaintiffs alleged that the defendant engaged in anticompetitive conduct that wrongfully suppressed competition from generic warfarin sodium. The case settled for $44.5 million which was affirmed on appeal. See *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231 (D. Del. 2002).

*In re Cardizem CD Antitrust Litig.,* MDL No. 1278 (E.D. Mich.). Multi-district class action on behalf of purchasers of Cardizem CD, a brand-name heart medication manufactured and marketed by Hoechst Marion Roussel, Inc. (now merged into Aventis Pharmaceuticals, Inc.) Plaintiffs alleged that an agreement between HMR and generic manufacturer Andrx Corp. unlawfully stalled generic competition. The $80 million settlement for the benefit of third-party payors and consumers was granted final approval. *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508 (E.D. Mich. 2003), *appeal dismissed,* 391 F.3d 812 (6th Cir. 2004).

*In re Synthroid Marketing Litig.*, MDL No. 1182 (N.D. Ill.). This multi-district action arises out of alleged unlawful activities with respect to the marketing of Synthroid, a levothyroxine product used to treat thyroid disorders. Final approval of a settlement in the amount of $87.4 million plus interest. *See* 188 F.R.D. 295 (N.D. Ill. 1999) was upheld on appeal. *See* 264 F.3d 712 (7th Cir. 2001).

*In re Lorazepam & Clorazepate Antitrust Litig.*, MDL 1290 (D.D.C.). This multi-district class action arose out of an alleged scheme to corner the market on the active pharmaceutical ingredients necessary to manufacture generic clorazepate and lorazepam tablets. After cornering the market on the supply, defendants raised prices for generic clorazepate and lorazepam tablets by staggering amounts (*i.e.*, 1,900% to over 6,500%) despite no significant increase in costs. On February 1, 2002, Judge Thomas F. Hogan approved a class action settlement on behalf of consumers, state attorneys general and third party payors in the aggregate amount of $135 million. *See* 205 F.R.D. 369 (D.D.C. 2002).

*In re Lithotripsy Antitrust Litig.*, No. 98 C 8394 (N.D. Ill.). Antitrust class action arising out of alleged stabilization of urologist fees in the Chicago metropolitan area.

*Brand-Name Prescription Drug Indirect Purchaser Actions*. Coordinated antitrust actions against the major pharmaceutical manufacturers in ten states and the District of Columbia. The actions were brought under state law on behalf of indirect purchaser consumers who obtained brand name prescription drugs from retail pharmacies. In 1998, the parties agreed to a multi-state settlement in the amount of $64.3 million, which was allocated among the actions.

*In Re Cellular Phone Cases*, Coordination Proceeding No. 4000 (Superior Court, San Francisco County, Cal.). Class action under California's Cartwright Act, which alleged price-fixing of cellular telephone service in the San Francisco area market. The $35 million in-kind benefits to the Class was granted final approval.

*Garabedian v. LASMSA Limited Partnership*, No. 721144 (Superior Court, Orange County, Cal.). Class action under California's Cartwright Act which alleged price-fixing of cellular telephone service in the Los Angeles area market. The court granted final approval to two settlements that provided $165 million of in-kind benefits.

*Lobatz v. AirTouch Cellular*, 94-1311 BTM (AJB) (S.D. Cal.). Class action alleging price-fixing of cellular telephone service in San Diego County, California. The court approved settlements of $8 million in cash and other benefits.

*In re Airline Ticket Commission Antitrust Litig.*, MDL No. 1058 (D. Minn.). Antitrust class action on behalf of travel agents against the major airlines for allegedly fixing the amount of commissions payable on ticket sales. The action settled for $87 million. *See* 953 F. Supp. 280 (D. Minn. 1997).

**Commodities:**

*Smith v. Groover*, 77-2297 (N.D.Ill.). A commodities fraud and antitrust class action against the Chicago Board of Trade and several floor traders involving the manipulation of the soybean market

7

through bucketing. The case established that, in the Northern District of Illinois, a plaintiff has an implied private right of action under the Commodity Exchange Act and that an Exchange can be sued for negligence in failing to supervise its members. Mr. Miller was one of Plaintiff's counsel in this precedent making decision.

*In re Soybean Futures Litig.*, No. 89-7009 (N.D. Ill.). A commodities manipulation class action against Ferruzzi Finanziaria, S.p.A. and related companies for unlawfully manipulating the soybean futures market in 1989. In December, 1996, the court approved a settlement in the amount of $21,500,000. *See* 892 F. Supp. 1025 (N.D. Ill. 1995). Mr. Miller served as Co-Lead Counsel for Plaintiffs.

*In re Sumitomo Copper Litig.*, 96- 4584(MP) (S.D.N.Y.). Class action arising out of manipulation of the world copper market. On October 7, 1999, the court approved settlements aggregating $134,600,000. *See* 189 F.R.D. 274 (S.D.N.Y. 1999). In awarding attorneys' fees, Judge Milton Pollack noted that it was "the largest class action recovery in the 75 plus year history of the Commodity Exchange Act". 74 F. Supp. 2d 393 (S.D.N.Y. Nov. 15, 1999). Additional reported opinions: 995 F. Supp. 451 (S.D.N.Y. 1998); 182 F.R.D. 85 (S.D.N.Y. 1998). Mr. Miller was appointed by Judge Pollack as Plaintiffs' Co-Lead Counsel.

*In re Int'l Trading Group, Ltd. Customer Account Litig.*, No. 89-5545 RSWL (GHKx) (C.D. Cal.). Class action alleging violation of the anti-fraud provisions of the Commodity Exchange Act. The case settled with individual defendants and proceeded to a judgment against the corporate entity. In that phase, the Court awarded the Class a constructive trust and equitable lien over the corporation's assets and entered a $492 million judgment in favor of the Class.

*In re First Commodity Corp. of Boston Customer Account Litig.*, MDL-713 (D. Mass). Class actions alleging violation of the anti-fraud provisions of the Commodity Exchange Act. The action settled for $5.3 million. *See* 119 F.R.D. 301 (D. Mass. 1987).

### Securities:

*In re Sears, Roebuck and Co. Sec. Litig.*, No. 02-07527 (N.D.Ill.). Sears settled a class action lawsuit for $215 million in a case brought by shareholders. The case alleged breach of fiduciary duty for failing to prevent improper bankruptcy collection practices under the company's debt reaffirmation agreements. Mr. Miller served as plaintiff's *liaison* counsel in this nationwide securities case.

*Abrams v. Van Kampen Funds*, Case No. 01-7538 (N.D. Ill.), involving a mutual fund that was charged with improperly valuating its net asset value. After extensive discovery, the case settled for in excess of $31 million and was granted final approval.

*In re Baldwin-United Corp. Sec. Litig.*, MDL-581, (S.D.N.Y.). In this early multi-district securities class action, Plaintiffs' counsel advanced the novel issue of whether Single Premium Deferred Annuities sold by the stock brokerage industry were securities and the sale of approximately $4.2 billion of were in violation of the federal and state securities laws. A $180 million settlement was obtained was the largest securities class action settlements at the time and remains one of the larger

securities class action settlements on record. In awarding interim counsel fees, Judge Charles Brieant commented "...that plaintiffs' attorneys [including Marvin A. Miller as co-lead counsel] had rendered extremely valuable services with diligence, energy and imagination, and are entitled to just compensation."

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, MDL 1005 (S.D.N.Y.). A nationwide multi-district class action arising out of Prudential Securities Incorporated's marketing and sale of speculative limited partnership interests. The final settlements produced an aggregate of more than $132 million for injured investors.

*In re Bank One Shareholders Class Actions*, No. 00-880 (N.D. Ill.). In this securities fraud class action against Bank One and certain officers, Judge Milton I. Shadur appointed Mr. Miller to draft the Consolidated Class Action Complaint. At the request of court-appointed lead counsel, Mr. Miller served as Plaintiffs' *liaison* counsel. Judge Shadur subsequently approved a $45 million settlement.

*Central Laborers' Pension Fund v. Sirva, Inc.,* 04-7644 (N.D. Ill.). A $53 million settlement was approved in this national securities class action which sought recovery from the defendant for violations of the securities laws because of the alleged failure to disclose to the investing public the true financial condition of the company. Mr. Miller served as Plaintiff's *liaison* counsel at the request of Lead counsel.

*Danis v. USN Communications, Inc.,* No. 98-7482 (N.D. Ill.). Securities fraud class action arising out of the collapse and subsequent bankruptcy of USN Communications, Inc. The court approved a $44.7 million settlement with certain control persons and underwriters. Reported decisions: 73 F. Supp. 2d 923 (N.D. Ill. 1999); 189 F.R.D. 391 (N.D. Ill. 1999); 121 F. Supp. 2d 1183 (N.D. Ill. 2000). At the request of Co-Lead Counsel, Mr. Miller served as *liaison* counsel for Plaintiffs.

*In re Caremark Int'l. Inc. Sec. Litig.*, No. 94-4751 (N.D. Ill.). This action arose out of Caremark's allegedly improper financial arrangements with physicians. A $25 million settlement concluded the litigation.

*In re Nuveen Fund Litig.*, No. 94-360 (N.D. Ill.). Class action and derivative suit under the Investment Company Act arising out of coercive tender offerings in two closed-end mutual funds.

*In re Archer-Daniels-Midland, Inc. Sec. Litig.*, No. 95-2287 (C.D. Ill.). A class action arising out of the Archer-Daniels-Midland price-fixing scandal. Plaintiffs brought claims for securities law violations which settled for $30 million.

*In re VMS Sec. Litig.*, 89-9448 (N.D. Ill.). A securities fraud class action and derivative suit relating to publicly traded real estate investments. The court certified a plaintiff class and subclasses of approximately 100,000 members, 136 F.R.D. 466 (N.D. Ill. 1991) and approved a class and derivative settlement worth $98 million.

*In re Salton/Maxim Sec. Litig.*, No. 91-7693 (N.D. Ill.).  Class action arising out of public offering of Salton/Maxim Housewares, Inc. stock.  On September 23, 1994, Judge James S. Holderman (now Chief Judge of the United States District Court for the Northern District of Illinois) approved a multi-million dollar settlement achieved for the class, commenting that "it was a pleasure to preside over [the case] because of the skill and the quality of the lawyering on everyone's part in connection with the case."

*In re Telesphere Sec. Litig.*, 89-1875 (N.D. Ill.).  In his opinion approving a class action settlement, Judge Milton I. Shadur referred to Marvin A. Miller as "...an experienced securities law class action litigator and who also has 20 years [now 38 years] practice under his belt.  This Court has seen the quality of that lawyer's work in other litigation, and it is first-rate." 753 F.Supp. 716, 719 (N.D. Ill. 1990).

*Horton v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, No. 91-276-CIV-5-D (E.D.N.C.).  A multi-million dollar settlement was approved in this securities fraud class action arising out of a broker's marketing of a speculative Australian security.  The Court stated that "the experience of class counsel warrants affording their judgment appropriate deference in determining whether to approve the proposed settlement."  855 F. Supp. 825, 831 (E.D.N.C. 1994).

*Hoxworth v. Blinder Robinson & Co.*, 88-0285 (E.D. Pa.).  A securities fraud and RICO class action resulting from alleged manipulative practices and boiler-room operations in the sale of "penny stocks."  Judgment in excess of $70 million was entered and that judgment was affirmed by the Third Circuit Court of Appeals, 980 F.2d 912 (3rd Cir. 1992).  *See also Hoxworth v. Blinder*, 74 F.3d 205 (10th Cir. 1996).

### Intellectual Property:

*Baxter Int'l v. McGaw, Inc.*, (N.D. Ill.).  Mr. Miller, together with co-counsel, successfully represented the Defendant in this patent infringement case and served as a member of the trial team which won a jury verdict of non-infringement of three needleless injection sites and also obtained a finding that the Plaintiff had engaged in inequitable conduct on two of the patents.  The Court also found that the Plaintiff engaged in inequitable conduct.  The decision was affirmed by the Court of Appeals Federal Circuit.  (96-1329,-1342, 97-1331,-1350 decided June 30, 1998).

*Acco Brands USA v. PC Guardian Anti-Theft Products, Inc.*, No. 06-7102 (N.D. Ill.).  The firm represented one of the named defendants in this alleged patent infringement case.

### Other Representative Cases:

*In re Sears, Roebuck and Co., ERISA Litig.*, 02-8324 (N.D. Ill.).  Mr. Miller served as plaintiff's liaison counsel in this nationwide action.  Sears settled this ERISA action for $14.5 million in cash.  The case alleged breaches of fiduciary duties in contravention of the Employee Retirement Income Security Act of 1974. The plan participants will directly benefit from the resulting settlement.

*PrimeCo Personal Communications, L.P. v. Ill. Commerce Comm'n.*, No. 98 CH 5500 (Circuit Court of Cook County, Ill.). This class action sought recovery of an unconstitutional infra-structure maintenance fee imposed by municipalities on wireless telephone and pager customers in the State of Illinois. The court granted final approval to a settlement of more than $31 million paid by the City of Chicago. Subsequently, the court certified a settlement class of all wireless users in the State of Illinois and a Defendant Class of municipalities throughout the state which collected Infrastructure Maintenance Fees from wireless users and approved a settlement for the Class of in excess of $11 million. Mr. Miller served as a Co-lead counsel for Plaintiffs in this novel class action.

### Defendant Representations:

In addition to our representation of plaintiffs, Miller Law attorneys have also represented defendants in complex class actions and derivative suits, including *In re Del-Val Financial Corp. Sec. Litig.*, MDL-872 (S.D.N.Y.); *In re Kenbee Limited Partnership Litig.*, No. 91-2174 (D.N.J.); *Weiss v. Winner's Circle of Chicago, Inc.*, No. 91-2780 (N.D. Ill.); *Levy v. Stern*, No. 11955 (New Castle County, Delaware). The court's decision in *In re Del-Val Financial Corp. Sec. Litig.*, 868 F. Supp. 547 (S.D.N.Y. 1994) resulted in a significant extension of the law concerning partial settlements of securities fraud class actions.

## Individual Biographies

*MARVIN A. MILLER*, has more than 37 years of commercial and class action litigation experience. Mr. Miller has been lead or co-lead counsel across the full spectrum of industries (airline, cell and telephone, financial services, Internet and technology, manufacturing, pharmaceuticals, retailing, stock broker and exchange, and utilities) and practices (antitrust, consumer and investor fraud and protection, employment and employee benefits, insurance, shareholder derivative actions) that encompasses Miller Law LLC's practice. Mr. Miller holds an AV® (highest) rating from Martindale-Hubbell®. In January 2007 and 2008, Law & Politics and the publishers of Chicago Magazine named Mr. Miller an Illinois Super Lawyer. Super Lawyers are the top 5 percent of attorneys in Illinois, as chosen by their peers and through the independent research of Law & Politics.

Prior to founding Miller Law LLC, Mr. Miller was a co-founder of another national class action law firm. Throughout his career in class action jurisprudence, Mr. Miller has represented shareholders and investors in high profile and precedent-setting class action litigation involving such companies as Continental Illinois National Bank and Trust and Baldwin United Corporation. He was lead attorney in *Smith v. Groover*, in which he represented clients against the Chicago Board of Trade and several of its traders; the decision in the case, later affirmed, *sub. nom.*, in *Curran v. Merrill Lynch Pierce Fenner & Smith*, by the U.S. Supreme Court, established the precedent that an individual has an implied private right of action to sue an Exchange for negligence in failing to supervise its members.

Mr. Miller is a 1970 graduate of Illinois Institute of Technology-Chicago-Kent College of Law, where he was a member of the Editorial Board of the *Chicago-Kent Law Review*. He received his undergraduate degree from Hofstra University in Hempstead, New York in 1967. He is admitted to

the state bars of Illinois and New York, the United States Court of Appeals for the Third, Fourth, Seventh, Eleventh Circuit, and Federal Circuit, the United States District Courts for the Northern District of Illinois (including the Trial Bar), Southern District of New York, Eastern District of Michigan and Northern District of California. Mr. Miller is a member of the Chicago Bar Association and the Illinois State Bar Association and serves on the *Cy Pres* Committee of the Illinois Bar Foundation.

*LORI A. FANNING* concentrates her practice on complex class litigation in a wide range of matters before state and federal courts, primarily in the areas of consumer protection, antitrust and securities. She has prosecuted a variety of lawsuits involving the airline, banking, credit card, internet, pharmaceutical, and insurance industries. Ms. Fanning currently litigates securities fraud claims against such companies as Household International and Tellabs; antitrust claims against companies such as Unocal and Amgen; and has defended patent litigation on behalf of Datamation Systems, Inc. Ms. Fanning actively participated in the trial preparations for *In re Visa Check/MasterMoney Antitrust Litigation,* a civil antitrust case that settled for in excess of $3 billion on the eve of trial. Prior to attending law school, she enjoyed a successful career as a logistician with the United States government at the Naval Sea Systems Command in the Washington, D.C. area in support of Foreign Military Sales, new ship construction, and naval equipment. For her dedication, the Department of the Navy honored her with the Meritorious Civilian Service medal.

Ms. Fanning received her law degree, with honors and a Certificate in Litigation and Alternative Dispute Resolution, from the Illinois Institute of Technology/Chicago-Kent College of Law in 2000. She also holds a Master of Science in Administration from Central Michigan University (1993), and a Bachelor's degree from the University of Nebraska at Omaha (1986). She is admitted to practice in the state of Illinois and the federal district courts for the Northern District of Illinois, the Eastern District of Wisconsin, and the United States Court of Appeals for the Seventh and Ninth Circuits. Ms. Fanning is a member of the American and Chicago Bar Associations and she volunteers for the CBA's Judicial Evaluation Committee.

## *OF COUNSEL*

*MATTHEW E. VAN TINE* focuses his practice on antitrust, securities fraud, and consumer protection matters. He has participated in the prosecution and defense of many securities, antitrust, and consumer class actions over the past two decades including securities litigation against Van Kampen Funds and Baxter International; antitrust class actions involving nurses' wages, the drug warfarin sodium (Coumadin), and an industry-wide effort to raise drug prices paid by retail drug stores (the Brand Name Prescription Drug Antitrust Litigation); and litigation on behalf of consumers challenging an unconstitutional fee imposed on wireless and landline phone customers. Before associating with Miller Law LLC, Mr. Van Tine was affiliated with two other class action boutique law firms for fourteen years. Mr. Van Tine has also practiced with large law firms in Chicago and Boston, and served as an Assistant Corporation Counsel for the City of Chicago Law Department.

Mr. Van Tine received his A.B. degree *cum laude* from Harvard College in 1980, and his J.D. degree *magna cum laude* from Boston University School of Law in 1983, where he served as an Executive

12

Editor of the Law Review and was the author of Note, *Application of the Federal Parole Guidelines to Certain Prisoners: An Ex Post Facto Violation*, 62 B.U.L. Rev. 515 (1982). Following law school, Mr. Van Tine served as a law clerk to the Honorable Raymond J. Pettine of the United States District Court for the District of Rhode Island. Mr. Van Tine's practice admissions include the state bars of Illinois and Massachusetts, the Supreme Court of the United States, the United States Court of Appeals for the Seventh Circuit and the United States District Courts for the Northern District of Illinois and the District of Massachusetts. He is a member of the Chicago and American Bar Associations, and served as the immediate past President of the Abraham Lincoln Marovitz American Inn of Court.

***ASHER RUBIN*** received his B.A. degree from Columbia University in 1958 and his J.D. degree from Harvard Law School in 1961. After completing law school, Mr. Rubin clerked at the California Supreme Court. Mr. Rubin served as Deputy Attorney General for the State of California from 1963-1966. He was a San Francisco Chronicle Foreign Correspondent and on the staff of the Weizmann Institute after which he served as an attorney and advisor to the Peace Corps until 1968. In 1969, Mr. Rubin returned to serve as Deputy Attorney General for the State of California until 2001 when he established his own law firm. Mr. Rubin has argued before the United States Supreme Court and the California Supreme Court as well as the appellate and trial levels of state and federal courts. He has taught Administrative Law for the California Attorney General, taught evidence, and lectured at Hastings Law School. He has also been published in The San Francisco Chronicle, Newsweek and the Harvard Law Bulletin.

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**DIVISION**

| | |
|---|---|
| **IN RE ULTA SALON COSMETICS** **& FRAGRANCE, INC. SECURITIES** **LITIGATION** | **Master File No.07 C 7083** |
| | **CLASS ACTION** |
| **This Document Relates To:** | |
| **ALL ACTIONS** | **Hon. Robert W. Gettleman** |

**DECLARATION OF KENNETH A. ELAN**
**IN SUPPORT OF JOINT PETITION FOR**
**ATTORNEYS' FEES AND EXPENSES**

KENNETH A. ELAN, being first duly sworn, deposes and says:

1.      I am a sole practitioner duly admitted to practice law in the State and Federal Courts of New York. I submit this Affidavit in support of my application for an award of attorneys' fees in connection with services rendered in this case.

2.      I was retained by plaintiff Marc Mirsky to commence and prosecute the within Action. In connection therewith, I reviewed drafts of the complaint and proposed amended complaint; corresponded with my client concerning all matters pertaining to the Action (i.e., preparation and filing of the complaint, motion to dismiss, his prospective deposition as class representative and proposed settlement); reviewed plaintiffs' mediation statement and participated in the mediation before the Hon. Nicholas Politan that culminated in the settlement before the Court.

3.      The total number of hours expended by me on this litigation is 11.7 hours. Based on my hourly rate of $550.00 my total lodestar is $6,435.00. My current billing rate has been previously approved in other securities, shareholder and/or consumer litigation.

4.     My time devoted to the Action was based upon my review of contemporaneous, daily time records regularly maintained and prepared by me, and which are available at the request of the Court. Time expended in preparing this Application for fees has not been included in this request.

5.     My lodestar figure is based upon my billing rate, which rate does not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my billing rate.

6.     I have not incurred any material expenses for which reimbursement is sought.

7.     With respect to the standing of counsel in this case, attached as Exhibit 1 is a brief biography of your deponent.

KENNETH A. ELAN

Sworn to before me this
17th day of September, 2009.

Notary Public

JONATHAN D. SIMS
Notary Public, State of New York
No. 02SI6015346
Qualified in New York County
Commission Expires 10/26/2010

2

# EXHIBIT "1"

## BIOGRAPHY OF KENNETH A. ELAN

Kenneth A. Elan is a graduate of The American University where he received a B.S. in Political Science in 1974. He received his Juris Doctor from the University of Baltimore School of Law in 1977. Mr. Elan was admitted to the Bar of the State of New York and to the United States District Court for the Southern and Eastern Districts of New York in 1978. He was admitted to the Bar of the Court of Appeals for the Third Circuit and Second Circuit in 2000 and 2001 respectively.

Mr. Elan is a member of the New York County Lawyers Association and formerly a member of its Committee on Corporation Law. He has been an Adjunct Professor in the Accounting Department of the City University of New York (Queens College) for more than thirteen years.

Mr. Elan was associated with the firms of Schoengold & Sporn and Rabin & Silverman from 1978 to 1982, where he specialized in the prosecution of class and derivative actions as well as general corporate and commercial litigation. Mr. Elan was associated with the firms of Silverman & DiGiovanna and Dornbush Mensch Mandelstam & Silverman from 1982 to 1986. While continuing to represent clients in a variety of commercial actions, he devoted substantial time to general corporate work including preparation of registration statements, proxy statements and other SEC and related State Law (blue sky) matters.

Mr. Elan has been a sole practitioner since February 1986. He has continued to specialize in corporate and commercial litigation. He has represented numerous clients in the prosecution and defense of complex corporate and commercial cases. For example, Mr. Elan defended the investment banking firm of Norbay Securities and its principals in the securities class action, <u>Brownstein v. Entourage International Inc.</u>, 87 Civ. 0953 (S.D.N.Y. 1987). Mr. Elan defended the investment banking firm of Sherman Fitzpatrick & Co. and several individuals in the securities class action, <u>Lazzaro v. Manber</u>, 87 Civ. 2153 (E.D.N.Y. 1987). Mr. Elan defended the investment banking firm of Donald & Co. Securities, Inc. in

the class action, <u>Walsh v. Donald & Co. Securities, Inc.</u>, 96-1154 (M.D. Fla. 1996). Mr. Elan defended several corporate officers affiliated with Teltran International, Inc., a publicly held company, in an action alleging, *inter alia*, fraud and breach of fiduciary. <u>Revy v. Lerner, et al.</u>, 118854/02 (Supreme Court, New York County).

Mr. Elan defended I.C. System, Inc., one of the largest debt collection companies in the United States, in <u>McStay v. I.C. System, Inc.</u> In a case of first impression, the Court of Appeals for the Second Circuit held that the validation notice required by Section 1692(g) of the Fair Debt Collection Practices Act does not have to appear on the front side of a debt collection letter provided there is a prominent instruction in the body that warns that there is important information on the reverse side. 308 F.3d 188 (2d Cir. 2002).

Mr. Elan was counsel to the class in <u>George Apostol v. Guthy-Renker Corporation</u>, 106052/06 (Supreme Court/New York County), an action alleging that the refund policy for the defendant's skin care product was false and misleading since it omitted to tell consumers that the product had to be returned unopened in order to qualify for a refund. As a result of a settlement, class members received a 100% refund of the price paid for the product. Additionally, the defendant agreed to change its policy in order to permit refunds where the product was opened before being returned.

Mr. Elan was counsel to the class in <u>Mary Ann Apostol v. Washington Mutual Bank, FA</u>, 111549/04 (Supreme Court/New York County), an action alleging that the defendant, a nationwide lender, collected fees from cooperative apartment owners to record satisfactions of lien ("UCC-3s") but did not remit the fees to the proper county authorities. As a result of a settlement, class members received the return of approximately 84% of their out of pocket loss. Moreover, the defendant changed its payoff letter to notify cooperative apartment owners that they are not required to pay the recording fee.

Mr. Elan was counsel to the class in <u>Youngman v. MBNA Corp.</u>, 91 Civ. 1823 (S.D.N.Y. 1991), an action brought under the Federal Truth in Lending Act. As a result of a

favorable settlement, the defendant, one of the largest credit card issuers in the United States, substantially modified its credit card agreement with its customers. Mr. Elan was co-lead counsel in Feinberg v. Dean Witter Reynolds Inc., 118682/92 (Supreme Court, New York County), an action brought on behalf of persons with inactive brokerage accounts. The action resulted in a settlement in excess of $2 million. Mr. Elan was co-lead counsel in Shark 3 Audio, Inc. v. Leasecomm Corp.,95-600531 (Supreme Court, New York County), a class action brought on behalf of certain personal property lessees. A favorable settlement was attained following a grant of summary judgment on the issue of liability.

Cases where Mr. Elan was co-counsel or otherwise represented plaintiffs in securities class actions include, In re YES! Entertainment Securities Litigation, 1998  WL 667863 (N.D. Cal. 1998); Baffa v. Donaldson, Lufkin & Jenrette Securities Corp., 999 F. Supp. 725 (S.D.N.Y. 1998) ; In re Norand Corporation Securities Litigation, C95-323-EJM (N.D.Iowa 1995); and In re Cendant Corporation Securities Litigation, 264 F.3d 201 (3d Cir. 2001).

Mr. Elan was co-counsel and, among other things, assisted in writing the Respondent's brief in Verizon Communications, Inc. v. Trinko, 540 U.S. 398 (2004), where the Supreme Court discussed the applicable standards and interplay between causes of action under the Sherman Act and Telecommunications Act of 1996. Mr. Elan has briefed and/or argued points of law in numerous lower court cases including the existence of an implied cause of action under Section 1701 of the Housing and Urban Development Act, as amended, in Williams v. U.S. Department of Housing and Urban Development, 2006 WL 2546536 (E.D.N.Y. 2006); the standards to vacate a default judgment under Rule 60(b), Fed. R. Civ. P. in New Card, Inc. v. Van Dijke, 137 Fed. Appx. 384 (2d Cir. 2005); the statute of limitations under New York law in an action alleging libel and slander in O'diah v. New York City, 2002 WL 1941179 (S.D.N.Y. 2002); the applicability of an arbitration provision in a credit card agreement where an action is brought on a class-wide basis under the Federal Truth in Lending Act in Sagal v. First USA Bank, N.A., 69 F. Supp. 2d 627 (D. Del. 1999);

and, the parties covered under the Telecommunications Act of 1996 in <u>Chladek v. Verizon N.Y. Inc.</u>, 96 Fed.Appx. 19 (2d Cir. 2004).

Mr. Elan was also co-counsel in two significant antitrust cases, <u>Brand Name Prescription Drug Antitrust Litigation</u> and <u>In re Visa Check/Master Money Antitrust Litigation</u>. See, 297 F. Supp.2d 503 (E.D.N.Y. 2005). The latter case resulted in the largest antitrust settlement in history. Mr. Elan is presently representing plaintiffs in numerous class and derivative actions throughout the United States including stockbrokers alleging violations of the Fair Labor Standards Act in <u>Testa v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 07 CV 8320 (AKH) (S.D.N.Y.); policyholders who paid excess premiums for homeowners insurance coverage in <u>Spagnola v. The Chubb Corporation,</u> 06-CV-9960 (HB) (S.D.N.Y. 2006); and employees alleging violations of ERISA in <u>In re Nortel Networks Corp. "ERISA" Litigation,</u> MDL No. 3:03-MD-1537 (M.D. Tenn. 2003).